No. 12-2619

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

JERRY G. MARKADONATOS, on behalf of
himself and all others similarly situated,

*Plaintiff-Appellant*,

v.

VILLAGE OF WOODRIDGE,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
For the Northern District of Illinois, Eastern Division

Case No.      11-cv-07006

The Honorable Judge James F. Holderman

_____

BRIEF AND REQUIRED SHORT APPENDIX OF PLAINTIFF-APPELLANT
JERRY G. MARKADONATOS

_____

DiTOMMASO ♦ LUBIN, P.C.               Schad, Diamond & Shedden, PC
Vincent L. DiTommaso                  James Shedden
Peter S. Lubin                        Tony Kim
John Auchter                          Matthew Burns
17 W 220 22nd Street – Suite 410      332 South Michigan Ave., Suite 1000
Oakbrook Terrace, IL 60181            Chicago, IL  60604
(630) 333-0000                        (312) 939-6280

*Attorneys for Plaintiff-Appellant, Jerry G. Markadonatos, on behalf of himself and
all others similarly situated.*

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 12-2619

Short Caption: Jerry Markadonatos v. Village of Woodridge

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

 **[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Jerry Markadonatos

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

DiTommaso Lubin, P.C.

Schad, Diamond & Shedden, P.C.

(3)  If the party or amicus is a corporation:

  i)  Identify all its parent corporations, if any; and

   N/A

  ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

   N/A

Attorney's Signature:  s/ Peter S. Lubin          Date: July 23, 2012

Attorney's Printed Name:  Peter S. Lubin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes**  X   **No** _____

Address:  17W220 22nd Street, Suite 410

    Oakbrook Terrace IL 60181

Phone Number:  630-333-0000          Fax Number:  630-333-0003

E-Mail Address:  psl@ditommasolaw.com

rev. 01/08 AK

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: ___12-2619_____

Short Caption: ___Jerry Markadonatos v. Village of Woodridge_____

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   **[  ]       PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED
           AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   ___Jerry Markadonatos_____

   _____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   ___DiTommaso-Lubin, P.C._____

   ___Schad, Diamond & Shedden, P.C._____

   _____

(3)   If the party or amicus is a corporation:

   i)   Identify all its parent corporations, if any; and

       ___N/A_____

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

       ___N/A_____

Attorney's Signature: ___s/ Vincent L. DiTommaso_____   Date: ___January 11, 2013_____

Attorney's Printed Name: ___Vincent L. DiTommaso_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** __✕__

Address: ___17W 220 22nd Street, Suite 410_____

   ___Oakbrook Terrace, Illinois 60181_____

Phone Number: ___(630) 333-0000_____   Fax Number: ___(630) 333-0333_____

E-Mail Address: ___vdt@ditommasolaw.com_____

rev. 01/08 AK

**CIRCUIT RULE 26.1  DISCLOSURE STATEMENT**

Appellate Court No: ___12-2619___

Short Caption: ___Jerry Markadonatos v. Village of Woodridge___

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [   ]      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    Jerry Markadonatos

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    DiTommaso-Lubin, P.C.

    Schad, Diamond & Shedden, P.C.

(3)   If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

        N/A

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

        N/A

Attorney's Signature: ___s/ John Auchter___    Date: ___December 17, 2012___

Attorney's Printed Name: ___John Auchter___

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** __✕__

Address: ___17W220 22nd Street, Suite 410___

         ___Oakbrook Terrace IL 60181___

Phone Number: ___630-333-0000___    Fax Number: ___630-333-0333___

E-Mail Address: ___jauchter@ditommasolaw.com___

rev. 01/08 AK

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 12-2619

Short Caption: Jerry Markadonatos v. Village of Woodridge

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [   ]      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Jerry Markadonatos

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

DiTommaso Lubin, P.C.

Schad, Diamond & Shedden, P.C.

(3) If the party or amicus is a corporation:

    i) Identify all its parent corporations, if any; and

    N/A

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

    N/A

Attorney's Signature: s/ James Shedden      Date: July 23, 2012

Attorney's Printed Name: James Shedden

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No**   X

Address: 332 S Michigan Ave

Suite 1000 Chicago, IL 60604

Phone Number: 312-939-6280      Fax Number: 312-939-4661

E-Mail Address: jshedden@lawsds.com

rev. 01/08 AK

**CIRCUIT RULE 26.1  DISCLOSURE STATEMENT**

Appellate Court No: 12-2619

Short Caption: Markadonatos v. Village of Woodridge

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Jerry Markadonatos

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

DiTommaso Lubin PC

Schad, Diamond & Shedden, PC

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/  Tony Kim                    Date: January 11, 2013

Attorney's Printed Name: Tony Kim

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** _____    **No** ☒

Address: 332 S Michigan Ave

Suite 1000 Chicago, IL 60604

Phone Number: 3129396280                Fax Number: 3129394661

E-Mail Address: tkim@lawsds.com

rev. 01/08 AK

# CIRCUIT RULE 26.1    DISCLOSURE STATEMENT

Appellate Court No: 12-2619

Short Caption: Jerry Markadonatos v. Village of Woodridge

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]**    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Jerry Markadonatos

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

DiTommaso Lubin, P.C.

Schad, Diamond & Shedden, P.C.

(3)    If the party or amicus is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature:  s/  Matthew Burns                    Date: July 23, 2012

Attorney's Printed Name:  Matthew Burns

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** ☒

Address:  332 S Michigan Ave

Suite 1000 Chicago, IL 60604

Phone Number: 312-939-6280                    Fax Number:  312-939-4661

E-Mail Address:  mburns@lawsds.com

rev. 01/08 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

JURISDICTIONAL STATEMENT ................................................................... 1

ISSUES PRESENTED FOR REVIEW ............................................................ 2

STATEMENT OF THE CASE .......................................................................... 3

STATEMENT OF FACTS ................................................................................. 4

SUMMARY OF THE ARGUMENT ................................................................ 6

ARGUMENT ....................................................................................................... 8

I.    The District Court Erred When It Concluded That Mr. Markadonatos
Failed To State A Claim Because The Booking Fee Provision Does Not
Provide Any Pre- or Post-Deprivation Process Before Finally Depriving
Arrestees Of Their Money .................................................................... 9

    A.    Woodridge's Booking Fee Provision violates Due Process because
it does not provide *any* opportunity to test the bases for
Woodridge's deprivation of $30 from all arrestees .................................... 12

    B.    The Booking Fee Provision's lack of procedural protections
creates a significant risk of erroneous deprivation and there is
great value in providing a post-deprivation hearing which would
eliminate almost all risk of erroneous deprivation ................................... 15

    C.    Mr. Markadonatos's interest in his $30 and Woodridge's interest
in defraying administrative costs incurred in processing
arrestees and the burden on Woodridge to implement additional
procedures are all small ................................................................ 25

    D.    Mr. Markadonatos has no feasible remedy under Illinois law
which will provide him with a completely adequate remedy ................. 27

II.    The District Court Erred When It Concluded That Mr. Markadonatos
Did Not Have Standing To Challenge The Rationality Of The Booking
Fee Provision, As Applied To Other Arrestees In The Class, Without
First Determining The Issue Of Class Certification. ..................................... 29

III.    The District Court Erred When It Concluded That The Booking Fee
Provision Is Rational Where It Provides No Standards And Woodridge
Arbitrarily Discriminates Amongst Arrestees And Between Classes
Who Use Administrative Services. .................................................................. 33

i

CONCLUSION ........................................................................................................................ 41

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Leis*, 154 F. Supp. 2d 1240 (S.D. Ohio 2001) ................................... 35, 36, 40

*Allen v. Leis*, 213 F. Supp. 2d 819 (S.D. Ohio 2002) ......................................... *passim*

*Allison v. City of Bridgeport*, 2006 WL 1599811 (S.D. Ill. June 8, 2006) ...... 11, 13, 14

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 426 U.S. 40 (1999) ........................................... 10

*Arnett v. Webster*, 658 F.3d 742 (7th Cir. 2011) ......................................................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 8

*Bankers Life 7 Casualty Co. v. Crenshaw*, 486 U.S. 71 (1988) ................................. 34

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) .................................. 10

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ....................................................................... 29

*Butler v. Sears, Roebuck and Co.*, ‑‑‑ F.3d ‑‑‑, 2012 WL 5476831 (7th Cir. 2012) .... 32

*Buttitta v. City of Chicago*, 9 F.3d 1198 (7th Cir. 1993) ............................................ 10

*Cirrincione v. Johnson*, 703 N.E.2d 67 (Ill. 1998) ..................................................... 29

*Cote v. Village of Broadview*, 2009 WL 2475117 (N.D. Ill. Aug. 11, 2009) .............. 28

*Huss v. Spokane Co.*, No. 05-180 (E.D. Wash. Oct. 12, 2007) .................................... 25

*Idris v. City of Chicago*, 552 F.3d 564 (7th Cir. 2009) ............................................... 37

*Johnson v. City of Evanston*, 250 F.3d 560 (7th Cir. 2001) .................... 11, 12, 13, 14

*Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989) ............................................... 10

*Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003) ................................................. 34

*Lindsey v. Normet*, 405 U.S. 56 (1972) ................................................................ 16, 24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 29

*Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920 (Ill. App. 3d Dist. 2009) 28

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................................ 9, 11, 15, 20

*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374 (3d Cir. 2012)
.......................................................................................................................................... 37

*Parisi v. Village of Deerfield*, 2008 U.S. Dist. LEXIS 52898 (N.D. Ill. Jul. 9, 2008). 28

*Parratt v. Taylor*, 451 U.S. 527 (1981).................................................................. 27, 29

*Payton v. Co. of Carroll*, 473 F.3d 847 (7th Cir. 2007) ................................... 19, 36, 38

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) ................................... *passim*

*Police Dep't v. Mosley*, 408 U.S. 92 (1972)................................................................. 34

*Rinaldi v. Yeager*, 384 U.S. 305 (1966) ......................................................... 34, 35, 39

*Roehl v. City of Naperville*, 857 F. Supp. 2d. 707 (N.D. Ill. 2012).................... *passim*

*Schilb v. Kuebel*, 404 U.S. 357 (1971) ................................................................. 36, 38

*Sickles v. Campbell County*, 501 F.3d 726 (6th Cir. 2007) ...................... 16, 19, 22, 25

*Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243 (5th Cir. 2005)........... 16, 18, 19, 22

*Sosna v. Iowa*, 419 U.S. 393 (1975)................................................................... 29, 32

*Stypmann v. City and Co. of San Francisco*, 557 F.2d 1338 (9th Cir. 1977)..... *passim*

*Tamayo v. Blagojevich*, 523 F.3d 1074 (7th Cir. 2008) ............................................. 8

*Wayt v. Town of Crothersville*, 866 F. Supp. 2d 1008 (S.D. Ind. 2012)......... 16, 18, 23

*Zinermon v. Burch*, 494 U.S. 113 (1990)........................................................... 27, 28

**Statutes**

625 ILCS 5/7-100 *et seq.*............................................................................................... 39

**Rules**

Fed. R. Civ. P. 8(a)(2)...................................................................................................... 8

## JURISDICTIONAL STATEMENT

The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 by reason of Plaintiff-Appellant's claim that Defendant-Appellee deprived him of rights, privileges, or immunities secured by the Constitution in violation of 42 U.S.C. § 1983. Plaintiff-Appellant Jerry G. Markadonatos ("Mr. Markadonatos") is an individual residing in Downers Grove, Illinois, which is within the Northern District of Illinois. Defendant-Appellee Village of Woodridge ("Woodridge") is a political subdivision or municipal corporation and is located within the Northern District of Illinois.

On January 6, 2012, the district court dismissed Mr. Markadonatos's Class Action Complaint with prejudice. A16, A17. On January 17, 2012, Mr. Markadonatos filed a motion for reconsideration or in the alternative for leave to file an amended complaint. Dkt. No. 28. On January 31, 2012, the district court granted the motion and granted Mr. Markadonatos leave to file a First Amended Complaint on or before February 14, 2012. Dkt. No. 33. On February 14, 2012, Mr. Markadonatos filed his First Amended Class Action Complaint. A24.

On June 11, 2012, the District Court entered a Minute Order and Opinion dismissing Mr. Markadonatos's First Amended Class Action Complaint with prejudice. A40, A41. The dismissal was a final judgment as to all parties and issues. On July 10, 2012, Mr. Markadonatos timely filed a Notice of Appeal seeking review of the district court's dismissal of the First Amended Class Action Complaint. A50. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court erred when it concluded that Mr. Marka-donatos failed to state a claim that Woodridge denied him of due process of law when it deprived him of $30 pursuant to the Booking Fee provision which provides no procedures allowing a person to challenge the imposition of the fee and no procedures to seek reimbursement of the fee.

2.      Whether the District Court erred when it concluded that Mr. Marka-donatos did not have standing to mount a facial challenge to the Booking Fee provision before determining whether the class should be certified.

3.      Whether the District Court erred when it concluded that the Booking Fee, which provides no findings as to its purpose, no procedures allowing a person to challenge the imposition of the fee, and no procedures to seek reimbursement of the fee, is rational.

## STATEMENT OF THE CASE

Mr. Markadonatos sued Woodridge on October 4, 2011 pursuant to 42 U.S.C. § 1983. A1. Mr. Markadonatos alleged that Woodridge violated Mr. Markadonatos's civil rights, and those of all others similarly situated, by failing to provide them with due process of law. Woodridge violated the class members' procedural due process rights when it deprived them of their money pursuant to the Booking Fee provision of Woodridge's 2005 Ordinance, which provides no findings as to its purpose, no procedures allowing a person to challenge the imposition of the fee, and no procedures to seek reimbursement of the fee. On January 6, 2012, the District Court granted Woodridge's Motion to Dismiss and terminated the case. A16, A17.

On January 17, 2012, Mr. Markadonatos filed a Motion for Reconsideration or for Leave to File an Amended Complaint. On January 31, 2012, the District Court granted Mr. Markadonatos leave to file an amended complaint. On February 14, 2012, Mr. Markadonatos filed his First Amended Complaint in which he further alleged that the Booking Fee provision provides no post-deprivation process and therefore violated class members' procedural due process rights, and that it also violated class members' substantive due process rights. A24. Woodridge again moved to dismiss and on June 11, 2012, the District Court granted Woodridge's Motion to Dismiss and terminated the case. A40, A41. This appeal followed. A50

3

## STATEMENT OF FACTS

On November 3, 2005, Woodridge amended Title 5 of its Village Code to in-clude a new section which implemented fees for police department administrative services. A33. Woodridge did not include any statements or findings as to its pur-pose in imposing these fees. *Id.* Included in the 2005 Ordinance, among other fees, is "Booking Fee: When posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant . . . $30.00." *Id.* The 2005 Ordinance does not provide for any procedures to challenge the imposition of any of the fees and it does not provide Woodridge employees with any discretion to impose or not impose the fee. *Id.* The 2005 Ordinance also does not provide for a procedure to seek reim-bursement of any of the fees under any circumstances. *Id.* Finally, the 2005 Ordi-nance contains no procedures for Woodridge to follow if it needs to pursue collection because an arrestee did not have funds on his or her person at the time of arrest. *Id.* The 2005 Ordinance is still in force and the Booking Fee provision has not been amended since its enactment. *Id.*

On January 8, 2011 Woodridge police arrested Mr. Markadonatos and brought him to the Woodridge jail. A26. Woodridge charged Mr. Markadonatos with retail theft and collected $30 from him as required under the Booking Fee provision. *Id.* Woodridge provided Mr. Markadonatos with a booking fee receipt after it took his $30. *Id.* Following the 2005 Ordinance, Woodridge never gave Mr. Markadona-tos an opportunity to contest the taking of his $30, either before or after Woodridge took it. *Id.* A court later ordered supervision for Mr. Markadonatos under to 730

4

ILCS 5/5-6-1(c). *Id.* Mr. Markadonatos successfully completed his supervision and a "not guilty" was entered on his record. Although Mr. Markadonatos ultimately received a "not guilty" on his record, Woodridge has not provided Mr. Markadonatos with any means to contest the imposition of the booking fee nor has it provided him with any means to seek reimbursement of all or part of the booking fee. A27.

In addition to the $30 which Woodridge took from Mr. Markadonatos, Woodridge has seized and converted to its own use thousands of dollars from numerous arrestees using the Booking Fee provision. *Id.* Woodridge used and continues to use the same procedures in seizing and converting money from other arrestees, including failing to provide a pre- or post-deprivation hearing or means to seek reimbursement of the booking fee. *Id.* Woodridge does so without any consideration for the subsequent disposition of each arrestee's case, the ability of the arrestee to pay, or whether the money seized is exempt from seizure under state or federal law. *Id.*

## SUMMARY OF THE ARGUMENT

Mr. Markadonatos's Procedural Due Process claim should not have been dismissed by the district court. It is well-settled law that Procedural Due Process requires opportunity for some form of hearing before the government finally deprives an individual of a protected property interest. Woodridge did not provide that opportunity to Mr. Markadonatos before or after it deprived him of his $30. The district court erred when it concluded that Woodridge provided some minimal process, because such process was illusory and did not satisfy the requirements of due process. Woodridge was required to provide a hearing in which Mr. Markadonatos could raise any defense before Woodridge finally deprived his $30 – it did not do so. Mr. Markadonatos's complaint properly alleged this was a Procedural Due Process violation, so the district court should not have dismissed for failure to state a claim.

The district court also erred when it conflated the standing inquiry with the Rule 23 inquiry. The district court improperly held that Mr. Markadonatos did not have standing to make certain arguments in support of his claim. Mr. Markadonatos clearly alleged the three elements of standing inquiry – injury, causation, and redressability – in his Substantive Due Process claim because Woodridge deprived him of his $30 using the same procedures it applies to all arrestees and a favorable decision would cure the constitutional wrong which Woodridge committed against Mr. Markadonatos. Given that Mr. Markadonatos sufficiently established the elements of standing, the district court should have performed a Rule 23 inquiry before addressing the merits of Mr. Markadonatos's Substantive Due Process claim.

Finally, the district erred when it dismissed Mr. Markadonatos's Substantive Due Process claim. Substantive Due Process requires that any law enacted be rationally related to a legitimate government purpose. The purpose of Woodridge's Booking Fee provision is to recoup part of the administrative costs related to booking arrestees. Woodridge does not attempt to recoup part of the administrative costs related to other law enforcement duties. Additionally, its Booking Fee provision does not contain any procedures to ensure that an equal amount is collected from arrestees who do not have $30 on their person at the time of arrest. Because Woodridge's Booking Fee provision irrationally discriminates amongst arrestees and amongst "users" of Woodridge police's administrative services, it is substantively unconstitutional and the district court erred when it dismissed for failure to state a claim.

## ARGUMENT

The standard of review on a district court's dismissal of a claim on a 12(b)(6) motion to dismiss is *de novo. Tamayo v. Blagojevich*, 523 F.3d 1074, 1081 (7th Cir. 2008). When ruling on a motion to dismiss, this Court must view the complaint in a light most favorable to the plaintiff and accept as true all well-pled facts and draw all inferences in the plaintiff's favor. *Id.* To survive a motion to dismiss, a plaintiff's complaint must only include a "short and plain statement of the claim showing that he pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must include sufficient facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a plaintiff pleads facts which create a reasonable inference that the defendant is liable, the claim has facial plausibility. *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011).

As discussed below, the district court erred for three reasons when it dismissed Mr. Markadonatos's First Amended Complaint for failure to state a claim: (1) it incorrectly concluded that the Booking Fee provision satisfies procedural due process even though arrestees are afforded no procedures to contest Woodridge's deprivation of their $30; (2) it conflated the standing inquiry with the Rule 23 inquiry and erroneously determined that Mr. Markadonatos could not make certain arguments in support of his substantive due process claim; and (3) it incorrectly concluded that the Booking Fee provision satisfied substantive due process even though Woodridge deprives all arrestees of their $30 regardless of the legality of their arrest or any other factor and the 2005 Ordinance does not have established

8

collection procedures for Woodridge to follow in the event an arrestee does not have $30 on his or her person at the time of arrest.

I.    The District Court Erred When It Concluded That Mr. Marka-
      donatos Failed To State A Claim Because The Booking Fee Pro-
      vision Does Not Provide Any Pre- or Post-Deprivation Process
      Before Finally Depriving Arrestees Of Their Money.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Although the Supreme Court has warned that due process "is not a technical conception with a fixed content unrelated to time, place, and circumstanc-es," and instead is adapted as a particular situation demands, it hardly can be said that due process requires *no* procedural or substantive protections in a particular situation. *See id.* at 334. Instead, the Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a proper-ty interest." *Id.* When Woodridge deprived Mr. Markadonatos of his $30, it never afforded him an opportunity to be heard, thereby denying him the basic procedural protections required by the Constitution. *See id.* If this Court affirms the district court's decision, Mr. Markadonatos and all members of the proposed class are left completely unable to make any argument in defense of their property. This Court should not let Woodridge's Booking Fee provision stand. The Booking Fee provision is contrary to the Constitution because it provides arrestees with *no* opportunity to contest the taking of their property. This Court should therefore reverse the district court's decision  and remand and reassign this case pursuant to Circuit Rule 36 for further proceedings.

9

To state a claim for relief under § 1983, a plaintiff must establish that the defendant deprived him of "a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 426 U.S. 40, 49-50 (1999). When a plaintiff alleges a deprivation of property in a due process case, the threshold question is whether the state has interfered with a protected property interest. *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993). Protected property interests are not created by the Constitution and instead "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The law is clear that individuals have a protected property interest in their money. *See id.* at 571-72. The district court therefore correctly concluded in its first memorandum opinion and order that Mr. Markadonatos had a property interest in his money and that Woodridge interfered with that interest by depriving him of his money pursuant to its Booking Fee provision. A19.

Following the threshold inquiry of whether a protected property interest exists, a court must determine "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court established three factors to consider in determining whether the procedures attendant upon a deprivation are constitutionally sufficient: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the proba-

ble value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. As a threshold matter, several courts have held that due process is not satisfied when the government does not provide an individual *any* opportunity to test the factual bases of a deprivation. *See Stypmann v. City and Co. of San Francisco*, 557 F.2d 1338, 1344 (9th Cir. 1977); *Johnson v. City of Evanston*, 250 F.3d 560, 563 (7th Cir. 2001); *Allison v. City of Bridgeport*, 2006 WL 1599811 at *4 (S.D. Ill. June 8, 2006). This inquiry was performed by those courts before considering any of the three *Mathews* factors. *See id.*

As discussed below, the district court made two errors in its Procedural Due Process analysis: (1) it dismissed Mr. Markadonatos's complaint where the complaint clearly alleged that he was not provided with *any* opportunity to test the factual bases of Woodridge's deprivation of his $30; and (2) it failed to acknowledge the risk of erroneous deprivation under the Booking Fee provision and the value of an added post-deprivation hearing which would eliminate any risk of erroneous deprivation. Also discussed below are the private and governmental interests involved in this case and whether Mr. Markadonatos has any meaningful post-deprivation state law remedies. Because the district court erred when it determined Mr. Markadonatos failed to state a claim that Woodridge deprived him of his procedural due process rights, this Court should reverse the district court's decision.

A.    Woodridge's Booking Fee Provision violates Due Process be-
cause it does not provide *any* opportunity to test the bases for
Woodridge's deprivation of $30 from all arrestees.

Procedural due process requires the government to provide individuals with the ability to promptly test the factual bases of the deprivation. *See Johnson*, 250 F.3d at 563; *Stypmann*, 557 F.2d at 1344. In *Johnson*, the plaintiff got into a dispute with an auto repair shop about the cost of a repair bill. *Id.* at 561. Although the plaintiff refused to pay the bill, the shop allowed him to drive his car home. *Id.* Several days later, however, the shop had someone steal the car and demanded additional payment for "storage fees." *Id.* The plaintiff, infuriated by the shop's actions, called the police, but the officers sided with the shop owner when they arrived on the scene and took custody of the car. *Id.* The officers even forbade the shop to return the car when the shop's owner offered to give it back to the plaintiff and the officers also prevented the plaintiff from entering his car to remove his possession. *Id.* at 562. The plaintiff filed suit against the police and the city, alleging a violation of his due process rights. *Id.* The district court dismissed the case and the Seventh Circuit reversed, concluding that the plaintiff sufficiently stated a due process claim. *Id.* at 563. Although the court did not strictly analyze the plaintiff's claims under the *Mathews* test, it did conclude that the police and city did need to provide some form of process to test the deprivation. *Id.* The court specifically rejected the city's argument that the plaintiff "had no remedy, period," noting that such an argument "just makes [the plaintiff's] constitutional point." *Id.*

12

In *Stypmann*, several plaintiffs filed a class action against San Francisco because it was creating possessory liens for towing and storage charges pursuant to a state statute. 557 F.2d at 1340. Once a San Francisco police officer made an initial determination that a car should be towed, the statute permitted towing companies to establish liens without a hearing before or after the lien attached. *Id.* at 1340-41, n. 2. The statute required an individual to pay the fees before recovering his or her vehicle and it did not provide any provisions allowing the individual to contest the police officer's bases for the tow or detention or the legality of the lien. *Id.* at 1343. The district court granted summary judgment for the plaintiffs and struck the statute as violating due process and the Ninth Circuit affirmed. *Id.* at 1344. The court concluded that because no procedural protections were afforded to test the factual bases of the tow and subsequent creation and attachment of the towing and storage liens, the statute violated procedural due process. *Id.*; *see also Allison*, 2006 WL 1599811 at *4 (holding that Abandoned Vehicle Ordinance violated due process where it allowed city to tow unregistered cars kept in yards or driveways without providing individuals the opportunity for a hearing before or after city towed cars).

In its first memorandum opinion and order, the district court did not find a due process violation in Woodridge's Booking Fee provision, reasoning that no erroneous deprivation could possibly occur because the $30 fee was assessed on all arrestees solely because they were arrestees. A21-22. Like *Stypmann* and *Allison*, where the defendant cities deprived the plaintiffs of their property pursuant to statute, Woodridge deprives all arrestees of $30 pursuant to the Booking Fee provi-

sion. 557 F.2d at 1344, 2006 WL 1599811 at *4; A26. Woodridge's deprivation of all arrestees' $30 pursuant to its Booking Fee provision does not in itself satisfy due process because a law enforcement officer's initial determination that an individual's property can be confiscated pursuant to a statute does not in itself satisfy due process. *See Stypmann*, 557 F.2d at 1343 ("[a] police officer must authorize the tow, but he also 'gathers the facts upon which the charge of ineligibility rests,' and his judgment cannot be wholly neutral") (citing *Goldberg v. Kelly*, 397, US 254, 269 (1970)). Because due process is not satisfied when the government does not provide an individual *any* opportunity to test the bases of a deprivation, the district court erred when it concluded that Mr. Markadonatos failed to state a claim for denial of procedural due process. *See id.* at 1344; *Johnson*, 250 F.3d at 563; *Allison*, 2006 WL 1599811 at *4.

In the district court's view, Mr. Markadonatos has no remedy, and it is clear that such a view simply "makes [Mr. Markadonatos's] constitutional point." *See Johnson*, 250 F.3d at 562. The district court therefore was wrong when it concluded that Mr. Markadonatos was not due any more "process" than a Woodridge law enforcement officer's determination that he had, in fact, been arrested. A22; *see Stypmann*, 557 F.2d at 1343. It is clear that due process required Woodridge to provide Mr. Markadonatos with some form of hearing so that he could mount possible challenges to the bases for its deprivation. *See Johnson*, 250 F.3d at 562. Even if this Court were to consider the district court's second memorandum opinion and order where it used its judicial "common sense" to find that Woodridge provides minimal

14

pre-deprivation process, it would still be appropriate for this Court to reverse the district court's decision to dismiss Mr. Markadonatos's First Amended Complaint for failure to state a claim. A46. As discussed below, such process is illusory at best, and in any event, the process this district court found is still premised on a Woodridge law enforcement officer's initial discretion and such process does not satisfy due process. *See Stypmann*, 557 F.2d at 1343. For this reason alone, this Court should reverse the district court's orders.

>    B.    The Booking Fee Provision's lack of procedural protections creates a significant risk of erroneous deprivation and there is great value in providing a post-deprivation hearing which would eliminate almost all risk of erroneous deprivation.

Under the second *Mathews* factor, courts must determine whether the government's established procedure create the risk that it will erroneously deprive individuals of protected interests and whether any additional procedures would eliminate that risk. *See* 424 U.S. at 335. When the government provides no pre-deprivation hearing or process, it is far more likely to erroneously deprive an individual of a protected property interest, so the government must therefore provide reasonable post-deprivation procedures under the second *Mathews* factor to reduce the risk of erroneous deprivation. *See Allen v. Leis*, 213 F. Supp. 2d 819 833-34 (S.D. Ohio 2002) ("*Allen I*"). Additionally, the process provided must be more than an informal, ad hoc, unpredictable process because such process is illusory at best and does not provide individuals with a meaningful opportunity to be heard or raise any defenses. *See Wayt v. Town of Crothersville*, 866 F. Supp. 2d 1008, 1022 (S.D. Ind. 2012); *see also Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (holding that due pro-

15

cess requires that there be an opportunity to present every available defense). In contrast, when pre-deprivation procedures are administrative and have little risk of erroneous deprivation and there are available post-deprivation procedures to test the bases for the initial deprivation, the government does not need to supply additional pre-deprivation procedures to satisfy due process. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253-54 (5th Cir. 2005); *Sickles v. Campbell County*, 501 F.3d 726, 730-31 (6th Cir. 2007).

When there is an extreme risk that the government will erroneously deprive an individual of a property interest and the government would incur only minimal burdens by providing additional procedures, the government must do so to satisfy due process. *See Allen I*, 213 F. Supp. 2d at 833-34. In *Allen I*, the defendant county adopted a policy requiring any person confined in the county jail to pay a $30 "book in fee" to help defray a portion of the booking cost. *Id.* at 820. Every detainee was forced to pay the fee with whatever amount of funds the detainee had on his or her person, up to the $30 limit. *Id.* at 832. The county did not afford detainees any chance to contest the fee, either pre- or post-deprivation. *Id.* The county also imposed the fee regardless of the crime committed or whether the arrestee was innocent, a first-time arrestee or a multiple felon. *Id.* In assessing the second *Mathews* factor, the court noted that the risk of erroneous deprivation was "extreme" because the deprivation occurred before any kind of hearing. *Id.* at 833. The court also determined that the defendant could easily assess the fee after a conviction or guilty plea and that doing so would reduce the risk of erroneous deprivation. *Id.*

Similarly, when there is a 100 percent risk that the government's established procedures can erroneously deprive an individual of a property interest the government must provide additional procedures to satisfy due process. *Roehl v. City of Naperville*, 857 F. Supp. 2d. 707, 717 (N.D. Ill. 2012). In *Roehl*, the defendant city enacted an ordinance allowing the city to charge a $50 fee to any person arrested by city police. *Id.* at 709. The ordinance did not establish any procedures allowing an arrestee to contest the fee or seek reimbursement. *Id.* In 2011, after the plaintiff filed suit, the city subsequently repealed its original ordinance and enacted a modified ordinance which including a procedure for collecting the fee from an arrestee who does not have money to pay the fee at the time of arrest and a hearing and appeal procedure to contest the fee. *Id.* at 710. In assessing the second *Mathews* factor, the court noted that there was a "100 percent chance" that the city would erroneously deprive someone who should not have paid the fee under the old ordinance because there were no procedural safeguards which would allow arrestees to contest the fee. *Id.* at 716. The court also concluded that although no pre-deprivation hearing is required under *Mathews* because of the small private interest at stake, a post-deprivation procedure was required to reduce the risk of erroneous deprivation. *Id.* at 716-17.

If a government's established procedures are informal or unpredictable, the process is illusory at best and does not meet the requirements of due process. *Wayt*, 866 F. Supp. 2d at 1022. In *Wayt*, a utilities customer had her water disconnected after being sent a delinquent card by the utility company. *Id.* at 1021. Under the

company's procedures, a customer could contest the decision to disconnect her water supply by making a phone call to a designated employee. *Id.* The company's employee had sole discretion to determine whether to then allow that customer's complaint to be placed on the agenda of town council meetings. *Id.* At those meetings, it was the town's attorney who decided whether to hear the complaint. *Id.* In assessing the second *Mathews* factor, the court determined that the customer was not offered a meaningful opportunity to be heard. *Id.* at 1022. Because the company's appeal process was informal, ad hoc, and unpredictable, the court concluded that the process did not meet due process standards and denied the defendant's motion for summary judgment. *Id.*

In contrast, when the government provides several post-deprivation avenues to challenge a relatively small deprivation, due process does not require the government to supply any additional pre-deprivation processes. *Slade*, 407 F.3d at 254. In *Slade*, the defendant jail charged prisoners one dollar per day pursuant to a state statute. *Id.* at 246. Under the statute, the jail could not seek a judgment against an inmate if the inmate did not have funds. *Id.* at 247. The statute also allowed an inmate to request a refund within 60 days being adjudicated "not guilty." *Id.* In assessing the second *Mathews* factor, the court determined that that the pre-deprivation procedures were sufficient because they were ministerial with little risk of error. *Id.* at 253. The court specifically noted that the plaintiff did not contest the sufficiency of any post-deprivation procedures and pointed to the internal jail grievance procedures and the ability to request a refund within 60 days of being adjudi-

18

cated "not guilty." *Id.* at 254, n. 9. Because of the low risk of erroneous deprivation, the court concluded that due process did not require further pre-deprivation procedures. *Id.*

Similarly, ministerial pre-deprivation procedures do not violate due process when the government also provides post-deprivation procedures to contest the final deprivation of a protected property interest. *Sickles*, 501 F.3d at 731. In *Sickles*, the defendant jails had a policy to withhold a portion of any funds in an inmate's canteen account in order to offset that amount against room-and-board fees. 501 F.3d at 729. The jails had an internal grievance procedure to contest any errors in the handling of an inmate's canteen account and inmates were also provided with additional post-deprivation procedures. *Id.* at 731. In their complaint, the plaintiffs claimed the policy violated due process because it did not provide a pre-deprivation hearing. *Id.* at 730. The court determined that the pre-deprivation procedures provided sufficient process under the second *Mathews* factor because the process involved "elementary accounting," which had little risk of error and was ministerial, and the inmates also had access to internal grievance procedures and other post-deprivation procedures to contest errors or seek an exemption from the fee for good cause. *Id.* at 730-31; *see also Payton v. Co. of Carroll*, 473 F.3d 847, 851-52 (7th Cir. 2007) ("*Payton I*") (holding that government did not need to provide extra procedural safeguards because sheriff's bail system already contained a number of alternative pre-deprivation procedures for individuals who could not afford the administra-

tive fee including: paying the county clerk instead of the sheriffs; paying the bond in full; or putting down property as collateral).

In this case, the district court's two opinions present starkly different analyses under the second *Mathews* factor. In its first opinion, the district court concluded that there is an almost non-existent risk of erroneous deprivation because a Woodridge law enforcement officer must make a simple determination – that an arrestee was in fact arrested. A22. The district court therefore was focused solely on pre-deprivation procedures because it was only concerned with the process Woodridge afforded Mr. Markadonatos at the time of his arrest. *See* A21-22. In its second memorandum opinion and order, the district court used its judicial "common sense" to find that Mr. Markadonatos had an opportunity for a pre-deprivation hearing. A46. This is entirely inconsistent with (1) the plain language of the Booking Fee provision, which provides for no such hearing; (2) Woodridge's own pleadings in the district court below; and (3) the district court's first memorandum opinion and order.

The district court's internally inconsistent decisions show the error in its reasoning and establish that it never performed a full analysis of the second *Mathews* factor. The second *Mathews* factor requires a court to consider the risk of erroneous deprivation and the value that any additional procedures would have. 424 U.S. at 335. In other words, the district court should have examined both the pre- and post-deprivation procedures under the Booking Fee provision to determine whether there was a risk of erroneous deprivation and the best way Woodridge could minimize

20

that risk through additional procedures. The district court did not do so in either of its opinions because of its focus on the Booking Fee provision's pre-deprivation procedure – assessing a fee on an arrestee simply because he or she is an arrestee. A21-22, A46. By failing to consider the value of post-deprivation procedures and accurately assess the risk of erroneous deprivation under the Booking Fee provisions, the district court failed to sufficiently consider whether it was proper for Woodridge to deny Mr. Markadonatos any opportunity to contest the deprivation of his money, which is the crux of what due process requires in these circumstances. *See Allen I*, 213 F. Supp. 2d at 834; *Roehl*, 857 F. Supp. 2d. at 717.

Like the statute and ordinance at issue in *Allen I* and *Roehl*, Woodridge's Booking Fee provision has an "extreme" or "100 percent" risk that Woodridge will wrongfully deprive someone of $30 because there is no means to challenge the imposition of the fee. 213 F. Supp. 2d at 834; 857 F. Supp. 2d. at 717; A26. This conclusion was confirmed by the district court's unlikely hypothetical in which it reasoned that Woodridge could possibly deprive an innocent family member or attorney of their $30 pursuant to the Booking Fee provision. A46. The district court concluded that such an "arrestee" would be obligated to pay the $30 because of the "arrest" and that there would be no procedural due process violation from such an "arrest." A46 n. 3.

The district court proffered its hypothetical in the course of trying to find that Mr. Markadonatos was provided with some "minimal process." Its reasoning simply proves Mr. Markadonatos's argument that there is a risk of erroneous deprivation

under the Booking Fee provision because it found that an individual could have his or her $30 erroneously deprived by a Woodridge law enforcement officer.[1] Woodridge could also erroneously deprive individuals of their $30 pursuant to the Booking Fee provision in other hypothetical situations which were raised in *Allen I* and *Roehl*, such as an individual who was arrested on a recalled warrant, an individual who matched the description of a suspect and was incorrectly arrested, or an individual who was arrested without probable cause. 213 F. Supp. 2d at 832; 857 F. Supp. 2d. at 716-17.

Although the pre-deprivation process of determining who is an arrestee is an administrative detail which requires no discretion, this decision does not establish that Woodridge is constitutionally entitled to deprive an arrestee of his or her $30. Mr. Markadonatos's claim is not like those of the individuals in *Slade* and *Sickles*, where the inmates had access to internal jail grievance procedures to contest fees or were able to request an exemption from the fee with a showing of good cause, because his claim is that he was not provided with *any* procedure. 407 F.3d at 253-54; 501 F.3d at 730-31. Additionally, those cases involved pre-deprivation procedures of simple percentage calculations, which are easily accomplished by a computer, and

---

[1]     The district court attempted to correct the flaw it exposed in its procedural due process analysis by claiming that such an individual would have a false arrest claim in which he could recover his $30, "along with much else." A46 n. 3. As discussed below in Section I(D), an individual's ability to pursue alternative state law remedies does not extinguish his procedural due process claim when the government deprived him of his property interest pursuant to an established state procedure. Additionally, the district court again exposed the main flaw in its reasoning – it failed to consider that due process is not satisfied solely by a law enforcement officer's initial determination that an individual's property can be confiscated. *See Stypmann*, 557 F.2d at 1343; *Johnson*, 250 F.3d at 562.

are thus distinguishable from the complicated probable cause determination which a judge must make before an arrest can be deemed legally sufficient. *Id.* This determination is what may ultimately establish Woodridge's right to deprive an arrestee of his or her funds, not a law enforcement officer's determination that an arrest did in fact occur. *Cf. Sypmann*, 557 F.2d at 1343. The district court therefore erred when it concluded that there was no risk of erroneous deprivation and that Mr. Markadonatos was not entitled to additional procedures under the Booking Fee provision. A21-22, A46.

The district court also erred when it concluded that Woodridge met the requirements of due process by providing Mr. Markadonatos with "minimal process." A46. Much like the *Wayt* company's policy which did not meet the requirements of due process the process which the district court discovered is informal, ad hoc, and unpredictable at best. *See* 866 F. Supp. 2d at 1022; A46. Interestingly, the Booking Fee provision contains no express language giving Woodridge law enforcement officers the discretion to choose not to impose the fee. *See* A33. Indeed, the district court concluded numerous times that imposing the fee required "no discretion" and Woodridge's own pleadings confirmed that the fee was ministerial. A22, A46. It is unclear why the district court changed its conclusions about the process with which Mr. Markadonatos was provided from its first opinion to the second. Even if this Court were to consider the "minimal process" the district court found through its judicial "common sense," the process is clearly illusory at best and, in reality, non-

existent.[2] A46. Such process clearly does not satisfy due process because it does not provide arrestees with a sufficient means to contest the deprivation of their $30. *See id.* Indeed, Woodridge law enforcement officers or administrative officials have no legal training that would allow them to analyze the validity of any defenses which an arrestee would raise. Due process requires that an individual be given an opportunity to raise all defenses in defense of their property, and this is precisely why governmental bodies typically provide hearings before an administrative law judge, at a minimum, before they effect a final deprivation of a protected property interest. *See Lindsey*, 405 U.S. at 66. Because due process requires Woodridge to provide some form of procedures which allow arrestees to contest the deprivation and raise any defenses, this Court should reverse the district court's decision.

Woodridge may continue to complain that providing a hearing would eviscerate the fee's *raison d'être* because any additional procedures would come at a significant fiscal and administrative cost. Both *Allen I*, which suggested many non-cost options such as waiting to impose the fee after a conviction or guilty plea, and Naperville, which provided a hearing and appeal process without increasing its booking fee, show that such an argument is meritless. *See* 213 F. Supp. 2d at 833; *Roehl*, 857 F. Supp. 2d at 710. Because there is an extreme risk of erroneous deprivation

---

[2]     Mr. Markadonatos would like to reiterate that, in the district court below, Woodridge admitted in its own pleadings that it does not provide any hearing because that would defeat the fee's purpose and shift financial accountability from arrestees to taxpayers. Although a court may, and indeed should, use its judicial "common sense" to assess and evaluate the pleadings' factual allegations, a court reaches a nonsensical result when its understanding of the facts is at odds with both parties' joint understanding of the facts.

under the Booking Fee provision and there is great value in providing additional procedures, Woodridge must provide additional procedures if it is to satisfy the requirements of due process. The district court therefore erred when it failed to adequately consider the risk of erroneous deprivation or suggest additional procedures. A22, A46. For these reasons, this Court should reverse the district court's decision.

      C.     Mr. Markadonatos's interest in his $30 and Woodridge's interest in defraying administrative costs incurred in processing arrestees and the burden on Woodridge to implement additional procedures are all small.

In its first memorandum opinion and order, the district court correctly identified Mr. Markadonatos's primary interest – the $30 which Woodridge seized from him at the time of his arrest. A20-21. The district court did not err in determining that this interest was small, as courts which have considered similar interests have almost universally found that such amounts are relatively small compared to other interests such as one's home, government benefits, or transportation. *Id.*; *see Sickles*, 501 F.3d at 730 ($20 and $110.27 at stake); *Roehl*, 857 F. Supp. 2d at 713 ($50 at stake). The district court therefore did not err in evaluating the first *Mathews* factor.

In its first memorandum opinion and order, the district court also correctly identified Woodridge's primary interest – recouping the costs incurred in processing arrestees. A22. The district court also did not err in concluding that Woodridge's interest was small, and as noted by the court in *Roehl*, the government's interest in recouping costs may ultimately depend on additional factors. *Id.*; *see* 857 F. Supp. 2d at 714-15. Even if the *Roehl* court's analysis were to be followed, Woodridge's in-

25

terest in the $30 it deprived from Mr. Markadonatos would merely equal Mr. Markadonatos's same interest in that $30.

Woodridge may establish a range of additional procedures, and these would all impose varying levels of additional fiscal or administrative burdens. Woodridge does not deprive all arrestees of $30 at the time of arrest, and the receipt which Woodridge provides to all arrestees shows that they have fifteen days from the date of arrest to pay the $30 fee. In the event that an arrestee does not have funds on his or her person, the 2005 Ordinance has no procedures to follow in the event Woodridge has to collect these funds, and it is unclear whether Woodridge even makes an effort to do so. Woodridge already may incur some fiscal and administrative burdens to collect these funds, so additional procedures may impose no burdens.

Even if Woodridge does not incur collection costs, Woodridge could solve its dilemma with almost no additional fiscal or administrative burdens by waiting until a conviction or a guilty plea before depriving arrestees of their $30 pursuant to the Booking Fee provision. *See Allen I*, 213 F. Supp. 2d at 833. Similarly, Woodridge could solve its dilemma at minimal cost much like Naperville has by providing for an informal hearing with the police chief and the ability to request a more formal administrative hearing. *See Roehl*, 857 F. Supp. 2d at 710.

Because the district court did not err in its analysis of the first and third *Mathews* factors, this Court should similarly conclude that Mr. Markadonatos's interest equals Woodridge's interest in the $30. *See* A20-21, A23. This Court should

also conclude that Woodridge has the ability to implement various procedures at no

or minimal cost.

> D.   Mr. Markadonatos has no feasible remedy under Illinois law
>      which will provide him with a completely adequate remedy.

The Supreme Court has held that in limited circumstances, a § 1983 proce-

dural due process claim is unavailable if a state remedy exists. *Parratt v. Taylor*,

451 U.S. 527, 539 (1981), *overruled on other grounds by Daniels v. Williams*, 474

U.S. 327 (1986). *Parratt* is a "special instance" of the *Mathews* test, however, and is

applicable only "where post-deprivation process is all that is due because no pre-

deprivation safeguards would be of use in preventing the kind of deprivation al-

leged." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is because the loss in *Par-*

*ratt* was the "result of a random and unauthorized act by a state employee," and the

state therefore could not have prevented the loss of the plaintiff's hobby supplies

with any further procedural protections. 451 U.S. at 541. *Parratt* is therefore inap-

plicable because Woodridge did not deprive Mr. Markadonatos of his money through

the random and unauthorized act of one its employees. *See id.*

If a plaintiff's procedural due process claim is based on an established gov-

ernmental procedure, the existence of a post-deprivation state law claim does not

preclude the procedural due process claim. *See Zinermon*, 494 U.S. at 138-39. Be-

cause the Booking Fee provision is an established governmental procedure, state

law remedies are a red herring because Woodridge deprived Mr. Markadonatos of

his money by pursuant to the Booking Fee provision. *See id.* Even if the adequacy of

state law remedies were at issue in this case, it is clear that Mr. Markadonatos has

no feasible remedy which will provide him with a completely adequate remedy under Illinois law.

Mr. Markadonatos does not have any remedies under Illinois state law and a due process claim is his sole remedy. Mr. Markadonatos could not pursue a mandamus action in state court because the acts of the Woodridge law enforcement officer who imposed the fee were not random or unauthorized. *See Parisi v. Village of Deerfield*, 2008 U.S. Dist. LEXIS 52898 at **5-6 (N.D. Ill. Jul. 9, 2008). Mr. Markadonatos also did not enter into a contract of any kind with Woodridge, so he is not entitled to pursue a breach of contract claim. *See Cote v. Village of Broadview*, 2009 WL 2475117 at **6-7 (N.D. Ill. Aug. 11, 2009). Mr. Markadonatos similarly would not be able to bring an unjust enrichment claim because it is "not a separate cause of action that, standing alone, will justify an action for recovery." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. 3d Dist. 2009). Finally, Mr. Markadonatos cannot bring a conversion action under Illinois law because Woodridge seized his $30 pursuant to an established state procedure. *See Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Because Mr. Markadonatos has no available Illinois state law remedies, this Court cannot bar his procedural due process claim under the *Parratt* doctrine. *See* 451 U.S. at 539.

II.     The District Court Erred When It Concluded That Mr. Marka-
        donatos Did Not Have Standing To Challenge The Rationality
        Of The Booking Fee Provision, As Applied To Other Arrestees In
        The Class, Without First Determining The Issue Of Class Certi-
        fication.

To establish standing, a plaintiff must show that he suffered an "injury in

fact" which is "fairly trace[able] to the challenged action of the defendant" and it is

"likely, as opposed to merely speculative, that the injury will be redressed by a fa-

vorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (inter-

nal citations and quotations omitted). In class actions, a plaintiff must establish in-

dividual standing to bring a claim and cannot complain that other class members or

unknown persons may have been injured by the defendant's actions. *See Blum v.*

*Yaretsky*, 457 U.S. 991, 999-1000 (1982) (holding that the trial court lacked juris-

diction to grant class relief when representatives had not been transferred pursuant

to defendant's policy or threatened with such transfers and therefore had not suf-

fered injury under that part of the policy).

Once a class plaintiff has established individual standing, the court must per-

form the Rule 23 inquiry to determine whether the plaintiff may serve as a class

representative. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Payton v. County*

*of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) ("*Payton II*"). Because Mr. Markadonatos

clearly established standing to bring a substantive due process claim, the district

court erred when it concluded that he had limited standing and was only able to put

forth certain arguments in defense of his substantive due process claim. A48-49; *see*

*Payton II*, 308 F.3d at 677.

In *Payton II*, six former arrestees filed suit against 19 Illinois counties for the counties' imposition of a bail fee, which was above and beyond the set bail amount, as a condition for their release. 308 F.3d at 675. Four of the plaintiffs had been confined in Kane County and the other two had been confined in DuPage County. *Id.* All paid a bond fee pursuant to the same Illinois statute but none had been confined in any of the other 17 Illinois counties. *Id.* The plaintiffs alleged that an unknown number of other people in the 17 other counties were also charged fees based on the same Illinois statute. *Id.* The district court dismissed the claim without reaching the issue of class certification, finding that the plaintiffs lacked standing. *Id.* at 676. The Seventh Circuit reversed the district court's decision, holding that the individuals had standing and that the district court had to conduct further proceedings on the issue of class certification. *Id.* at 677-81. On the issue of individual standing, the *Payton II* court determined that the requirements were "easily me[t]" because the plaintiffs suffered a monetary injury as a result of each county's policy and that a lawsuit could redress the plaintiffs' injury. *Id.* at 677. Because the individual plaintiffs had standing, the *Payton II* court remanded the case to the district court to determine whether a class could be certified against Kane and DuPage Counties. *Id.*

The issue of whether the class had standing against the 17 other defendant counties was a more difficult issue because no named plaintiff had suffered an injury from those counties' actions. *Id.* at 678. Although the court did not determine whether a class was properly certified against the 17 other counties because it did not have a proper record, it did determine that nothing in standing doctrine or Rule

23 precluded a class action against the other counties. *Id.* at 681-82. Because the statute was uniformly applied throughout the state, the court concluded that its constitutionality "should not differ from one county to the next." *Id.* at 680. The court also concluded that the named plaintiffs were not piggy-backing on the injuries of others because they were "personally injured by the operation of the very same statute that cased the injuries to all other members of the proposed class." *Id.* at 682.

In the present case, it is clear that Mr. Markadonatos has standing to bring a substantive due process claim – he suffered a monetary injury as a result of Woodridge's policy and his substantive due process claim can redress his injury. A26; *see Payton II*, 308 F.3d at 677. When it dismissed the First Amended Complaint, the district court reached a result which is uniquely at odds with standing analysis. A48-49. It determined that Mr. Markadonatos had standing to bring a substantive due process claim but otherwise did not have standing to raise certain arguments in support of his substantive due process claim. *Id.* The district court therefore committed the same error as the district court in *Payton II* – it conflated standing with the Rule 23 inquiry. *See* 308 F.3d at 677.

In the First Amended Complaint, Mr. Markadonatos clearly alleged that the Booking Fee provision is facially unconstitutional. A25. The district court could not use its judicial "common sense" to ignore the allegations of the First Amended Complaint and determine that Mr. Markadonatos's standing was somehow different from other arrestees because they were universally charged $30 pursuant to the

31

same Booking Fee provision and therefore suffered the same injury. A48-49; *see Payton II*, 308 F.3d at 680. Mr. Markadonatos and all the prospective members of the prospective class suffered the same injury when they had to pay Woodridge $30 pursuant to the Booking Fee provision, much like the class members in *Payton II*, who had standing because they all suffered the same injury when they had to make an extra payment pursuant to jail policy. 308 F.3d at 677.

The district court should have properly addressed any concerns it had over Mr. Markadonatos's differences from other proposed class members in a Rule 23 inquiry or in subsequent individual damages hearings instead of creating a disjuncture where none exists by rewriting the allegations of the First Amended Complaint. A48-49; *see Sosna*, 419 U.S. 402-03 (distinguishing between the justiciability inquiry and the Rule 23 inquiry of whether the named representative will "fairly and adequately protect the interests of the class"); *see also Butler v. Sears, Roebuck and Co.*, --- F.3d ---, 2012 WL 5476831 at *2 (7th Cir. 2012) (concluding that when the basic question in class action litigation is the same, a court should certify the class but consider holding individual hearings to determine the damages sustained by each class member).

Given that Mr. Markadonatos had sufficient standing, the district court erred when it created a disjuncture between him and other arrestees because one of the basic questions in the First Amended Complaint is whether the Booking Fee provision is facially unconstitutional. A48-49, A25. The constitutionality of Woodridge's Booking Fee provision "should not differ from one [arrestee] to the next" because it

is uniformly applied to all arrestees based on the sole fact that they were arrested. *See Payton II*, 308 F.3d at 680. This Court should therefore reverse the district court's decision and remand reassign this case pursuant to Circuit Rule 36 with instructions to perform a Rule 23 inquiry before deciding the merits of Mr. Markadonatos's substantive due process claim.

III.    The District Court Erred When It Concluded That The Booking Fee Provision Is Rational Where It Provides No Standards And Woodridge Arbitrarily Discriminates Amongst Arrestees And Between Classes Who Use Administrative Services.

Although most often used to prohibit an abuse of government power which shocks the conscience, substantive due process also requires that when a legislature defines a class of persons subject to legislation, any distinctions from other classes must have some "relevance to the purpose for which the classification is made." *See Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966) (internal citations and quotations omitted). A plaintiff must "show either the inadequacy of state law remedies or an independent constitutional violation" when stating a substantive due process claim. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (internal citations and quotations omitted). As shown in Section I(D) above, Mr. Markadonatos does not have any state law remedies that he can pursue. Once a plaintiff has met this threshold requirement, a court must consider whether the government's practice is rationally related to a legitimate government interest, or alternatively, "that the practice be neither arbitrary nor irrational." *Id.*

The Supreme Court has consistently held that "arbitrary and irrational discrimination" does not meet the rational basis test. *See e.g. Bankers Life 7 Casualty*

33

*Co. v. Crenshaw*, 486 U.S. 71, 83 (1988). A court should not focus on whether there is a rational basis for a law generally; instead, a court must determine "whether there is an appropriate governmental interest suitably furthered by the differential treatment." *Police Dep't v. Mosley*, 408 U.S. 92, 95 (1972). Because Woodridge's Booking Fee provision imposes costs on all arrestees, regardless of the subsequent disposition of their cases, and because the Booking Fee provision contains no procedures to collect an equal amount from each arrestee, the Booking Fee provision does not suitably further Woodridge's interest in defraying the administrative costs it incurs when processing arrestees and the district court erred when it concluded that Mr. Markadonatos failed to state a claim for a substantive due process violation. A49.

When a law imposes costs on one class of persons but not on another similarly situated class, the law violates substantive due process. *Rinaldi*, 384 U.S. at 309. In *Rinaldi*, New Jersey permitted counties to seek reimbursement from unsuccessful criminal appellants. *Id.* at 307. The plaintiff had unsuccessfully appealed his case and subsequently had a portion of his pay withheld from him and sent to the county treasurer. *Id.* at 306. Although the plaintiff challenged the law on other grounds, the Supreme Court struck down the law on the basis that it violated the Equal Protection Clause. *Id.* at 308. The Supreme Court found that each appellant was provided with the same benefit but only some were required to reimburse the county for that benefit and that such a distinction had "no relationship whatsoever to the purpose of the repayment provision." *Id.* at 309. Because the law arbitrarily

discriminated between unsuccessful appellants who were confined to prisons and those who were subject to a suspended sentence or probation it did not meet the requirements of substantive due process. *Id.*

Likewise, when similarly situated individuals are treated differently under a law, the law does not meet the requirements of the Equal Protection Clause. *See Allen v. Leis*, 154 F. Supp. 2d 1240, 1269 (S.D. Ohio 2001) ("*Allen II*"). In *Allen II*, the defendant county established a "Pay-for-Stay Program" which allowed the jail to collect up to $30 from each detainee upon being booked into jail. *Id.* at 1249. If the detainee did not have $30 in currency on his or her person, the county would collect whatever cash that person had. *Id.* at 1270. The district court denied the defendant county's motion for summary judgment, finding that genuine issues of material fact existed. *Id.* at 1271. The court preliminarily found that the Pay-for-Stay Program likely failed the rational basis test and wanted further questions answered, such as whether the defendant county made any efforts to collect the balance of the $30 or whether the county accepted any type of payment, in addition to cash.[3] *Id.*

In contrast, when a cost is imposed as a users' fee on all who seek the benefit of a statute, the statute does not violate the Equal Protection Clause. *See Schilb v. Kuebel*, 404 U.S. 357, 370-71 (1971). In *Schilb*, an Illinois statute permitted court clerks to charge 1% of bail as "bail bond costs" when an individual deposited 10% of the bail to satisfy it. *Id.* at 360. The Supreme Court considered several equal protec-

---

[3]     The *Allen* court did not answer those questions in its June 19, 2001 Order; *Allen II*, 154 F. Supp. 2d at 1271; or in its April 25, 2002 Order in which it granted summary judgment on behalf of the plaintiff. *Allen I*, 213 F. Supp. 2d at 834.

tion arguments, and concluded that there was a rational basis for the imposition of the 1% charge only when an individual deposited 10% because Illinois incurred no costs when an individual was granted bail on personal recognizance and Illinois's interests in decreasing flight risk were served when an individual deposited 100% of the bail amount. *Id.* at 366-67. Finally, the court noted that because the cost was imposed on all who "seek the benefit" of the statute, it was properly imposed as an administrative fee. *Id.* at 370; *see also Payton I*, 473 F.3d at 852 (holding that sheriffs have a legitimate interest in recouping part of the costs of administering bail system).

In the present case, Woodridge's 2005 Ordinance does not set forth any statements or findings by Woodridge which would establish the purpose for imposing the various fees. *See* A33. The 2005 Ordinance also does not establish any procedures to challenge the imposition of the fee or seek reimbursement. *Id.* Finally, the 2005 Ordinance does not establish a procedure which Woodridge must follow in the event an arrestee does not have $30 on his or her person at the time of arrest. *Id.*

In its second memorandum opinion and order, the district court identified Woodridge's interest in defraying the costs of processing arrestees. A49. Woodridge asserted a similar purpose in the district court below, claiming that the purpose of the Booking Fee provision is to defray the administrative costs it incurs when processing arrestees. This is confirmed by the 2005 Ordinance's title: "Police Department Administrative Fees," and the twelve subsections of the ordinance which im-

pose fees for administrative activities ranging from booking arrestees to providing photographs or audio or video recordings. A33. The Booking Fee provision is an outlier in the 2005 Ordinance, however, because administrative costs related to arrests are not voluntary and appear to be a bare attempt by Woodridge to raise revenue, which is not a legitimate state interest, standing alone. *Cf. New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 398 (3d Cir. 2012) (a law can pass rational basis examination if there is a legitimate purpose, but raising revenue on its own is not a legitimate state interest); *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (improving compliance with traffic laws a legitimate interest even though the same laws raise revenue).

Woodridge's interest in the Booking Fee provision is not like the government's interest in the bail systems in *Schilb* or *Payton*, which the government operated for the benefit of detainees. *See* 404 U.S. at 366; 473 F.3d at 852. Instead, Woodridge has apparently sought to increase the amount it can budget to its police department in an impermissible manner. Because the proper means to raise revenue for a law enforcement officer's administrative duties is through traditional methods such as taxes, Woodridge should have done that here instead of attempting to place administrative costs on specific individuals.

Even if the district court correctly identified the interests served by the Booking Fee provision, it erred when it determined that Woodridge's interest was rationally related to its practice under the 2005 Ordinance. A49. It concluded that it is "rational to share the costs of incarceration with those who through their actions

37

necessitate that those costs be incurred." *Id.* It would plainly be irrational to require individuals to share the costs of incarceration if they were never incarcerated or were incarcerated illegally, and it is axiomatic that not every custodial arrest results in incarceration or is even legal.

Putting aside the district court's conflation of the costs involved in incarceration with paperwork and other administrative costs, it is still clear that Woodridge's interest in defraying administrative costs is not suitably furthered by the differential treatment of charging all arrestees $30. Woodridge's purpose in collecting the fee is to defray administrative costs, and the district court did not explain why it was rational to share administrative costs. *See* A49. Woodridge has not attempted to foist other administrative costs onto other residents, such as the costs involved when a patrol officer must spend a significant amount of time on administrative tasks after responding to a vehicle collision involving injuries. A law enforcement officer's determination that an individual was injured in a motor vehicle collision requires almost no discretion – he or she must simply observe that the individual was transported by paramedics at the scene. When this occurs, Illinois law requires both the patrol officer and the other individuals involved in the collision to fill out an accident report, and this can take several hours of the officer's time. *See* 625 ILCS 5/7-100 *et seq.* Similarly, booking and associated paperwork are routine administrative duties of law enforcement officers, and Woodridge arbitrarily discriminates between classes of persons when it foists administrative costs on one class of individuals but not on others, which it has done for the administrative costs related

38

to processing arrestees. Such discrimination is clearly irrational and Woodridge's Booking Fee provision is substantively unconstitutional as a result. *See Rinaldi*, 384 U.S. at 309.

Additionally, the Booking Fee provision and the 2005 Ordinance contain no provisions indicating the procedure Woodridge should follow in the event an arrestee does not have $30 on his or her person. *See* A33. For the other twelve provisions, Woodridge presumably would simply refuse to offer those services in the event that an individual could not pay the fee. The receipt which Woodridge provided to Mr. Markadonatos, however, shows that if an arrestee does not have the funds on his or her person, it is due within fifteen days, but there is no additional information on whether the bill will be sent to collections. A38. Because there is no clear policy to follow and some arrestees are deprived of their funds on the spot and others are given fifteen days, Woodridge invidiously discriminates amongst all arrestees under the Booking Fee provision. Although the differential treatment might not rise to the levels described in *Allen II*, it is clear that there is discrimination between arrestees like Mr. Markadonatos, who paid $30 at the time of his arrest, and other arrestees who do not have funds on their person at the time of arrest. 154 F. Supp. 2d at 1270. Because the district court was presented with sufficient allegations that Woodridge collects funds at the time of arrest for some arrestees and possibly never for others, it erred when it concluded that Mr. Markadonatos failed to state a claim because the Booking Fee provision causes differential treatment amongst arrestees. *See id.*; A49.

In dismissing Mr. Markadonatos's substantive due process claim, the district court made several errors. It erred when it concluded that Woodridge's interest in charging a $30 fee to all arrestees to increase its law enforcement budget is a sufficiently legitimate interest without any findings of purpose or procedures to collect an equal amount from each arrestee. Additionally, it erred when it failed to conclude that Woodridge invidiously discriminated between classes by requiring one class to pay for involuntary administrative fees while not requiring other classes to pay for similar fees. Finally, it erred when it concluded that Woodridge's interest is sufficiently legitimate to apply the fee to all arrestees, regardless of the subsequent disposition of the arrestee's case or any other factors. For these reasons, this Court should reverse the district court's second memorandum opinion and order and remand and reassign this case pursuant to Circuit Rule 36.

## CONCLUSION

This Court should reverse the District Court's January 6, 2012 and June 11, 2012 judgments against Mr. Markadonatos and remand and reassign this case pursuant to Circuit Rule 36 for further proceedings.

Dated: January 18, 2013                    Respectfully submitted,


                                            /s/ John Auchter
                                           _____

                                           *Attorney for Plaintiff-Appellant Jerry G. Markadonatos*

Vincent L. DiTommaso
Peter S. Lubin
John Auchter
DITOMMASO LUBIN, P.C.
17W220 22nd Street Suite 410
Oakbrook Terrace, IL 60181
(630) 333-0000

James Shedden
Matthew Burns
Tony Kim
SCHAD, DIAMOND & SHEDDEN, P.C.
332 S. Michigan Ave. Suite 1000
Chicago, IL 60604
(312) 985-0207

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for Plaintiff-Appellant Jerry G. Markadonatos certifies that the forgoing brief:

(i)     complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 10,671 words, including footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

(ii)     complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 12-point Century.

 /s/ John Auchter

## COMBINED RULE 30(a) AND RULE 30(b) APPENDIX

## TABLE OF CONTENTS

10/04/2011 Class Action Complaint .............................................................................A1

01/06/2012 Judgment in a Civil Action..................................................................A15

01/06/2012 Minute Entry........................................................................................A16

01/06/2012 Memorandum Opinion and Order.........................................................A17

02/14/2012 First Amended Class Action Complaint ...............................................A24

06/11/2012 Minute Entry........................................................................................A40

06/11/2012 Memorandum Opinion and Order.........................................................A41

07/10/2012 Notice of Appeal .................................................................................A50

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), the undersigned attorney certifies that the materials required by parts (a) and (b) of Circuit Rule 30 are included in this appendix.

 /s/ John Auchter

# CIRCUIT RULE 31(e) CERTIFICATION

Pursuant to Circuit Rule 31(e), the undersigned attorney certifies that a copy of the foregoing Brief in native PDF format and all of the appendix items that are available in non-scanned PDF format were filed electronically with the Court.


  /s/ John Auchter

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that two hard copies of the foregoing Brief and Appendix were served by U.S. Mail, and a digital version was served by e-mail, on the following:

Brandon K. Lemley
QUERREY & HARROW, LTD.
175 W. Jackson Suite 1600
Chicago, IL 60604
blemley@querrey.com


                                               /s/ John Auchter

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | | |
|---|---|---|---|
| Jerry G. Markadonatos, and all others similarly situated, | ) | | |
| | ) | No. _____ | |
| Plaintiffs, | ) | | |
| v. | ) | **JURY DEMAND** | |
| Village of Woodridge, | ) | | |
| Defendant. | ) | | |

### CLASS ACTION COMPLAINT

1.       This class action seeks declaratory and injunctive relief and monetary damages against Defendant Village of Woodridge ("Woodridge") for violations of the Plaintiff's, and others similarly situated, civil rights guaranteed under the due process clause of the Fourteenth Amendment, through their jail intake booking fee policy pursuant to 42 U.S.C. §§ 1983 and 1988.  Defendant's policies regarding the collection of jail intake fees are illegal in that they violate Mr. Markadonatos', and others similarly situated, clearly established constitutional rights under the Fourteenth Amendment (not to be deprived of property without due process of law).  Further, Woodridge Municipal Code 5-1-12(A) is facially unconstitutional.

### JURISDICTION AND VENUE

2.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1361, 28 U.S.C. § 2201, and 5 U.S.C. § 702.

3.       Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) (2), (e) (2)-(3).

4.       This action is brought pursuant to the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

5.       All acts complained of herein occurred in Woodridge, Illinois.

**PARTIES**

6.      Plaintiff Jerry G. Markadonatos is an individual residing in Downers Grove,

Illinois, which is within the Northern District of Illinois and he has been a resident of Downers

Grove at all times relevant herein.

7.      Defendant Woodridge is a political subdivision and/or municipal corporation and

is located within the Northern District of Illinois.  The United States Census Bureau states that

Woodridge had a population of 32,971 in 2010.

**FACTS**

8.      The Village of Woodridge enacted Municipal Code 5-1-12(A), which states:

"Booking fee: When posting bail or bond on any legal process, civil or criminal, or any custodial

arrest including warrant."  The code states the amount of the booking fee is $30.  *See* Exhibit <u>A</u>.

9.      Woodridge Municipal Code 5-1-12(A) is still in force.

10.     The booking fee authorized by Woodridge Municipal Code 5-1-12(A) is a

mandatory payment amounting to a fine or penalty for being arrested.

11.     The policy authorizes Woodridge to convert the money collected as a booking fee

for its use and benefit without a hearing.

12.     The policy does not provide for a pre-deprivation hearing or any other opportunity

for the arrestee to contest the seizure and conversion of his or her money.

13.     There is no reimbursement policy.  Thus, even if the arrestee's criminal charges

are dropped or the arrestee is ultimately acquitted, Woodridge keeps the booking fee.

14.     On or about January 8, 2011, the Plaintiff was arrested and charged with retail

theft.  *See* Exhibit <u>B</u>.

15.     He was taken to the Woodridge jail.

16.    Upon being booked, a $30.00 booking fee was collected from Mr. Markadonatos for Woodridge's use and benefit.  Mr. Markadonatos received a booking fee receipt, which is attached as Exhibit C.

17.    Plaintiff received supervision for his retail theft charge.  At the conclusion of the supervision the charge on his record will be listed as "not guilty".

18.    Although Plaintiff only received supervision and a "not guilty" entry on his record, Plaintiff's funds were not returned to him.

19.    At the time of his release from jail, Mr. Markadonatos was not provided with any means to get his funds back.

20.    To date, Defendant Woodridge has not refunded the seized money or the interest on Mr. Markadonatos' seized money, nor has it compensated him for the consequences of taking his money.

21.    Since enacting Municipal Code 5-1-12(A), Woodridge has seized and converted to its own use thousands of dollars from hundreds of arrestees under the same procedures used with Mr. Markadonatos, including failure to provide adequate notice and an adequate pre-deprivation hearing.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff realleges all matters set forth above.

23.    Mr. Markadonatos brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), (3).  The Plaintiff provisionally proposes the following class definition:

> All individuals who were deprived of their property pursuant to
> Woodridge Municipal Ordinance 5-1-12(A) without being
> provided the constitutionally guaranteed due process of law.

24.     This is an appropriate class action because the proposed class is so numerous that joinder of all members in impracticable.

25.     There are questions of law and fact common to the class, including whether Defendant's actions violate Plaintiff's procedural due process rights under the Fourteenth Amendment of the U.S. Constitution.

26.     The claims of the Plaintiff are typical of the claims of the class.

27.     The named Plaintiff will fairly and adequately protect the interest of the class.

28.     The named Plaintiff has retained competent counsel with experience in class actions who are willing and able to protect the interest of the class.

29.     The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory and injunctive relief and monetary damages with respect to this class as a whole.

**CAUSE OF ACTION**

**COUNT I: CIVIL RIGHTS – VIOLATION OF THE FOURTEENTH AMENDMENT**

30.     Plaintiff realleges all matters set for in paragraphs 1 through 30, above.

31.     The actions Defendant Woodridge complained of above were taken under color of state law.  These actions constitute clearly established violations of the Fourteenth Amendment right to be free from the deprivation of property without due process of the law.

32.     The Defendant's official intake fee collection policy violates Plaintiff's rights under the Fourteenth Amendment of the U.S. Constitution for several reasons:

        a.     It does not provide him with adequate notice of the seizure and conversion of his property and his attendant rights;

b.      It does not provide an opportunity to object to the seizure and conversion of his property, and to assert a reason, such as indigent status or exempt source of funds, that may prevent Woodridge from taking and converting his money; and

c.      It does not provide any type of hearing prior to the deprivation of the property.

33.      Furthermore, there are no procedural safeguards guaranteeing that Mr. Markadonatos' property (or anyone else's) will be returned if he is not charged, or if he is acquitted.

34.      Plaintiff is entitled to declaratory relief pursuant to 28 U.S.C. § 2201 that Woodridge Municipal Code 5-1-12(A) is unconstitutional.

35.      Plaintiff is entitled to a preliminary and permanent injunction under the traditional equitable criteria:  1) there is a strong likelihood that Plaintiff will succeed on the merits; 2) there is a possibility of irreparable injury to the plaintiff, and others similarly situated, if injunctive relief is not granted; and 3) the hardship placed on the Plaintiff by Woodridge Municipal Code 5-1-12(A) outweighs the public interest of maintaining the Defendant's policy.

36.      Defendant acted intentionally, knowingly, and/or with reckless or careless disregard and/or deliberate indifference to Plaintiff's constitutional rights.

37.      Defendant is liable for damages, costs and attorneys' fees under 42 U.S.C. §§1983, 1988.

38.      Neither Plaintiff nor other class members were required to exhaust their administrative remedies for these 42 U.S.C. § 1983 claims.

## DAMAGES

56.     Woodridge's illegal seizure and conversion of money from Mr. Markadonatos and other class members proximately caused special damages in the amount of money taken, pre-judgment interest in an amount to be proven at trial, consequential damages in an amount to be proven at trial, and nominal damages.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff asks this Court to grant the following relief:

1.     Certify this case a class action under FRCP 23(b)(2), (3);

2.     Issue a declaratory judgment that Woodridge Municipal Code 5-1-12(A) violates Plaintiff's due process rights under the Fourteenth Amendment and is unconstitutional.

3.     Issue preliminary and permanent injunctions prohibiting the collection of arrestee booking fees in Woodridge pursuant to Woodridge Municipal Code 5-1-12(A).

4.     Award Plaintiff and the class all special and general damages resulting directly and proximately from Defendant's conduct, as set forth above, in an amount to be determined at trial;

5.     Award Plaintiff and the class all prejudgment and post-judgment interest as allowed by law;

6.     Award Plaintiff and the class all reasonable costs and attorney's fees incurred in connection with this lawsuit, pursuant to 42 U.S.C. § 1988, or any other applicable law; and

7.    Award any further or additional relief which the Court finds equitable,

appropriate, or just.

JERRY  G. MARKADONATOS

By:  /s/ Matthew S. Burns
      One of His Attorneys

Dated: October 4, 2011

Vincent L. DiTommaso               James Shedden
Peter Lubin                        Matthew S. Burns
DiTommaso ♦ Lubin, P.C.            Tony Kim
17W 220 22nd Street, Suite 200     Schad, Diamond & Shedden, P.C.
Oakbrook Terrace, Illinois 60181   332 S. Michigan Ave., Suite 1000
(630) 333-0000                     Chicago, Illinois 60604-4398
                                   (312) 939-6280

# EXHIBIT A

## 5-1-12: ADMINISTRATIVE FEES:

The fees for the following activities and purposes shall be as follows:

| A. | Booking fee: When posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant | $ 30 .00 |
|----|----|----|
| B. | Towing fee: Imposed on an arrestee any time a vehicle release form is required | 250 .00 |
| C. | Underage vehicle release fee: Upon release of an impounded vehicle due to operation of a motor vehicle by an underage person with alcoholic liquor in or on the vehicle | $250.00 plus any towing or storage costs |
| D. | Vehicle release fee: Imposed on any article 36 seizure vehicle or any vehicle seized and subsequently returned to the owner in accordance with department policy | $500 .00 |
| E. | Fingerprinting fees: | |
| | Residents (up to 2 cards)<br>Over 2 cards (per card) | 10 .00<br>1 .00 |
| | Nonresidents (up to 2 cards)<br>Over 2 cards (per card) | 25 .00<br>6 .00 |
| F. | Photographs: Digital or 35 mm (per photograph) | 5 .00 |
| G. | Audio recording | 25 .00 |
| H. | Video recording | 50 .00 |
| I. | Copies of motor vehicle accident reports | 5 .00 |
| J. | Copies of motor vehicle accident reconstruction reports | 20 .00 |
| K. | Records subpoena requests | 25 .00 |
| L. | Release of impounded dog or cat | 15 .00 |

(Ord. 2005-61, 11-3-2005; amd. Ord. 2009-14, 4-2-2009)

Case: 1:11-cv-07006 Document #: 1-1 Filed: 10/04/11 Page 3 of 3 PageID #:10

Case: 12-2619     Document: 22          Filed: 02/11/2013     Pages: 106

**Footnote 1:** See title 2, chapter 4 of this code.

**Footnote 2:** See title 2, chapter 4 of this code.

**Footnote 3:** See subsection 1-7K-1B of this code.

**Footnote 4:** 65 ILCS 5/10-2.1-1 et seq.

**Footnote 5:** See subsection 1-4-5B of this code; see also title 1, chapter 6, article H of this code; and see section 2-4-7 of this code.

**Footnote 6:** See section 1-4-5 of this code.

**Footnote 7:** See also subsection 1-7C-4C4 of this code.

**Footnote 8:** 820 ILCS 305/1 et seq.

**Footnote 9:** 50 ILCS 705/1 et seq.

**Footnote 10:** See title 2, chapter 4 of this code.

**Footnote 11:** See title 1, chapter 7 of this code.

**Footnote 12:** 50 ILCS 705/1 et seq.

# EXHIBIT B

COMPLAINT 1036 (Rev. 4/01)

**STATE OF ILLINOIS**      UNITED STATES OF AMERICA      **COUNTY OF DU PAGE**

Woodridge Police Department

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

PEOPLE OF THE STATE OF ILLINOIS  OR

A MUNICIPAL CORPORATION

-VS-

Jerry G. Markadonatos

Defendant

Case Number

**COMPLAINT**

City, Village, Township

Woodridge

**COPY**

File Stamp Here

In the name and by the authority of the People of the State of Illinois _____

Jarod Smith _____ hereinafter called the complainant, on oath charges that at or about the

hour of __12:40PM__ on or about the _____8th_____ day of _____January, 2011_____ in said County and State

Jerry G. Markadonatos _____ hereinafter called the Defendant committed the offense of _____

Retail Theft _____ in violation of

Chapter __720__ paragraph __5 / 16A-3(a)__ of the Illinois Compiled Statutes in this, to wit: that the said Defendant

knowingly and without lawful justification took possession of merchandise with a value of $81.88USC, from Target (2363 63rd Street Woodridge, IL), a retail mercantile establishment, with the intent to permanently deprive the merchant of said merchandise, all this occurring in the Village of Woodridge, DuPage County, Illinois.

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the People of the State of Illinois

COMPLAINANT ___Jarod Smith___

L51611695

DOCUMENT CONTROL NUMBER

Arresting Agency Must Enter

**432011848618**

Circuit Court
Internal Control Number

Subscribed and sworn to before me this _____8th_____ day of _____January, 2011_____

**OFFICIAL SEAL**
**ADRIENNE J KELLUM**
Notary Public – State of Illinois
My Commission Expires Oct 23, 2014

NOTARY ___Adrienne J Kellum___

Copy of Complaint delivered to said defendant this _____8th_____ day of _January, 2011_

JUDGE - PEACE OFFICER ___#/20___

THE PEOPLE OF THE STATE OF ILLINOIS     -VS-     Jerry G. Markadonatos

| | | | |
|---|---|---|---|
| Address ▮▮▮ | City Downers Grove | State IL | Zip Code 60516 |
| Telephone ▮▮▮ | Date of Birth ▮▮▮ | Social Security No. | ▮▮▮ |
| Drivers License No./State ▮▮▮ | ☒ Male ☐ Female | ON VIEW ARREST ☒ Yes ☐ No | |
| Initialed Approval of S.A. _____ Originating Agency Number _____ | | WO11-000311 | |

WITNESS INFORMATION
See Report

| Name | Address | City | State | Zip Code | Telephone |
|---|---|---|---|---|---|
| | | | | | |
| Name | Address | City | State | Zip Code | Telephone |
| | | | | | |
| Name | Address | City | State | Zip Code | Telephone |

**CHRIS KACHIROUBAS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT**
**WHEATON, ILLINOIS 60189-0707**
Original    Circuit Clerk    Defendant  ~~Police~~

# EXHIBIT C

# Village of Woodridge – Police Department

Case: 12-2619    Document: 28    Filed: 02/11/2013    Pages: 106

1 Plaza Dr. Woodridge, Il. 60517   State of Illinois, Counties of Dupage, Will & Cook

# **Arrest /Booking Fee Notice**

You are hereby notified that under Village Ordinance # 5-1-12, an administrative fee of $30.00 is required upon completion of any custodial arrest/booking procedure. The Complainant named above by its Police Officer, on oath states that you were arrested on:

| Date of Arrest | Name: | DOB |
|---|---|---|
| 01 /08 /11 | MARKADONATOS, JERRY G. | 5/06 /62 |
| WO# 11-311 | Address:  1812 STURBRIDGE PL. DOWNERS GROVE, IL 60516 | |

## FEE OF $30.00 IS DUE FIFTEEN DAYS FROM DATE OF ARREST

| 120 | Enter payment code if paid at time of release | **Vehicle Towed** :   Yes   (No) |

**Officer:** _____ #/ 2

AO 450 (Rev. 01/09) Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
## Northern District of Illinois

| | |
|---|---|
| Jerry G. Markadonatos | ) |
| *Plaintiff* | ) |
| v. | ) |
| Village of Woodbridge | ) |
| *Defendant* | ) |

Civil Action No.    11 C 7006

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the

defendant *(name)* _____ the amount of

_____ dollars ($ _____ ), which includes prejudgment

interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____

☒ other:

plaintiff, Jerry G. Markadonatos has failed to state a §1983 claim that the Village violated his due process

rights.

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision was reached.

☒ decided by Judge    James F. Holderman    on a motion for    dismissal.

.

Date:    Jan 6, 2012                    Thomas G. Bruton, Clerk of Court

                                       /s  **Alyce Mobley Moris, Deputy Clerk**

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 7006 | **DATE** | 1/6/2012 |
| **CASE TITLE** | Jerry G. Markadonatos vs. Village of Woodbridge | | |

**DOCKET ENTRY TEXT**

ENTER MEMORANDUM OPINION AND ORDER: Defendant, Village of Woodbridge's motion to dismiss[17] is granted.
Plaintiffs' motion to certify class [5] is administratively terminated.
Civil case terminated.

■ [ For further detail see separate order(s).]

Notices mailed.

| | Courtroom Deputy Initials: | AMM |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY G. MARKADONATOS, and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11-C-7006 |
| VILLAGE OF WOODBRIDGE, | ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Jerry G. Markadonatos alleges in his complaint that the Village of Woodbridge violated 42

U.S.C. § 1983 by failing to provide due process before requiring him to pay a $30 booking fee

following his arrest for shoplifting.  (Dkt. No. 1 ("Compl.").)  Pending before the court is the

Village's "Motion to Dismiss" under Federal Rule of Civil Procedure 12(b)(6) for failure to state

a claim.  (Dkt. No. 17.)  Based upon the reasons explained below, the Village's Motion is granted.

BACKGROUND

According to the complaint, Markadonatos was arrested on January 8, 2011 and charged with

retail theft.  (Compl. ¶ 14.)  He was taken to the Woodbridge jail, where he was booked and requried

to pay a $30 booking fee under the Woodbridge, Illinois, Municipal Code 5-1-12(A).[1]  (Compl.

---

[1] The Woodbridge, Illinois, Municipal Code 5-1-12 provides:

The fees for the following activities and purposes shall be as follows:

    A.    Booking Fee: When posting bail or bond on any legal process,
            civil or criminal, or any custodial arrest including warrant     $30.00

¶¶ 15-16.)  Eventually Markadonatos received supervision for his retail theft charge.  (*Id.* ¶ 17.)

Under Illinois law, if he completes the supervision successfully, the charge will be dismissed

"without adjudication of guilt." 730 Ill. Comp. Stat. 5/5-6-3.1(f).  When Markadonatos was released

from jail, he did not receive a refund of the booking fee.  (Compl. ¶¶ 18-20.)  The Village's booking

fee policy includes no provision for a refund regardless of the disposition of the arrestee's case.

(Compl. ¶ 13.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The

complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which

it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)).  While "detailed factual allegations" are not required, "labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555.

 The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'"

*Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v.

Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most

favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences

in his favor.  *Id.*

## ANALYSIS

To state a claim for relief under § 1983, Markadonatos must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Here, Markadonatos's complaint alleges that the Village, a state actor, violated his Fourteenth Amendment right to procedural due process by imposing the $30 booking fee without applying appropriate procedures. Markadonatos contends that merely alleging that the Village, a state actor, deprived him of his right to procedural due process is sufficient to survive a motion to dismiss, and that the court need not evaluate whether he has alleged a valid procedural due process claim under the familiar *Mathews v. Eldridge*[2] test. That contention is incorrect, because "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, Markadonatos must show that his claims are plausible, which includes a showing that the alleged facts, if true, make out a due process violation under *Eldridge*. *See Payton v. Cnty. of Carroll*, 473 F.3d 845, 851 (7th Cir. 2007) (noting that on an appeal from the granting of a motion to dismiss, "it would have been prudent for the plaintiffs to have said more about *Mathews v. Eldridge*"). The court will accordingly evaluate whether Markadonatos has alleged a valid violation of his right to procedural due process.

When examining procedural due process claims, the court must first ask "whether there exists a liberty or property interest which has been interfered with by the state," and second determine "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Here, the parties do not dispute that Markadonatos has a property interest in his money. *See Bd. of Regents of State Colleges v. Roth*,

---

[2] 424 U.S. 319, 335 (1976).

408 U.S. 564, 571 (1972) ("[P]roperty interests protected by procedural due process extend well

beyond actual ownership of real estate, chattels, or money.").

The only question is therefore whether the procedures leading to the deprivation of that

interest were sufficient.  To make that inquiry, the court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk
> of an erroneous deprivation of such interest through the procedures used, and the
> probable value, if any, of additional or substitute procedural safeguards; and finally,
> the Government's interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural requirement would
> entail.

*Eldridge*, 424 U.S. at 335.

I.     Private Interest

Markadonatos's private interest here is purely monetary.  The $30 fee at stake is a fairly

small amount compared to the interests that typically require a predeprivation hearing.  As the Sixth

Circuit noted when evaluating a private interest of $20 and $110.27,

> [t]he private stakes at issue . . . do not begin to approach the kinds of government
> conduct that have required a predeprivation hearing, such as a limitation on the
> "historic" "right to maintain control over [one's] home," or the termination of
> government benefits, which for many people are "the very means by which to live."

*Sickles v. Campbell Cnty.*, 501 F.3d 726, 730 (6th Cir. 2007) (alteration in original) (citations

omitted).

Markadonatos attempts to avoid that conclusion by citing an unreported opinion from the

Eastern District of Washington in which the district court held Spokane County's imposition of a

booking fee to be procedurally inadequate.  *Huss v. Spokane Cnty.*, No. 05-180 (E.D. Wash. Oct.

12, 2007).  The *Huss* opinion concluded that the private interest in even a small sum is worthy of

"considerable weight" because small amounts of money may hold great significance for an

individual in poor economic circumstances. The court agrees that a small sum of $30 may be subjectively significant to some individuals, but the significance of any amount of money to a particular individual does not necessarily determine that amount's significance in the constitutional analysis. Indeed, the Supreme Court in *Eldridge* discounted the value of a worker's income stream from disability payments because "the disabled worker's need is likely to be less than that of a welfare recipient" who has no other income besides welfare payments. *Eldridge*, 424 U.S. at 906. The Supreme Court thus declined to place great weight on a monetary interest short of an income stream constituting the sole means of an individual's subsistence. An arrestee's one-time interest in a $30 booking fee does not rise to nearly that level. The court therefore concludes that Markadonatos's interest in the $30 he paid is entitled to only minimal weight.

II.    Risk of Erroneous Deprivation and Value of Additional or Substitute Procedures

Markadonatos contends that the risk of erroneous deprivation is the risk that an arrestee who is later found innocent or released without facing criminal charges will nonetheless have to pay the $30 fee. Under that theory, he contends that erroneous deprivation is certain in at least some cases, as not all arrestees are convicted of crimes.

Markadonatos has incorrectly identified the risk of erroneous deprivation, however. Pursuant to its policy, the Village charges the $30 fee whenever there is "any custodial arrest" and makes no provisions for a refund. Woodbridge, Ill., Mun. Code 5-1-12. Consequently, all arrestees are liable to pay the fee regardless of the disposition of their case.[3] The risk of erroneous deprivation

---

[3] Markadonatos does not raise the issue of whether the Village's policy of charging a fee to all arrestees, regardless of the subsequent disposition of their case, is itself substantively unconstitutional. The court therefore addresses only the adequacy of the Village's procedures before imposing the fee.

is thus the risk that the $30 fee will be charged to someone who has not been arrested.[4]

That risk is minimal, as the administration of the fee requires Village personnel to make only a simple determination, involving no discretion, that an individual was arrested. Village personnel make that determination at the time of booking an individual into jail after an arrest, making it nearly impossible for an error to occur. Moreover, additional procedures would not provide any additional safeguards or decrease the already negligible risk of erroneous deprivation.

III.    Government Interest

The Village identifies its interest as defraying the administrative costs it incurs when processing arrestees. Markadonatos responds that the Village's actual interest is in defraying that cost by collecting a fee prior to a determination of guilt, rather than after a hearing. Again, Markadonatos is incorrect, as the determination of guilt is irrelevant to the imposition of the $30 booking fee that applies to all arrestees.

The Village's interest in recouping its costs is legitimate. Just as the private interest in a small amount of money is minimal, however, the Village's interest in the $30 fee that it collects from arrestees is relatively minor. Consequently, the court determines that the government's interest in imposing a $30 booking fee on arrestees is entitled to no more than minimal weight.

IV.    Balancing of the Interests

In light of the small sum at issue in this case, the court finds that both the private interest and

---

[4] That conclusion distinguishes the Village's policy from the policy struck down in *Huss.* No. 05-180 (E.D. Wash. Oct. 12, 2007). There, the court determined that additional procedures were necessary to protect against the risk of charging a booking fee to an individual ultimately determined to be innocent. *Id.* The court relied on the provision of Spokane's policy providing for a refund to arrestees not convicted of a crime, and concluded that those individuals were erroneously deprived of their property between their arrest and the determination of innocence. *Id.*

the government interest are modest at best, and nearly equal in constitutional stature.  The

dispositive factor is thus the nearly nonexistent risk of erroneous deprivation.  Because there is

almost no risk that the Village will charge the $30 booking fee to an individual who has not been

arrested, and because no additional procedures would significantly decrease that risk, the Village's

procedures for charging the $30 fee pass constitutional muster.  Markadonatos has thus failed to

state a § 1983 claim that the Village violated his due process rights.

<u>CONCLUSION</u>

    For the reasons stated above, the Village's Motion to Dismiss (Dkt. No. 17) is granted.

ENTER:


_James F. Holderman_____

JAMES F. HOLDERMAN

Chief Judge, United States District Court



Date: January 6, 2012

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| Jerry G. Markadonatos, and all others similarly situated, | ) ) ) | |
| | ) | No. 11-7006 |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | Judge Holderman |
| Village of Woodridge, | ) | |
| Defendant. | ) | **JURY DEMAND** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1.      Plaintiff Jerry G. Markadonatos brings this class action under 42 U.S.C. §§ 1983 and 1988 seeking declaratory and injunctive relief and monetary damages against Defendant Village of Woodridge ("Woodridge") for violations of the Plaintiff's, and all others similarly situated, civil rights guaranteed under the due process clause of the Fourteenth Amendment, caused by Woodridge's booking fee.  The booking fee policy is procedurally and substantively unconstitutional.

2.      Defendant by law imposes a booking fee against all arrestees regardless of guilt or innocence, regardless of ability to pay, and regardless of whether the seized money is exempt from seizure.

3.      Defendant fails to provide *any* hearing permitting arrestees to contest the seizure of their money pursuant to the booking fee policy.  No hearing is provided before the taking.  No hearing is provided after the taking.  Defendant does not refund any arrestee's money – the booking fee ordinance has no refund policy or procedure.

4.      Defendant's policy regarding the collection of booking fees is illegal in that it violates Mr. Markadonatos', and others similarly situated, clearly established constitutional

rights under the Fourteenth Amendment (not to be deprived of property without due process of

law).

5.      Further, Woodridge Municipal Code 5-1-12(A) is facially unconstitutional.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and

1361, 28 U.S.C. § 2201, and 5 U.S.C. § 702.

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) (2), (e) (2)-(3).

8.      This action is brought pursuant to the Fourteenth Amendment to the United States

Constitution, 42 U.S.C. §§ 1983 and 1988.

9.      All acts complained of herein occurred in Woodridge, Illinois.


## PARTIES

10.     Plaintiff Jerry G. Markadonatos is an individual residing in Downers Grove,

Illinois, which is within the Northern District of Illinois and he has been a resident of Downers

Grove at all times relevant herein.

11.     Defendant Woodridge is a political subdivision and/or municipal corporation and

is located within the Northern District of Illinois.  The United States Census Bureau states that

Woodridge had a population of 32,971 in 2010.

## FACTS

12.     The Village of Woodridge enacted Municipal Code 5-1-12(A), which states:

"Booking fee: When posting bail or bond on any legal process, civil or criminal, or any custodial

arrest including warrant."  The code states the amount of the booking fee is $30.  *See* Exhibit A.

13.     Woodridge Municipal Code 5-1-12(A) is still in force.

14.    The booking fee required by Woodridge Municipal Code 5-1-12(A) is a mandatory payment amounting to a fine or penalty for being arrested.

15.    The policy authorizes Woodridge to convert the money collected as a booking fee for its use and benefit without a hearing.

16.    The policy does not provide for *any* hearing or any other opportunity for the arrestee to contest the seizure and conversion of his or her money.  No such hearing is provided before the deprivation.  No hearing is provided after the deprivation.

17.    The booking fee ordinance does not provide for reimbursement under any circumstances.  Thus, even if the arrestee's criminal charges are dropped or the arrestee is ultimately acquitted, Woodridge keeps the booking fee.  Woodridge also keeps the fee even if the arrestee's funds are exempt from seizure, such as social security payments or veteran's benefits.

18.    On or about January 8, 2011, the Plaintiff was arrested and charged with retail theft.  *See* Exhibit B.

19.    He was taken to the Woodridge jail.

20.    Upon being booked, a $30.00 booking fee was collected from Mr. Markadonatos for Woodridge's use and benefit.  Mr. Markadonatos received a booking fee receipt, which is attached as Exhibit C.  Mr. Markadonatos was not provided with a hearing before Woodridge took his money.  At no time after Woodridge took his money was Mr. Markadonatos provided with a hearing or any other opportunity for the arrestee to contest the seizure and conversion of his money.

21.    Plaintiff received supervision for his retail theft charge.  At the conclusion of the supervision the charge on his record will be listed as "not guilty".

3

22.    Although Plaintiff received supervision and a "not guilty" entry on his record, Plaintiff's funds were not returned to him.

23.    At the time of his release from jail, Mr. Markadonatos was not provided with any means or opportunity to get his funds back.

24.    To date, Defendant Woodridge has not refunded the seized money or the interest on Mr. Markadonatos' seized money, nor has it compensated him for the consequences of taking his money.

25.    Since enacting Municipal Code 5-1-12(A), Woodridge has seized and converted to its own use thousands of dollars from hundreds of arrestees under the same procedures used with Mr. Markadonatos, including failure to provide adequate notice and an adequate pre-deprivation or post-deprivation hearing.

26.    Woodridge applies the booking fee to all arrestees regardless of guilt or innocence, regardless of ability to pay, and regardless of whether the money seized is exempt from seizure.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff realleges all matters set forth above.

28.    Mr. Markadonatos brings this action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), (3).  The Plaintiff provisionally proposes the following class definition:

> All individuals who were deprived of their property pursuant to
> Woodridge Municipal Ordinance 5-1-12(A) without being
> provided their constitutionally guaranteed due process of law.

29.    This is an appropriate class action because the proposed class is so numerous that joinder of all members in impracticable.

4

30.     There are questions of law and fact common to the class, including whether Defendant's actions violate Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment of the U.S. Constitution.

31.     The claims of the Plaintiff are typical of the claims of the class.

32.     The named Plaintiff will fairly and adequately protect the interest of the class.

33.     The named Plaintiff has retained competent counsel with experience in class actions who are willing and able to protect the interest of the class.

34.     The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory and injunctive relief and monetary damages with respect to this class as a whole.


**CAUSE OF ACTION**

**COUNT I: CIVIL RIGHTS – VIOLATION OF THE FOURTEENTH AMENDMENT**

35.     Plaintiff realleges all matters set for in paragraphs 1 through 30, above.

36.     The actions Defendant Woodridge complained of above were taken under color of state law.  These actions constitute clearly established violations of the Fourteenth Amendment right to be free from the deprivation of property without due process of the law.

37.     The Defendant's official intake fee collection policy violates Plaintiff's rights under the Fourteenth Amendment of the U.S. Constitution for several reasons:

        a.      It does not provide him with adequate notice of the seizure and conversion of his property and his attendant rights;

b.       It does not provide an opportunity to object to the seizure and conversion of his property, and to assert a reason, such as indigent status or exempt source of funds, that may prevent Woodridge from taking and converting his money;

c.       It does not provide any type of hearing prior to the deprivation of the property; and

d.       It does not provide any type of hearing after the deprivation of the property.

38.     Furthermore, there are no procedural safeguards guaranteeing that Mr. Markadonatos' property (or anyone else's) will be returned if he is not charged, if he is acquitted, or if he receives an alternative disposition.

39.     Consequently, Woodridge Municipal Code 5-1-12(A) is also unconstitutional because it violates the substantive due process rights of Plaintiff and all others arrestees.

40.     Plaintiff is entitled to declaratory relief pursuant to 28 U.S.C. § 2201 that Woodridge Municipal Code 5-1-12(A) is unconstitutional.

41.     Plaintiff is entitled to a permanent injunction under the traditional equitable criteria:  1) there is a possibility of irreparable injury to the plaintiff, and others similarly situated, if injunctive relief is not granted; and 2) the hardship placed on the Plaintiff by Woodridge Municipal Code 5-1-12(A) outweighs the public interest of maintaining the Defendant's policy.

42.     Defendant acted intentionally, knowingly, or with reckless or careless disregard or deliberate indifference to Plaintiff's constitutional rights.

43.     Defendant is liable for damages, costs and attorneys' fees under 42 U.S.C. §§1983, 1988.

44.     Neither Plaintiff nor other class members were required to exhaust their administrative remedies for these 42 U.S.C. § 1983 claims.  In fact, as alleged above, there are no administrative or other remedies provided to Plaintiff or other class members.

## DAMAGES

45.     Woodridge's illegal seizure and conversion of money from Mr. Markadonatos and other class members proximately caused special damages in the amount of money taken, pre-judgment interest in an amount to be proven at trial, consequential damages in an amount to be proven at trial, and nominal damages.

## JURY DEMAND

45.     Plaintiff demands trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff asks this Court to grant the following relief:

1.      Certify this case a class action under FRCP 23(b)(2), (3);

2.      Issue a declaratory judgment that Woodridge Municipal Code 5-1-12(A) violates Plaintiff's due process rights under the Fourteenth Amendment and is unconstitutional.

3.      Issue a permanent injunction prohibiting the collection of arrestee booking fees in Woodridge pursuant to Woodridge Municipal Code 5-1-12(A).

4.      Award Plaintiff and the class all special and general damages resulting directly

and proximately from Defendant's conduct, as set forth above, in an amount to be

determined at trial;

5.      Award Plaintiff and the class all prejudgment and post-judgment interest as

allowed by law;

6.      Award Plaintiff and the class all reasonable costs and attorney's fees incurred in

connection with this lawsuit, pursuant to 42 U.S.C. § 1988, or any other

applicable law; and

7.      Award any further or additional relief which the Court finds equitable,

appropriate, or just.


                                        JERRY  G. MARKADONATOS

                                        By:  /s/ Matthew S. Burns
                                             One of His Attorneys

Dated: February 14, 2012

Vincent L. DiTommaso                    James Shedden
Peter Lubin                             Matthew S. Burns
DITOMMASO ♦ LUBIN, P.C.                 Tony Kim
17W 220 22nd Street, Suite 200          SCHAD, DIAMOND & SHEDDEN, P.C.
Oakbrook Terrace, Illinois 60181        332 S. Michigan Ave., Suite 1000
(630) 333-0000                          Chicago, Illinois 60604-4398
                                        (312) 939-6280

# EXHIBIT A

## 5-1-12: ADMINISTRATIVE FEES:

The fees for the following activities and purposes shall be as follows:

| | | |
|---|---|---|
| A. | Booking fee: When posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant | $ 30 .00 |
| B. | Towing fee: Imposed on an arrestee any time a vehicle release form is required | 250 .00 |
| C. | Underage vehicle release fee: Upon release of an impounded vehicle due to operation of a motor vehicle by an underage person with alcoholic liquor in or on the vehicle | $250.00 plus any towing or storage costs |
| D. | Vehicle release fee: Imposed on any article 36 seizure vehicle or any vehicle seized and subsequently returned to the owner in accordance with department policy | $500 .00 |
| E. | Fingerprinting fees: | |
| |    Residents (up to 2 cards)<br>   Over 2 cards (per card) | 10 .00<br>1 .00 |
| |    Nonresidents (up to 2 cards)<br>   Over 2 cards (per card) | 25 .00<br>6 .00 |
| F. | Photographs: Digital or 35 mm (per photograph) | 5 .00 |
| G. | Audio recording | 25 .00 |
| H. | Video recording | 50 .00 |
| I. | Copies of motor vehicle accident reports | 5 .00 |
| J. | Copies of motor vehicle accident reconstruction reports | 20 .00 |
| K. | Records subpoena requests | 25 .00 |
| L. | Release of impounded dog or cat | 15 .00 |

(Ord. 2005-61, 11-3-2005; amd. Ord. 2009-14, 4-2-2009)

Case: 12-2619     Document: 22          Filed: 02/11/2013     Pages: 106

**Footnote 1:** See title 2, chapter 4 of this code.

**Footnote 2:** See title 2, chapter 4 of this code.

**Footnote 3:** See subsection 1-7K-1B of this code.

**Footnote 4:** 65 ILCS 5/10-2.1-1 et seq.

**Footnote 5:** See subsection 1-4-5B of this code; see also title 1, chapter 6, article H of this code; and see section 2-4-7 of this code.

**Footnote 6:** See section 1-4-5 of this code.

**Footnote 7:** See also subsection 1-7C-4C4 of this code.

**Footnote 8:** 820 ILCS 305/1 et seq.

**Footnote 9:** 50 ILCS 705/1 et seq.

**Footnote 10:** See title 2, chapter 4 of this code.

**Footnote 11:** See title 1, chapter 7 of this code.

**Footnote 12:** 50 ILCS 705/1 et seq.

# EXHIBIT B

COMPLAINT 1036 (Rev. 4/01)

| | | |
|---|---|---|
| **STATE OF ILLINOIS** | UNITED STATES OF AMERICA | **COUNTY OF DU PAGE** |

**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

PEOPLE OF THE STATE OF ILLINOIS  OR

A MUNICIPAL CORPORATION

-VS-

Jerry G. Markadonatos
Defendant

Case Number

**COMPLAINT**

City, Village, Township

Woodridge

**COPY**

File Stamp Here

In the name and by the authority of the People of the State of Illinois
Jarod Smith
hereinafter called the complainant, on oath charges that at or about the
hour of __12:40PM__ on or about the __8th__ day of __January, 2011__ in said County and State
Jerry G. Markadonatos hereinafter called the Defendant committed the offense of ____
Retail Theft ____ in violation of
Chapter __720__ paragraph __5 / 16A-3(a)__ of the Illinois Compiled Statutes in this, to wit: that the said Defendant

knowingly and without lawful justification took possession of merchandise with a value of $81.88USC, from Target (2363 63rd Street Woodridge, IL), a retail mercantile establishment, with the intent to permanently deprive the merchant of said merchandise, all this occurring in the Village of Woodridge, DuPage County, Illinois.

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the People of the State of Illinois

COMPLAINANT ____

L51611695

DOCUMENT CONTROL NUMBER
Arresting Agency Must Enter

**432011848618**

Circuit Court
Internal Control Number

Subscribed and sworn to me this __8th__ day of __January, 2011__

OFFICIAL SEAL
ADRIENNE J KELLUM
Notary Public – State of Illinois
My Commission Expires Oct 23, 2014

NOTARY ____

Copy of Complaint delivered to said defendant this __8th__ day of __January, 2011__

JUDGE - PEACE OFFICER ____ #/20

THE PEOPLE OF THE STATE OF ILLINOIS    -VS-    Jerry G. Markadonatos

Address ____ City Downers Grove State IL Zip Code 60516

Telephone ____ Date of Birth ____ Social Security No. ____

Drivers License No./State ____ ☒ Male ☐ Female    ON VIEW ARREST ☒ Yes ☐ No

Initialed Approval of S.A. ____ Originating Agency Number ____ WO11-000311

WITNESS INFORMATION
See Report

| Name | Address | City | State | Zip Code | Telephone |
|---|---|---|---|---|---|
| | | | | | |
| Name | Address | City | State | Zip Code | Telephone |
| | | | | | |
| Name | Address | City | State | Zip Code | Telephone |

**CHRIS KACHIROUBAS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT**
**WHEATON, ILLINOIS 60189-0707**

Original    Circuit Clerk    Defendant    Police

# EXHIBIT C

# Village of Woodridge – Police Department

1 Plaza Dr. Woodridge, Il. 60517   State of Illinois, Counties of Dupage, Will & Cook

# <u>Arrest /Booking Fee Notice</u>

You are hereby notified that under Village Ordinance # 5-1-12, an administrative fee of $30.00 is required upon completion of any custodial arrest/booking procedure. The Complainant named above by its Police Officer, on oath states that you were arrested on:

| Date of Arrest | Name: | DOB |
|---|---|---|
| 01 /08 /11 | MARKADONATOS, JERRY G. | 5/06 /62 |
| WO# 11- 311 | Address:  1812  STURBRIDGE PL.  DOWNERS GROVE, IL  60516 | |

## FEE OF $30.00 IS DUE FIFTEEN DAYS FROM DATE OF ARREST

| 120 |   Enter payment code if paid at time of release     **Vehicle Towed** :   Yes  (No)

**Officer:** _____ #/ 2 _____

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew Burns, an attorney, certify that on February 14, 2012, a copy of the attached **First Amended Class Action Complaint** was served on all counsel of record via the CM/ECF filing system.


<u>/s/ Matthew Burns</u>

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 7006 | **DATE** | 6/11/2012 |
| **CASE TITLE** | Jerry G. Markadonatos vs. Village of Woodridge | | |

**DOCKET ENTRY TEXT**

ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to dismiss plaintiff's first amended complaint [36] is granted.    Civil case terminated.

■ [ For further detail see separate order(s).]

Notices mailed by Judicial staff.

| | Courtroom Deputy Initials: | AMM |
|---|---|---|

11C7006 Jerry G. Markadonatos vs. Village of Woodridge                                        Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY G. MARKADONATOS, and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11-C-7006 |
| VILLAGE OF WOODRIDGE, | ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On October 4, 2011, Jerry G. Markadonatos filed a class-action complaint alleging that the Village of Woodridge violated his right to procedural due process under 42 U.S.C. § 1983 by requiring him to pay, without a hearing, a $30 booking fee following his arrest for shoplifting. (Dkt. No. 1 ("Compl.").) On January 6, 2012, the court granted the Village's Motion to Dismiss the complaint because "the Village's procedures for charging the $30 fee pass constitutional muster." (Dkt. No. 26, at 7.) Subsequently, the court allowed Markadonatos to amend his complaint. (Dkt. No. 33.) Markadonatos then filed a First Amended Complaint in which he raises both procedural due process and substantive due process challenges to the Village's booking fee under § 1983. (Dkt. No. 35 ("Am. Compl.").) Pending before the court is the Village's "Motion to Dismiss Plaintiff's First Amended Complaint." (Dkt. No. 36.) For the reasons explained below, the Village's motion is granted.

BACKGROUND

The factual allegations in the First Amended Complaint are virtually identical to those in the original Complaint. Markadonatos was arrested on January 8, 2011, and charged with retail theft. (Am. Compl. ¶ 18.) He was taken to the Woodridge jail, where he was booked and required to pay a $30 booking fee under the Woodridge, Illinois, Municipal Code 5-1-12(A). (Am. Compl. ¶¶ 19-20.) Eventually Markadonatos received supervision for his retail theft charge. (*Id.* ¶ 21.) Under Illinois law, if he completes the supervision successfully, the charge will be dismissed "without adjudication of guilt." 730 Ill. Comp. Stat. 5/5-6-3.1(f). When Markadonatos was released from jail, he did not receive a refund of the booking fee. (Am. Compl. ¶¶ 22-24.) The Village's booking fee policy includes no provision for a refund regardless of the disposition of the arrestee's case. (Am. Compl. ¶ 26.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

ANALYSIS

To state a claim for relief under § 1983, Markadonatos must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Markadonatos's First Amended Complaint claims that the Village's booking fee policy violates his constitutional rights to procedural due process and substantive due process. The court will address each in turn.

I.    Procedural Due Process

The Village first contends that the court need not even consider Markadonatos's procedural due process claim because it s foreclosed by the law of the case doctrine. The law of the case doctrine is "'not a limit on the[] power'" of district courts, but instead "'merely expresses the practice of courts generally to refuse to reopen what has been decided.'" *Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998) (quoting *Messinger v. Anderson*, 225 U.S. 436 (1912)). Because the court previously rejected Markadonatos's claim that the Village's booking fee violated his procedural due process rights, the Village contends that the court need not revisit it.

In response, Markadonatos argues that the issue before the court is different because he has added additional factual allegations to his First Amended Complaint. *See Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 231 (7th Cir. 1988) ( "As a general rule, the [law of the case] doctrine does not extend to issues not presented or decided . . . ."). In particular, Markadonatos

-3-

points to new allegations specifying that the Village does not provide any procedure either before or after the Village collects the booking fee. (*See* Am. Compl. ¶ 16 ("The policy does not provide for *any* hearing or any other opportunity for the arrestee to contest the seizure and conversion of his or her money. No such hearing is provided before the deprivation. No hearing is provided after the deprivation."); *see also id.* ¶ 20 ("At no time after Woodridge took his money was Mr. Markadonatos provided with a hearing or any other opportunity for the arrestee to contest the seizure and conversion of his money.").) The original complaint, however, included a substantially identical allegation when it alleged that "[t]he policy does not provide for a predeprivation hearing or any other opportunity for the arrestee to contest the seizure and conversion of his or her money." (Compl. ¶ 12.) The statement that the policy does not provide "any other opportunity" to contest the seizure surely includes postdeprivation procedures.

More to the point, the court decided the Village's first motion to dismiss after taking into account that there were no alleged postdeprivation procedures. When describing the process the Village used to implement the booking fee, for example, the court stated that "the administration of the fee requires Village personnel to make only a simple determination, involving no discretion, that an individual was arrested. Village personnel make that determination at the time of booking an individual into jail after an arrest, making it nearly impossible for an error to occur." (Dkt. No. 26, at 6.) The court never mentioned any postdeprivation procedures (because none were alleged), and evaluated the constitutionality of the Village's imposition of the fee as if none existed. That evaluation led to the broad conclusion that "the Village's *procedures* for charging the $30 fee pass

constitutional muster." [1] Accordingly, the court has already ruled on. Markadonatos's procedural

due process claim in identical factual circumstances to those presented in his First Amended

Complaint, and his claim is thus barred by the law of the case doctrine.

Even upon reconsideration of the sufficiency of Markadonatos's procedural due process

claim, moreover, the claim would still fail. Markadonatos correctly states that "[t]he fundamental

requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful

manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). It follows, Markadonatos contends, that

although the *Mathews v. Eldridge* balancing test is appropriate to determine what procedures are

required in a given situation, never is the absence of all procedure sufficient. Rather, notice and

"some form of hearing is required before an individual is finally deprived of a property interest."

*Id.* at 334. Markadonatos thus contends that his allegation, now clarified in the First Amended

Complaint, that he received no hearing either before or after the deprivation of the $30 fee, is

sufficient to state a claim.[2]

Although the court must accept all pleaded facts as true, however, it must also determine,

using its "judicial experience and common sense," whether the facts alleged state a "plausible claim

for relief." *Iqbal*, 556 U.S. at 679. Here, therefore, the bare allegation that the Village provided no

---

[1] (Dkt. No. 26, at 7.) The court did introduce the discussion of Markadonatos's due process claim by stating that "[t]he only question is therefore whether the procedures leading to the deprivation [of the $30 property interest] were sufficient." (Dkt. No. 26, at 4.) In context, however, the court meant that the question involved the procedures logically "leading to" the deprivation, not merely the procedures temporally "leading to" the deprivation. (*See id.* at 3 (explaining the applicable standard by referring to "the procedures attendant upon that deprivation" (citation and quotation marks omitted)).)

[2] Markadonatos also contends that he received no notice of the $30 booking fee. That argument is contradicted by his allegation that he received a receipt, which provides notice of the fee. (Am. Compl. ¶ 20 & Ex. C.)

predeprivation or postdeprivation hearing cannot obscure the reality that the Village of necessity provides some minimal process before charging the fee to arrestees, including Markadonatos. As the First Amended Complaint alleges, the Village charges the fee at the time of booking an arrestee into jail after an arrest. (*See* Am. Compl. ¶ 20 (stating that the fee was collected from Markadonatos "upon being booked"); *see also id.* ¶ 25 (stating that the fee was collected from other arrestees "under the same procedures used with Mr. Markadonatos")). Because the arrestee is necessarily present at the time of his or her post-arrest booking into jail, he or she would be able to point out any error that might occur if the booking fee were imposed erroneously.

Because the booking fee applies to all arrestees, regardless of the legality of their arrest or the disposition of their case, imposing the fee requires a Village employee to make only a simple determination, involving no discretion, that the arrestee has been arrested. Imagine, by some strange chance, that a Village employee who has the task of imposing the booking fee made an erroneous determination by identifying as an arrestee a non-arrested bystander—perhaps a family member or an attorney visiting an inmate— and attempting to charge that bystander the $30 booking fee. Were that strange event to occur, the non-arrested bystander could simply point out the mistaken identification and demonstrate that he or she is not arrested and is free to go. Certainly, when the non-arrested bystander leaves the jail's premises, the Village employee would be apprised that the bystander had not been arrested.[3] Accordingly, the process of charging the fee at the moment when the individual is booked into jail provides an adequate opportunity to be heard to prevent or rectify

---

[3] Were the Village police to take the bystander into custody, even if by mistake, the bystander would then be an "arrestee" obligated to pay the booking fee. Needless to say, the bystander would then have a false arrest claim in which he could recover his $30, along with much else. There would be, however, no procedural due process violation arising from the imposition of the $30 fee on the bystander, who had become, at that point, an arrestee.

any erroneous imposition of the $30 booking fee. Markadonatos therefore has failed to state a claim

that he did not have adequate procedures available to him before the deprivation of his $30 through

the imposition of the Village's booking fee.

II.     Substantive Due Process

Markadonatos also alleges that the booking fee is substantively unconstitutional under the

due process clause. Specifically, he contends that it is unconstitutional to charge a booking fee to

all arrestees, regardless of the legality of the arrest or the subsequent disposition of their case.

The Seventh Circuit and the Supreme Court have both "emphasized how limited the scope

of the substantive due process doctrine is." *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158

F.3d 962, 965 (7th Cir. 1998) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). Substantive

due process protects only against "an abuse of government power which 'shocks the conscience.'"

*Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). The doctrine "is not 'a blanket protection

against unjustifiable interferences with property.'" *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th

Cir. 2003) (quoting *Schroeder v. City of Chicago*, 927 F.2d 957, 961 (7th Cir. 1991)). Indeed, the

protection of the substantive due process clause is so narrow that "only state action that impinges

on fundamental rights is subject to evaluation under substantive due process." *Idris v. City of

Chicago*, 552 F.3d 564, 566 (7th Cir. 2009).

Nonetheless, if a plaintiff has not alleged the violation of a fundamental right, courts have

treated a substantive due process claim as a challenge under the rational-basis test that applies to all

legislation. *See Lee*, 330 F.3d at 467. Accordingly, "[u]nless a governmental practice encroaches on

a fundamental right, substantive due process requires only that the practice be rationally related to

a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor

irrational." *Id.* Moreover, when the alleged violation involves deprivation of a property interest, the court will not engage in the rational-basis review until a plaintiff first shows "'either the inadequacy of state law remedies or an independent constitutional violation.'" *Id.* (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323-26 (7th Cir. 1996)).

Here, it is plain that Markadonatos's property interest in the $30 booking fee is not a fundamental right. In *Idris*, the Seventh Circuit explained that there is no fundamental right involved in a small sum such as a $90 traffic fine. 552 F.3d at 566 ("[T]he Supreme Court has never held that a property interest so modest is a fundamental right."). The interest in a $30 fee is similarly modest, and certainly not a fundamental right. Markadonatos has not cited, nor has the court found, any authority to the contrary.

Even assuming that state remedies are inadequate or that Markadonatos had alleged an independent constitutional violation, the Village's policy plainly passes the rational basis test. Under the rational basis test, the court must ask if the Village's practice of charging the booking fee to all arrestees, regardless of the legality of the arrest or the disposition of their case, is arbitrary or irrational. At this point, however, Markadonatos's claim runs into a problem: the amended complaint does not allege that Markadonatos was arrested without probable cause, or that he was acquitted, released without being charged, or subject only to charges that were dismissed because they lacked merit.[4] Accordingly, he lacks standing to challenge the rationality of the Village's policy under the

---

[4] Markadonatos does allege that he received "supervision" for the charge of retail theft and that, upon completion of the supervision, his record will reflect a "not guilty" disposition of the charge. *See* 730 Ill. Comp. Stat. 5/5-6-3.1(f). Despite the ultimate disposition of "not guilty," an order for supervision under Illinois law requires either "a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt," 730 ILCS 5/5-6-1(c), and thus reflects a determination that a charge has merit and that the defendant should be held responsible for his conduct. For present purposes, therefore, the disposition of Markadonatos's charge of retail

substantive due process clause as applied to arrestees in those groups. Instead, he may only challenge the rationality of the Village's policy as applied to arrestees who were arrested with probable cause, charged with crimes, and ultimately subjected to a conviction (or its equivalent) on those charges.

Charging a booking fee to those arrestees, however, is plainly rational, for the Village has a legitimate interest in defraying the cost of such arrests. Moreover, it is rational to share the costs of incarceration with those who through their actions necessitate that those costs be incurred. *See Sickles v. Campbell Cnty.*, 501 F.3d 726, 731 (6th Cir. 2007) (holding that sharing the costs of incarceration with offenders is a substantial government interest). Whatever concerns might come from sharing the costs of incarceration with those who are never convicted or with those who are arrested without probable cause do not, as stated above, arise in this case.  The Village's booking fee procedure, as applied to Markadonatos, is thus rational, and Markadonatos has failed to state a claim for a substantive due process violation.

<u>CONCLUSION</u>

For the reasons stated above, the Village's motion to dismiss [36] is granted. Civil case terminated.

ENTER:

James F. Holderman

_____

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: June 11, 2012

_____

theft is equivalent to a conviction.

-9-

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| Jerry G. Markadonatos, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) | No. 11-7006 |
| v. | ) ) | Hon. James F. Holderman |
| Village of Woodridge, | ) ) | |
| Defendant. | ) | |

<u>**NOTICE OF APPEAL OF JERRY G. MARKADONATOS**</u>

Notice is hereby given that Plaintiff Jerry G. Markadonatos hereby appeals to the United States Court of Appeals for the Seventh Circuit from the Memorandum Opinion and Order and judgment entered on June 11, 2012 by the United States District Court for the Northern District of Illinois, Eastern Division (Judge James F. Holderman) granting the motion to dismiss of defendant Village of Woodridge.

Dated: July 10, 2012

/s/ Matthew S. Burns
One of Plaintiff's Attorneys

Vincent L. DiTommaso
Peter Lubin
DiTommaso ♦ Lubin, P.C.
17W 220 22nd Street, Suite 200
Oakbrook Terrace, Illinois 60181
(630) 333-0000

James Shedden
Matthew S. Burns
Tony Kim
Schad, Diamond & Shedden, P.C.
332 S. Michigan Ave., Suite 1000
Chicago, Illinois 60604-4398
(312) 939-6280