No. 12-2619

_In the_

# United States Court of Appeals
# For The Seventh Circuit

---

Jerry G. Markadonatos, on behalf of himself and all other similarly situated,

       Plaintiff-Appellant,

vs.

Village of Woodridge,

       Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division

Case No. 11-CV-7006

The Honorable Chief Judge James F. Holderman

---

## BRIEF OF THE DEFENDANT-APPELLEE, VILLAGE OF WOODRIDGE, ILLINOIS

---

**QUERREY & HARROW, LTD.**
Brandon K. Lemley
175 W. Jackson, Ste. 1600
Chicago IL 60604
312-540-7000

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 12-2619

Short Caption: Markadonatis v. Village of Woodridge

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   [✔]      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   Village of Woodridge

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Querrey & Harrow, Ltd.

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

      N/A

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      N/A

Attorney's Signature:  s/  Brandon K. Lemley         Date:  10-16-12

Attorney's Printed Name:  Brandon K. Lemley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes**  ☒   **No** _____

Address:  Querrey & Harrow, LTD, 175 W. Jackson Ste. 1600

      Chicago, IL 60604

Phone Number:  312-540-7548          Fax Number:  312-540-0578

E-Mail Address:  blemley@querrey.com

                                             rev. 01/08 AK

# TABLE OF CONTENTS

Table of Authorities .................................................................. iii

Jurisdictional Statement ........................................................... 1

Statement of the Issues Presented for Review ........................ 1

Statement of the Case ............................................................... 2

Statement of Facts ..................................................................... 2

Summary of the Argument ........................................................ 4

Argument ..................................................................................... 5

   I.  Standard of appellate review ........................................ 5

  II.  The legal ramifications of Markadonatos's guilty plea and
      sentence of supervision ................................................. 5

 III.  The district court correctly dismissed the procedural due
      process claim. ................................................................. 6

     A.  Woodridge's booking fee was essentially a "user fee" that did not
        work a "deprivation" of property ............................................ 7

     B.  Woodridge's booking fee does not violate due process ................... 8

        1.  The private interest at issue is minimal ........................................ 8

        2.  The risk of error is virtually non-existent .................................... 10

          (a)  Under the terms of the ordinance as written, the risk of
             error is nil ................................................................... 10

          (b)  Markadonatos cannot re-write the ordinance to change
             the substantive criteria for the fee ........................................ 12

        3.  The fiscal and administrative burdens on Woodridge for the
          process sought are high ................................................... 14

        4.  In balancing the *Eldridge* factors, informal process is
          sufficient to protect the highly improbable risk of error ......... 16

     C.  Post-deprivation remedies provide adequate process ................... 18

D. Neither *Allen v. Leis* nor *Roehl v. Naperville* can salvage Markadonatos's case. ............................................................ 20

    1. *Allen's* reasoning has been rejected by other Circuits, and is distinguishable ................................................................ 20

    2. *Roehl* should not be followed ........................................ 22

IV. The substantive due process claim was correctly dismissed ............ 24

    A. Markadonatos cannot recast other claims under the rubric of substantive due process ................................................ 24

    B. Because no underlying constitutional violation has been pled, and because state law provides adequate remedies, a substantive due process claim cannot be advanced ................................. 25

    C. Markadonatos cannot carry his heavy substantive due process burden ....................................................................... 26

V. Markadonatos's equal protection argument (which was never advanced below) fails ..................................................... 28

VI. Markadonatos does not have a stake in his due process claims (and thus lacks standing) because he pled guilty, was found guilty, and ordered to pay all fines and fees ............................ 30

Conclusion ............................................................................. 32

Certificate of Service ................................................................. 33

Circuit Rule 31(e) Certification ................................................... 33

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements ................................. 34

Appellee's Supplemental Appendix Table of Contents ..................... 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................ 25

*Allen v. Leis,* 213 F. Supp.2d 819 (S.D. Ohio 2002) ........................................ 14, 20, 21

*Am. Ambassador Casualty Co. v. City of Chicago*,
    563 N.E.2d 882 (Ill. App. Ct. 1990) ........................................................... 20, 26

*Bailey v. Carter*, 15 F. App'x 245 (6th Cir. 2001) ............................................ 7

*Barbian v. Panagis*, 694 F.2d 476 (7th Cir. 1982) ............................................ 10

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ................................................... 5

*Broussard v. Parish of Orleans,* 318 F.3d 644 (5th Cir. 2003) ......................... 9

*Browder v. Ankrom*, No. 4:05CV-P9-M, 2005 WL 1026045
    (W.D. Ky. April 25, 2005) ......................................................................... 7

*Codd v. Velger,* 429 U.S. 624 (1977) ............................................................... 10, 11, 31

*Currier v. Baldridge*, 914 F.2d 993 (7th Cir. 1990) .......................................... 18, 31

*Dixon v. Lowe,* 431 U.S. 103 (1977) ................................................................. 10, 17

*Friedman v. Village of Skokie*, 763 F. 2d 236 (7th Cir. 1985) ........................... 13

*Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2002) ................................... 20, 25, 26

*Graham v. Connor,* 490 U.S. 386 (1989) .......................................................... 25

*Heck v. Humprhey,* 512 U.S. 477 (1994) .......................................................... 6

*Heller v. Doe by Doe,* 509 U.S. 312 (1993) ...................................................... 28

*Hlavacek v. Boyle*, 665 F.3d 823 (7th Cir. 2011) .............................................. 7

*Idris v. City of Chicago*, 552 F.3d 564 (7th Cir. 2009) ..................................... 27, 28, 30

*Jackson v. Parker*, 08 C 1958, 2009 WL 3464138 (N.D. Ill. Oct. 26, 2009)
    *aff'd*, 627 F.3d 634 (7th Cir. 2010) ........................................................... 18, 31

*James v. Hyatt Regency Chicago*, 707 F.3d 775 (7th Cir. 2013) ...................... 29

*Jensen v. Klecker*, 548 F.2d 1179 (8th Cir. 1982) ............................................ 7

*Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989) ............................ 12

*Kernats v. O'Sullivan*, 35 F.3d 1171 (7th Cir. 1994) ................................................. 25

*Lee v. Chicago*, 330 F.3d 456 (7th Cir. 2003) .......................................................... 27

*Local 15, Int'l Bhd. of Elec. Workers v. Exelon Corp.*,
    495 F.3d 779 (7th Cir. 2007) .................................................................... 29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................ 30

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ...................................................... *passim*

*Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222 (Ill. 1990) ....................... 19

*Mitchell v. White*, 07-3023, 2007 WL 2700051 (C.D. Ill. Sept. 5, 2007).............. 18, 31

*Montgomery v. Stefaniak,* 410 F.3d 933 (7th Cir. 2005).......................................... 26

*Morgan v. McCotter*, 365 F.3d 889 (10th Cir. 2004) ............................................... 31

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ................................................................ 8

*National Paint & Coatings v. Chicago*, 45 F.3d 1124 (7th Cir. 1995) ....................... 26

*County of Sacramento v. Lewis,* 523 U.S. 833 (1998) .............................................. 26

*Parratt v. Taylor,* 451 U.S. 527 (1981) .................................................................... 19

*Payton v. County of Carroll,* 473 F.3d 845 (7th Cir. 2007).................................. 13, 16

*People v. Coleman*, 488 N.E.2d 1009 (Ill. 1986).......................................................... 6

*People v. Hightower*, 485 N.E.2d 452 (1985).............................................................. 6

*People v. Sheahan*, 659 N.E.2d 1339 (Ill. 1995)......................................................... 6

*Pro-Eco, Inc. v. Bd. of Com'rs of Jay County*, 57 F.3d 505 (7th Cir. 1995).............. 28

*Purze v. Village of Wintrop Harbor,* 286 F.3d 452 (7th Cir. 2002) ........................... 29

*Ray v. City of Chicago*, 629 F. 3d 660 (7th Cir. 2011) ............................................... 5

*Rector v. City & County of Denver*, 348 F.3d 935 (10th Cir. 2003) .......................... 31

*Robledo v. City of Chicago*, 778 F. Supp. 2d 887 (N.D. Ill. 2011)....................... 12, 22

*Roehl v. City of Naperville,* 857 F.Supp.2d 707 (N.D. Ill. 2012) ............. 20, 22, 23, 24

*Schlib v. Kuebel,* 404 U.S. 357 (1971) .................................................................... 13, 16

*Seafarers Int'l Union v. United States Coast Guard,*
    81 F.3d 179 (D.C. Cir. 1996) ............................................................................ 7

*Sickles v. Campbell County*, 501 F.3d 726 (6th Cir. 2007)................................. *passim*

*Skarzynski v. Milwaukee County,* 794 F. Supp. 2d 927 (E.D. Wis. 2011) ..... 10, 12, 32

*Slade v. Hampton Roads Reg'l Jail,* 407 F.3d 243 (4th Cir. 2005) .......... 11, 17, 21, 27

*Slade v. Hampton Roads*, 407 F.3d 243 (4th Cir. 2005)..................................... *passim*

*Spiegel v. Rabinovitz,* 121 F.3d 251 (7th Cir. 1997) ..................................... 27

*Tenny v. Blagojevich*, 659 F.3d 578 (7th Cir. 2011)....................................... 19

*Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410 (3d Cir. 2000).................. 11

*Toney-El v. Franzen,* 777 F.2d 1224 (7th Cir. 1985) ........................................... 17, 18

*United States v. Jones*, 448 F.3d 958 (7th Cir. 2006) ...................................... 6

*United States v. Kras*, 409 U.S. 434 (1973)................................................... 28

*United States v. Sperry Corp.*, 493 U.S. 52 (1989)......................................... 8

*Van Harken v. Chicago*, 103 F.3d 1346 (7th Cir. 1997) ................................. 9

*Washington v. Glucksberg*, 521 U.S. 702 (1997)........................................... 26

*Zinermon v. Burch,* 494 U.S. 113 (1990)....................................................... 19

**Statutes**

42 U.S.C. § 1983.............................................................................................. 2

730 ILCS 5/5–6–1............................................................................................ 5

730 LLCS 5/5–6–3.1......................................................................................... 5

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant, Jerry Markadonatos's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.   Can Markadonatos can assert a procedural due process claim for a $30 "booking fee" where little is at stake, there is virtually no risk of error under the substantive criteria of the ordinance, the burdens of alternative procedures vastly outweigh the benefit of the $30, and informal and post-deprivation remedies provide additional safeguards?

II.  Substantive due process does not apply when fundamental rights are not at issue. Did the district court correctly dismiss the substantive due process claim as Markadonatos concedes no fundamental right is at issue?

III. On appeal, Markadonatos argues that Woodridge's booking fee violates equal protection. Yet, this claim was neither pled in the complaints nor argued before the district court. Has the argument been waived?

IV.  Federal courts do not issue advisory opinions for situations that do not affect the litigants. Markadonatos argues about whether individuals acquitted or unlawfully arrested can recover the $30 paid in booking fees. Yet, Markadonatos pled guilty, was found guilty, and was ordered to pay all fines and fees and does not contend he was unlawfully arrested. Does Markadonatos even have standing to assert his claims?

## STATEMENT OF THE CASE

On October 4, 2011, Markadonatos filed a putative class action complaint containing just one count—procedural due process under 42 U.S.C. § 1983. (R. 1-7.)[1] On January 6, 2012, the district court entered a memorandum opinion and order dismissing the complaint. (R. 156-162.) In a footnote of the opinion, the district court noted that because Markadonatos did not challenge the booking fee as substantively unconstitutional, it was not addressing that issue. (R. 160, n.3).

On January 31, 2012, the district court granted Markadonatos leave to amend the complaint, and on February 14, 2012, Markadonatos filed his First Amended Complaint containing one count that blended claims for procedural due process and substantive due process under 42 U.S.C. § 1983. (R. 178-193.) On June 11, 2012, the district court entered a memorandum and order dismissing the amended complaint. (R. 275-283.) Markadonatos timely appealed. (R. 284.)

## STATEMENT OF FACTS

Woodridge Village Code 5-1-12 addresses "Administrative Fees" imposed by the Woodridge Police Department for various administrative services. (R. 187). Village Code 5-1-12(A) concerns a $30 "booking fee" imposed upon "any custodial arrest including warrant." (R. 179, 187.) Village Code 5-1-12(A) has no reimbursement policy. (R. 179.)

On January 8, 2011, Markadonatos was arrested, taken to the Police Department, and charged with shoplifting from a Target store. (R. 180, 190.) At the

---

[1] Record citations refer to the sequentially numbered "PageID #" assigned by the District Court Clerk.

station, Markadonatos was given an "Arrest/Booking Fee Notice," notifying him that under the ordinance an "administrative fee of $30.00 is required upon completion of any custodial arrest/booking procedure." (R. 192.) The notice indicates that payment is due within fifteen days of arrest. (R. 192.) However, Markadonatos paid the $30 booking fee upon his release, as is recorded on his notice. (R. 180, 192.)

Although Markadonatos alleges that he will be adjudicated "not guilty" (R. 180), the DuPage County "Criminal Sentence Order" from his criminal case and Illinois reflects otherwise. On April 20, 2011, he pled guilty to shoplifting and was *found guilty*, sentenced to supervision for 12 months and ordered to pay "all fines, fees, costs, penalties and assessments," "include[ing]" various fees itemized by the court totaling $785. (R. 231-232; Appellee's Appx. B-1, B-2.)[2]

Markadonatos alleges Woodridge violated due process by neither refunding his $30 nor providing him the means to do so. (R. 181.)

---

[2] Appellee's Appendix is designated B-1 through B-2 to avoid confusion with Appellant's Appendix.

## SUMMARY OF THE ARGUMENT

Municipal services come at a cost. Processing individuals consumes police resources. To recoup some of those costs, Woodridge charges a $30 "booking fee."

Jerry Markadonatos was arrested for shoplifting and paid the $30 fee. He pled guilty and was found guilty, sentenced to supervision and ordered to pay all fines and fees. Despite this, he claims arrestees should be able to recover the $30 because Woodridge wouldn't refund the money if they have are acquitted (which he wasn't) or if probable cause to arrest had been lacking (which he does not contend).

Under Woodridge's ordinance, a minimal $30 fee is charged when one substantive criterion is met: a person is subject to custodial arrest. Due process does not require a hearing when the private interest is minor and the risk of erroneously charging a non-arrestee is virtually nonexistent. If a non-arrestee was charged the fee, informal notification of that fact is sufficient process.

Markadonatos argues that the ordinance should make exceptions for individuals who—unlike himself—are unlawfully arrested or acquitted. However, he cannot re-write the ordinance to impose different substantive criteria. His concern about probable cause addresses the underlying arrest, not the separate decision to charge a booking fee. And if an arrest is not supported by probable cause, then tort remedies provide adequate procedures to recover the $30.

Ultimately, Markadonatos's case is pure academic abstraction. He doesn't have a stake in it and thus lacks standing, because he pled guilty and was ordered to pay all fees and fines. No amount of process would ever afford him a remedy.

## ARGUMENT

### I.     Standard of appellate review.

This Court reviews the district court's determination that Plaintiff failed to state a claim *de novo. Ray v. City of Chicago*, 629 F. 3d 660, 662 (7th Cir. 2011). "In analyzing the case, [this Court] may affirm on any ground contained in the record." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009).

### II.    The legal ramifications of Markadonatos's guilty plea and sentence of supervision.

Markadonatos peddles the fiction that when he pled guilty and when the court found him guilty and imposed a sentence of supervision (Appellee's Appx. B-1, B-2), he was (rather mystically) acquitted of his crime. This is not the law.

In Illinois, a "court may, upon a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt, defer further proceedings and the imposition of a sentence, and enter an order for supervision of the defendant." 730 ILCS 5/5–6–1(c). When supervision is successfully concluded, "*the court shall* discharge the defendant and *enter a judgment dismissing the charges*." 730 LLCS 5/5–6–3.1(e) (emphasis). But a "dismissal of the charges" is not an acquittal, even if it is "deemed without adjudication of guilt and shall not be termed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime." 730 ILCS 5/5–6–3.1(f).

The Illinois Supreme Court holds that when a person has been placed on supervision, this may be considered as proof he committed the offense. *People v. Sheahan*, 659 N.E.2d 1339, 1343-44 (Ill. 1995). Illinois courts reject the contention

that supervision cannot be considered a conviction under any circumstances. *People v. Hightower*, 485 N.E.2d 452, 455 (1985) (supervision protects against "only those rights and privileges statutorily denied to convicted offenders" and is not "the right to be completely free of one's past conduct"). *See also Jackson v. Parker*, 08 C 1958, 2009 WL 3464138 (N.D. Ill. Oct. 26, 2009) *aff'd*, 627 F.3d 634 (7th Cir. 2010) (concluding that supervision precluded a false arrest claim under *Heck v. Humprhey,* 512 U.S. 477 (1994)). An order of court supervision is not a deferred prosecution that avoids an adjudication of guilt. *United States v. Jones*, 448 F.3d 958, 960 (7th Cir. 2006). Rather, an adjudication of guilt precedes the disposition of supervision. *Id*. To receive the sentence, "the person must necessarily either have pled guilty to, or stipulated to the facts supporting, the underlying charge or have been found guilty of the offense." *People v. Coleman*, 488 N.E.2d 1009, 1013 (Ill. 1986). In fact, the state court found Markadonatos "guilty" on April 20, 2011—which is the exact opposite of being found "not guilty." (Appellee's Appx. B-1.)

Supervision "does not to foreclose all consequences of [Markadonatos's] prior misdeeds. … The reality … is that [Markadonatos] cannot simply make his criminal history go away." *Jones,* 448 F.3d at 960.

## III. The district court correctly dismissed the procedural due process claim.

Procedural due process requires a plaintiff to "show that [Woodridge] deprived him of a cognizable property interest and that it failed to give him whatever process was due for that particular deprivation." *Hlavacek v. Boyle*, 665 F.3d 823, 825 (7th Cir. 2011).

**A.     Woodridge's booking fee was essentially a "user fee" that did not work a "deprivation" of property.**

In stealing merchandise from Target, Markadonatos's criminal act was the catalyst for arrest, and he used Village resources during the booking process. Markadonatos concedes as much by dint of his guilty plea. (R. 231-32; Appellee's Appx. B-1, B-2.) He thus used Village services in being processed (i.e., fingerprinting, photographing, using holding cell, monitoring, keeping officers off the streets, etc.)—making the $30 booking fee essentially nothing more than a "user fee." That Markadonatos complains about the $30 cost of the service is of no import. The proper "measure of fees is the cost to the government of providing the service, not the intrinsic value of the service to the recipient." *Seafarers Int'l Union v. United States Coast Guard*, 81 F.3d 179, 185 (D.C. Cir. 1996).

Similar due process challenges to institutional assessments for jail services and booking fees were mounted in *Bailey v. Carter*, 15 F. App'x 245, 251 (6th Cir. 2001) (unpublished) and *Browder v. Ankrom*, No. 4:05CV-P9-M, 2005 WL 1026045 (W.D. Ky. April 25, 2005). Debiting an inmate's account for costs associated with incarceration did not violate due process. "Such debits are not 'deprivations' in the traditional sense because an inmate has been provided with a service or good in exchange for the money debited." *Browder*, 2005 WL 1026045 at *5 (citing *Bailey*). *See also Jensen v. Klecker*, 548 F.2d 1179, 1183 (8th Cir. 1982) (deduction from prisoner accounts for postage were "assessment[s] for value received"). Cases from the takings context are also helpful. "A reasonable user fee is not a taking if it is

imposed for the reimbursement of the cost of government services." *United States v. Sperry Corp.*, 493 U.S. 52, 63 (1989).

Similarly, the Woodridge booking fee is a "reasonable user fee." The fact that Markadonatos has never contended that his own arrest was unlawful (a fact reinforced by his guilty plea) only underscores the absence of any deprivation. Thus, imposing a minimal, non-punitive charge as a user fee to defray costs cannot implicate due process as there was no "deprivation" in the first instance.

**B.     Woodridge's booking fee does not violate due process.**

Even if there was a "deprivation," the question is whether Markadonatos received the "protections as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976).

Due process is a flexible concept, and its procedural requirements vary depending upon the particular deprivation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). What procedures satisfy due process are considered via the three-part balancing test of *Eldridge*: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest through the procedure used and the probable value of additional or substitute procedural safeguards; and (3) the fiscal and administrative burdens that additional procedural requirements would entail. 424 U.S. at 335.

**1.   The private interest at issue is minimal.**

"[T]he less that is at stake . . . the less process is due." *Van Harken v. Chicago*, 103 F.3d 1346, 1353 (7th Cir. 1997). This case epitomizes that observation,

as so little is at stake. The district court correctly "conclude[d] that Markadonatos's interest in the $30 he paid is entitled to only minimal weight." (R. 160).

Instructive is *Sickles v. Campbell County*, 501 F.3d 726 (6th Cir. 2007). Plaintiff-inmates' money was confiscated and placed in canteen accounts, which were debited $30 to cover booking and $20 per day for housing. *Id.* at 729. Plaintiffs argued the fees violated due process. *Id.* The Sixth Circuit rejected the contention because the total amounts at issue—$20 and $110, respectively—were "small in absolute and relative terms." *Id.* at 730. "The private stakes at issue thus do not begin to approach the kinds of government conduct that have required a pre-deprivation hearing." *Id.*

The Fourth Circuit replicated *Sickles'* holding in *Slade v. Hampton Roads*, 407 F.3d 243 (4th Cir. 2005). In that case, a pretrial detainee was charged $1 a day to defray incarceration costs, with a total amount at stake being $150. *Id.* at 247. The court characterized the plaintiff's interest of $150 as "limited." *Id.* at 251-53.

In *Broussard v. Parish of Orleans,* 318 F.3d 644 (5th Cir. 2003), a state statute imposed various fees totaling $27 on posting bail. *Id.* at 647-48. The Fifth Circuit noted that the private interest at stake was so minimal that the risk of error is not of "constitutional significance, akin to *danum absque injuria*." *Id.* at 657.

In this case, there is no doubt that the booking fee is minimal, a point Markadonatos appears to concede. (Appellant's Brief at 25).

### 2.  The risk of error is virtually non-existent.

The second *Eldridge* factor considers the probability of an erroneous deprivation if a hearing is not provided along with the probable value of additional procedures. There is zero risk that Woodridge will erroneously charge the $30 booking fee to someone who has not been arrested.

Markadonatos's arguments fail because he wants the Court to re-write the ordinance to add new substantive criteria for when the fee may be imposed.

### (a)     Under the terms of the ordinance, the risk of error is nil.

The risk of erroneously charging the $30 booking fee under the substantive criteria of the ordinance is zero.

In evaluating the risk of erroneously depriving a person of their property, Courts consider whether there is any factual dispute that will need to be resolved before the state may deprive a person of property. "This is because if there are no factual disputes to resolve then there is no reason to hold a hearing." *Skarzynski v. Milwaukee County,* 794 F. Supp. 2d 927, 932 (E.D. Wis. 2011). A hearing is not required when the underlying facts are not in dispute and the government's actions are "largely automatic." *Dixon v. Lowe,* 431 U.S. 105, 113-114 (1977); *Codd v. Velger,* 429 U.S. 624, 627-28 (1977) (when the facts are not in dispute, "no hearing would afford a promise" of challenging the deprivation); *Barbian v. Panagis*, 694 F.2d 476, 488 (7th Cir. 1982) (due process does not require hearing when the facts cannot be in dispute).

Under Woodridge's ordinance, the risk of an erroneous deprivation is nil, as

the fact of custodial arrest cannot be disputed. *Id.* The sole question to be determined by the Village is whether the individual was subjected to custodial arrest. That question requires a simple "yes" or "no" answer that is entirely automatic. As there can never be a dispute about this fact, "no hearing would provide a promise" of challenging the $30 fee. *Codd,* 429 U.S. at 627-28 .

Courts considering similar fees have routinely found that a risk of an erroneous deprivation is low when the decision involved "elementary accounting that has little risk of error and is non-discretionary." *Sickles v. Campbell County,* 501 F.3d 726, 730 (6th Cir. 2007); *Slade v. Hampton Roads Reg'l Jail,* 407 F.3d 243, 253-54 (4th Cir. 2005) ("the daily deduction of the charge from the prisoner's account is a ministerial matter with no discretion and minimal risk of error); *Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410, 422 (3d Cir. 2000) ("The assessments … involve routing matters of accounting, with low risk of error).

The risk of error here is even lower than *Sickles, Slade,* or *Tillman.* In each of those cases, there was a genuine—even if low—risk of human error. In *Sickles* (where a percentage of money was taken), it was possible that the figures could be inaccurately logged into the computer. *Sickles,* 501 F.3d at 728-29; 731 ("Errors, to be sure, may arise in any human enterprise, even one involving computers, but the simplicity of the calculations the lack of discretion in making the withholdings renders improbable the arbitrary or otherwise improper government action"). In *Tillman* and *Slade* (where per diem fees were charged), there was a minimal risk of clerical errors in calculating the number of days incarcerated. *Tillman,* 221 F.3d at

421; *Slade,* 407 F.3d at 253-54.

Woodridge's ordinance involves a binary decision. (R. 192). The person was either subject to a custodial arrest or he was not. As that fact can never be in dispute, there is no need for a hearing. *Skarzynski,* 794 F. Supp. 2d at 932. There is no risk of an erroneous deprivation necessitating formal procedures.

### (b)     Markadonatos cannot re-write the ordinance to change the substantive criteria for the fee.

What Markadonatos really wants is to change the substantive criteria for when the fee can be imposed. However, he cannot re-write Woodridge's ordinance.

Due process looks at whether the "substantive predicates" of the ordinance "mandate the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). In *Eldridge,* the Supreme Court determined the risk of error by looking only to the substantive eligibility criteria of the statute. *Eldridge,* 424 U.S. at 343-44.

Thus, in *Robledo v. City of Chicago*, 778 F. Supp. 2d 887, 898 (N.D. Ill. 2011), the district court found no risk of erroneous deprivation when the potential error raised by the plaintiff was immaterial under the substantive criteria of the ordinance. *Id.* ("The trouble for plaintiffs, of course, is that the deprivation of their property interest was *not* substantively 'erroneous.' That is, the City did not apply the Ordinance erroneously as a result of defective process; it applied the ordinance *correctly*, pursuant to its substantive terms. *Plaintiffs simply argue … that those terms should be different.* In short, the second *Eldridge* factor resoundingly favors the City.").

Similarly, in *Sickles,* the Sixth Circuit rejected plaintiff's argument that there was a risk of error based on lack of financial ability to pay because ability to pay was not included in jail's explicit policy. *Sickles,* 501 F.3d at 732.

The district court correctly pointed out that "Markadonatos has incorrectly identified the risk of erroneous deprivation." (R. 160). The substantive provisions of Woodridge's ordinance contain just one criterion—whether the individual was subjected to a "custodial arrest." Thus, the district court correctly observed the only risk of erroneous deprivation recognized under the ordinance, "is the risk that the $30 will be charged to someone who has not been arrested." (R. 161).

To the extent Markadonatos is concerned about the risk that an arrestee who is acquitted does not receive a refund, he is barking up the wrong tree. This Court and the Supreme Court have recognized that an "administrative fee … do[es] not offend due process even though it [is] imposed on both those who were convicted and those who were acquitted." *Payton v. County of Carroll,* 473 F.3d 845, 850-51 (7th Cir. 2007); *Schlib v. Kuebel,* 404 U.S. 357, 370-371 (1971).

Further, without "a state or municipal law" requiring it, "[t]he fourteenth amendment does not protect [Markadonatos's] mere expectation of a refund." *Friedman v. Village of Skokie*, 763 F. 2d 236, 239 (7th Cir. 1985). No Illinois law or Woodridge ordinance requires a refund of booking fees when there is an acquittal. Although Markadonatos cites cases for the proposition that alternative procedures are sufficient if they allow for the refund of fees if adjudicated not guilty, the underlying laws in those cases (unlike here) required refunds following an acquittal.

*See Allen v. Leis,* 213 F. Supp.2d 819 (S.D. Ohio 2002) (state statute only allowed county jail to collect *reimbursement* from pretrial detainees, and explicitly required reimbursement following acquittals); *Slade,* 407 F.3d at 247 (the statute allowed an inmate to request a refund of a per diem administrative fee upon being adjudicated not guilty).

As for his probable cause argument, (Appellant's Brief at 23), Markadonatos simply cannot re-write the ordinance to inject the word "lawful" prior to the words "custodial arrest."

Of course, the nail in his own coffin are the facts that Markadonatos pled guilty, was found guilty, was ordered to pay all fines and fees, and does not even claim to have been arrested without probable cause. (R. 231-232; Appellee's Appx. B-1, B-2.) Purely academic exercises do not merit this Court's consideration.

Because Markadonatos cannot redraft the substantive terms of the ordinance, he has misidentified the risk of erroneous deprivation.

### 3.     The fiscal and administrative burdens on Woodridge for the process sought are high.

The final *Eldridge* factor asks the court to consider the fiscal and administrative burdens that the additional procedural requirements sought would impose. *Eldridge*, 424 U.S. at 335.

On this score, the district court erred because it underestimated the burdens additional procedures would pose for Woodridge by finding that the "Village's interest" is limited to the $30 it collects as the booking fee. (R. 161). That is an incorrect assessment of the third *Eldridge* factor.

The burden of the providing the type of full adversarial hearings sought vastly outweigh the Village's interest in collecting $30. Markadonatos argues that due process requires a "complicated probable cause determination which a judge must make before an arrest can be deemed legally sufficient." (Appellant's Brief at 23.) Although he wants a regular judge, he would settle for an administrative law judge. (Appellant's Brief at 24.)

But the financial cost involved in the type of hearing sought is high. A full blown testimonial hearing is expensive. Markadonatos would require the Village to hire an administrative law judge versed in criminal procedure (most likely an attorney). It would require taking police officers off the street to sit for a hearing. It would require complaining witnesses to testify (would there even be the power to subpoena witnesses?). Woodridge should not have to spend itself into a financial black hole to obtain a $30 fee designed to cover administrative costs.

Other practical problems doom Markadonatos's suggestion. He wants the hearing to occur *prior* to being charged the fee. However, unless arrestees testify there would be no need for a hearing, but requiring this procedure would implicate their 5th Amendment rights. He also argues that individuals must be able to "raise all defenses in defense of their property." (Appellant's Brief at 24). But what are those defenses? Markadonatos does not say. His silence speaks volumes.

Markadonatos also complains that if arrestees do not pay at the time of their release, then there is no procedure to collect the booking fee. Not true. Woodridge

Village Code 1-6D-2(H) [3] provides for the collection of unpaid fees.

Moreover, his suggestion that the Village simply wait until the criminal court has determined guilt before charging the fee (Appellant's Brief at 27) flies in the face of established precedent. *Sickles*, 501 F.3d at 731 ("To the extent they want the jail to wait until *after* a sentencing hearing to withhold these fees, they are barking up the wrong tree. That is not a request to establish a predeprivation hearing *before* the withholding but a request to delay the withholding"); *Payton,* 473 F.3d at 850-51 (an "administrative fee … do[es] not offend due process even though it [is] imposed on both those who were convicted and those who were acquitted"); *Schlib,* 404 U.S. at 370-371.

### 4.    In balancing the *Eldridge* factors, informal process is sufficient to protect the highly improbable risk of error.

Due process only "calls for such procedural protections as the particular situation demands." *Eldridge,* 424 U.S. at 334. In this case, so little is at stake with virtually no possibility of an erroneous deprivation that additional, formal procedures are not required.

Markadonatos fronts his brief by claiming that Woodridge never provides any process at all under any circumstance. That is not true. Informal process is sufficient given the minimal interest at stake, the virtually non-existent risk of error and the burdens of imposing formal process.

This district court recognized the adequacy of informal process when it

---

[3] Available at http://www.sterlingcodifiers.com/codebook/index.php?book_id=555 (last visited April 2, 2013). This Court may take judicial notice of ordinances.

theorized about the speculative possibility that Woodridge would attempt to impose the $30 booking fee on a "non-arrested bystander." (R. 280-281). The district court held that the informal act of notifying a Village employee that he had not been subjected to a custodial arrest was sufficient process under this particular situation. (R. 280-281).

The district court's opinion is firmly grounded in precedent. When the risk of error is extraordinarily low, informally notifying governmental officials about an error is constitutionally sufficient. *Toney-El v. Franzen,* 777 F.2d 1224, 1228, 1229 (7th Cir. 1985) (plaintiff "could have informally informed prison officials about the error in calculating his release date through correspondence" and this would satisfy *Eldridge* even without established procedures for doing so). So too, in the Supreme Court has held that when the risk of error is low, merely writing a letter to an official is sufficient process. *Dixon*, 431 U.S. at 113 ("Of course, there is the possibility of clerical error, but written objection will bring a matter of that kind to the Secretary's attention").

Markadonatos attempts to make hay of the fact that in *Sickles* and *Slade* detainees in jails could file grievances to protest errors in withholdings. However, "procedural due process rules are shaped by the risk of error inherent in the generality of cases, not the rare exceptions." *Eldridge*, 424 U.S. at 344. The possibility that large county jails could make clerical errors in determining prisoner withholdings is far more likely to occur than the remote, speculative possibility that a "non-arrested bystander" would be required to pay Woodridge's booking fee. Given

the remoteness, the fact that such an individual could simply inform a Woodridge employee that he was not arrested provided all the process to which he was due. *Toney-El*, 777 F.2d at 1229 (informal notification sufficient process, even when there was no established procedure for doing so).

### C. Post-deprivation procedures provide adequate process.

Ultimately, Markadonatos's entire argument is an academic exercise. Post-deprivation procedures provided him with process. And other arresttees can bring tort claims to recover the $30.

For Markadonatos personally, the criminal justice system provided him with adequate post-deprivation process. By pleading guilty, Markadonatos admitted his guilt, the facts underlying his crime, and probable cause. *Currier v. Baldridge*, 914 F.2d 993, 996 (7th Cir. 1990); *Mitchell v. White*, 07-3023, 2007 WL 2700051 (C.D. Ill. Sept. 5, 2007) ("by pleading guilty, she admitted that she had committed the battery; that admission cures any concerns regarding whether the officers had probable cause to arrest"); *Jackson*, 2009 WL 3464138 (sentence of supervision precludes false arrest claim).

Further, Markadonatos had the opportunity to contest the imposition of fees with the judge, who ordered him to pay "all fines, fees, costs, penalties and assessments." (R. 231-232; Appellee's Appx. B-1, B-2.) This order was not limited to just those fees spelled out in the sentencing order, but "include[d]" "all" fees. (*Id.*) Thus, Markadonatos received post-deprivation process through the judicial process.

To the extent Markadonatos's real concern is that arrestees (*other than himself*) would be required to pay the booking fee even if unlawfully arrested, then he is not actually challenging the procedures employed in imposing the booking fee—he is challenging the underlying arrest (*of others*). But because arresting someone without probable cause is unauthorized, tort remedies provide all the process which is due. *Parratt v. Taylor,* 451 U.S. 527, 539 (1981); *Zinermon v. Burch,* 494 U.S. 113, 127 (1990).

A person who (*unlike Markadonatos*) is unlawfully arrested may recover any damages stemming from that unlawful arrest—including the booking fee—through the tort of false arrest or false imprisonment. *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1231 (Ill. 1990). This provides all the process to which such a person is due. Markadonatos responds that because the booking fee is imposed by virtue of an ordinance, it can never be considered "random and unauthorized." (Appellant's Brief at 27). But the problem with this argument is that he has collapsed two separate actions into one. A police officer's decision to arrest someone is distinct from the separate act (frequently of another officer) of imposing the booking fee under the Woodridge ordinance.

And to the extent that Markadonatos may be arguing that Illinois law required different substantive criteria for imposing the booking fee, even an official policy in derogation of the law is random and unauthorized. *Tenny v. Blagojevich*, 659 F.3d 578, 582 (7th Cir. 2011). Thus, allowing claims for writ of mandamus to compel compliance with state law, for conversion, bailment, or even assumpsit

19

provide adequate process. *Am. Ambassador Casualty Co. v. City of Chicago*, 563 N.E.2d 882, 884-85 (Ill. App. Ct. 1990); *Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002).

Ultimately, because Markadonatos received adequate post-deprivation process through the criminal justice system, and because tort law provides adequate process for others, dismissal was proper.

### D.   Neither *Allen v. Leis* nor *Roehl v. Naperville* can salvage Markadonatos's case.

Markadonatos relies heavily on *Allen v. Leis,* 213 F. Supp.2d 819 (S.D. Ohio 2002) and *Roehl v. City of Naperville,* 857 F.Supp.2d 707 (N.D. Ill. 2012). Neither case can save his claim.

### 1.   *Allen's* reasoning has been rejected by other Circuits, and is distinguishable.

In *Allen*, a state statute allowed counties to enact policies to be "reimbursed" for the cost of confinement of pretrial detainees upon a finding of guilt by the criminal court. *Id.* at 820-821. Thus, if a person was found not guilty, they could apply for a full refund the money. *Id.* at 821. Further, the state statute allowed for hardship exemptions, so that those without sufficient resources would not have to pay the fee. *Id.*

The defendant county in *Allen* adopted a policy (not a written law, as is the case here), which required money to be taken from the person of any arrestee upon entry to the county jail, up to the maximum amount of $30 to defray the cost of booking. The district court (the case was not appealed) held that the county's policy

failed to comply with the terms of the state statute because the statute dealt with "reimbursement" for charges incurred during incarceration, but the county's policy was to collect the money upfront. *Id.* at 830. The Court reasoned that due process was violated because the money was deducted from cash on hand upon entry into the jail, without regard to whether it actually "reimbursed" the jail for funds spent on the detainee, and without regard for whether the individual is ultimately adjudicated as guilty. *Id.* at 833-834. According to the *Allen* district court, the only time any such fee should be charged is not until *after* a criminal judge has found the individual guilty. *Id.*

The reasoning in *Allen* has been rejected by the majority of Circuits to consider the propriety of similar administrative jail fees. Most notably, *Sickles* and *Slade* concerned a virtually identical administrative fees collected upon entry to the jail facilities, but neither the Fourth nor Sixth Circuits found any constitutional defect. *Sickles*, 501 F.3d at 730-732; *Slade,* 407 F.3d at 253-54. Additionally, the *Allen* court did not engage in a careful balancing of the *Eldridge* factors.

Moreover, the statute at issue in *Allen* is so substantively different than the one in this case that comparison is wholly inapt. The *Allen* statute allowed for a refund of the fee if the detainee was found not guilty. Woodridge's does not. Thus, in *Allen* there was a risk of erroneous deprivation that was not present in this case because it was possible that individuals who would not have to pay the fee were nevertheless charged. Additionally, the statute in *Allen* allowed for further reductions based on financial circumstances but provided no procedures to

21

adjudicate those circumstances. Woodridge's ordinance does not. Finally, the statute in *Allen* required that the jail collect the $30 upfront based on whatever money the individual has on their person at the time of process. In contrast, Woodridge does not even require that the booking fee be paid at the time of arrest. Arrestees have 15 days from the date of arrest to make payment. (R. 192). And while Woodridge provides arrestees with the option to pay at the time of release—it does not require it. (R. 192). Woodridge does not condition release upon payment nor does it not mandate payment upon entry, as was the case in *Allen*.

### 2.  *Roehl* should not be followed.

Although Markadonatos relies on Magistrate Judge Schenkier's decision on a Rule 12(b)(6) motion in *Roehl v. City of Naperville,* 857 F. Supp.2d 707 (N.D. Ill. 2012)—one of several class actions filed by Markadonatos's attorneys at the same time as this case—for the proposition that a person might be charged the fee when he should not have been arrested in the first place, this analysis is flawed.

Magistrate Judge Schenkier cited no authority that allowed the court to consider a risk of error based on substantive terms different than what is contained in the ordinance. In fact, case law shows that courts are prohibited from doing so. *Sickles*, 501 F.3d at 732 (risk of error limited by explicit criteria adopted by government); *Robledo*, 778 F. Supp. 2d at 898 (same).

Similarly, the decision incorrectly conflates two separate decisions—one the decision to arrest with the separate decision to impose the $30 booking fee. It is difficult to imagine a municipality holding an administrative hearing to determine

probable cause to arrest—as such a determination would ordinarily require the arrestee and/or third parties to testify. Similarly, it is difficult to conceive of a situation in which an arrestee would make a statement in light of 5th Amendment considerations. And ultimately, it is not as though a person falsely arrested lacks recourse as they may sue for false arrest to recover the booking fee and much more.

Further, the magistrate judge in *Roehl* placed undue weight on certain factors while minimizing others. For example, as to the private interest affected, *Roehl* did "not quarrel with the proposition that imposition of a $50.00 fee is a far more minor deprivation than the deprivation of benefits at issue in *Mathews* [*v. Eldridge*].... But, the arguably small degree of deprivation involved in irretrievably losing $50.00 does not end the analysis." *Roehl,* 857 F. Supp.2d at 713. *Roehl*'s logic is circular, and does not change the reality that the $30 at stake here is a small sum. Moreover, *Roehl* breaks with other courts, in addition to this Court. *Sickles*, 501 F.3d at 730; *Slade*, 407 F.3d at 251-53. *Roehl* disregards this case law in downplaying the first factor of *Eldridge*, undermining its analysis.

*Roehl* further determined the government's interest in charging the $50 booking fee was not strong because "Naperville collected $71,605.00 in administrative booking fees, compared to the $5,952,921.00 the City of Naperville allocated to the Patrol and Support services of the police department...." *Id.* at 713-14. "We cannot say as a matter of law that defendant has a strong interest in imposing a fee that plainly recoups only a very small portion of the funding that Naperville allocated for Support and Patrol Services." *Id. Roehl* cited no authority

supporting its analysis that a fee must comprise a certain percentage of a budget to be considered legitimate. Moreover, the income, however paltry it may seem to the *Roehl* Court, is important in helping municipalities defray the costs of the criminal justice system, as well as shifting financial accountability to those consuming the resources. *Roehl*'s analysis is flawed because state interests would not be adequately served if a hearing was required. Mandating a hearing would defeat the fee's purpose and, in essence, shift financial accountability from arrested individuals back to the taxpayers. Woodridge would thus face a tighter operating budget and curtailed law enforcement. *Roehl* neglects these realities.

*Roehl* placed significant emphasis on the *Roehl*'s plaintiff being found not guilty. That is not the case here, and to the large extent that this fact colored *Roehl*, it is another reason *Roehl* is of limited utility. This fact carves out much of *Roehl*'s rationale and renders its fixation on those improperly arrested or found not guilty distorting for the case at bar.

## II.   The substantive due process claim was correctly dismissed.

Substantive due process depends on the existence of a fundamental liberty interest. At stake here is $30. The Supreme Court has never held that a property interest so modest is a fundamental right. And charging arrestees a fee to cover the administrative costs involved in booking is rational.

### A.   Markadonatos cannot recast other claims under the rubric of substantive due process.

Markadonatos argues that the absence of sufficient procedural safeguards amounts to a substantive due process violation. (Appellant's Brief at 33-34, 36).

But this effort to recast a procedural due process claim under the generalized notion of substantive due process is improper. If a particular provision of the Bill of Rights provides an explicit textual source of constitutional protection against government behavior, that provision, "not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994); *Gable*, 296 F.3d at 541.

Markadonatos's odd argument blurring the lines between equal protection and substantive due process meets the same fate. (Appellant's Brief at 34-35.) To the extent his argument is designed to backdoor an equal protection claim through the guise of substantive due process, it is improper.

### B.     Because no underlying constitutional violation has been pled, and because state law provides adequate remedies, a substantive due process claim cannot be advanced.

A prerequisite to a substantive due process claim is showing an independent constitutional violation or the inadequacy of state laws to recover his $30. *Gable*, 296 F.3d at 541. Markadonatos makes no argument that he suffered an independent constitutional violation. Nor could he when the sole count of the complaint was for due process. *Gable,* 296 F.3d at 541.

Instead, Markadonatos argues that no state law would allow him to recover the $30 he paid as a booking fee. This is not true. If, as suggested by Markadonatos, he was arrested without probable cause, he can recover the $30 through a suit for false arrest or false imprisonment. Or he could sue for bailment to the extent he

maintains he should have gotten the money back upon being acquitted. *Am. Ambassador Casualty Co. v. City of Chicago*, 563 N.E.2d 882, 884-85 (Ill. App. Ct. 1990); *Gable,* 296 F.3d at 540 (when property wrongly taken or damaged, bailment provides adequate remedy). Similarly, if Markadonatos's claim is that state law is different than Woodridge's ordinance, he can sue for writ of mandamus or conversion. The point is, an arrestee has options to recover the $30.

### C.    Markadonatos cannot carry his heavy substantive due process burden.

While substantive due process protects citizens against government conduct that is arbitrary, only the "most egregious official conduct" can be said to be arbitrary in the constitutional sense. *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998). The scope of substantive due process "is very limited and protects plaintiffs only against arbitrary government action that 'shocks the conscience.'" *Montgomery v. Stefaniak,* 410 F.3d 933, 939 (7th Cir. 2005).

Substantive due process is not a blanket protection against unjustifiable interferences with property. *National Paint & Coatings v. Chicago*, 45 F.3d 1124, 1129 (7th Cir. 1995). Substantive due process depends on the existence of a fundamental liberty interest. *Washington v. Glucksberg*, 521 U.S. 702, 719-22 (1997); *Nat'l Paint & Coatings Ass'n*, 45 F.3d at 1129 ("Only laws that affect 'fundamental rights' come within the purview of this doctrine"). But fundamental liberty interests are virtually limited to "matters relating to marriage, family, procreation, and the right to bodily integrity." *Spiegel v. Rabinovitz,* 121 F.3d 251, 254 (7th Cir. 1997). Markadonatos does not argue any fundamental right is at issue.

Thus, Markadonatos faces the daunting task of demonstrating a violation of the extraordinarily deferential rational basis test. *Lee v. Chicago*, 330 F.3d 456, 467 (7th Cir. 2003).

*Idris v. City of Chicago*, 552 F.3d 564 (7th Cir. 2009) dooms this claim. Chicago installed cameras to take photos of cars that ran red lights; the car's owner was liable for the $90 fine no matter who was driving. *Id.* at 565. Plaintiffs argued that this vicarious liability violated substantive due process. This Court described the argument as "a dud." *Id.* at 566. "No one has a fundamental right to run a red light or avoid being seen by a camera on a public street." *Id.* The court deemed the interest at stake—$90—too "modest" to be a fundamental right. *Id.*

That a municipality's action raises revenue does not condemn it. *Id.* "A system that simultaneously raises money and improves compliance with traffic laws has much to recommend it and cannot be called unconstitutionally whimsical." *Id.*

A booking fee is not a pure money making venture unrelated to any legitimate interest. The ordinance seeks to offset the administrative costs the Village incurs in processing arrested individuals. Such an interest has been upheld as reasonable and substantial for purposes of due process. *See Sickles*, 501 F.3d at 730 (sharing costs of incarceration a substantial interest); *Slade*, 407 F.3d at 253 ("the effective management of the detention facility . . . is a valid objective.").

The objectives of the Woodridge booking fee are thus legitimate, if not compelling. The income is important in helping the Village defray the costs of the processing arrestees who consume resources, as well as shifting financial

accountability to those consuming the resources. A fee requirement is constitutional if rationally related to a legitimate government interest. *See United States v. Kras*, 409 U.S. 434 (1973). Seeking reimbursement for taxpayers for arrest-related costs is a quintessential legitimate government interest. Moreover, if a $90 fine was held inconsequential in *Idris*, a $30 fine can be no cause for concern here. Because Plaintiff cannot overcome *Idris*, dismissal was proper.

Finally, Markadonatos complains that Woodridge's ordinance lacks "statements or findings by Woodridge which would establish the purpose for imposing the various fees." (Appellant's Brief at 36). This argument fails because "governmental action passes the rational basis test *if a sound reason may be hypothesized*. The government need not prove the reason to a court's satisfaction." *Pro-Eco, Inc. v. Bd. of Com'rs of Jay County*, 57 F.3d 505, 514 (7th Cir. 1995) (emphasis). Thus, like equal protection claims, substantive due process does not require legislative findings to be rational. *Heller v. Doe by Doe,* 509 U.S. 312, 320–21 (1993) ("The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record.").

## IV.  Markadonatos's equal protection argument (which was never advanced below) fails.

For the first time in this litigation, Markadonatos claims in his appellate brief that Woodridge's booking fee violates equal protection. He claims that the ordinance discriminates by treating arrestees differently than individuals involved in traffic accidents because both involve administrative resources. (Appellant's Brief

28

at 38). He also claims that it discriminates as between arrestees who have cash on their person (and may pay at upon release) and those who don't have cash and may never pay. (R. 39).

These equal protection theories were neither pled in the complaints, nor argued to the district court judge. Because Markadonatos failed to present it to the district court he has waived it on appeal. *James v. Hyatt Regency Chicago*, 707 F.3d 775, 783 (7th Cir. 2013); *Local 15, Int'l Bhd. of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 783 (7th Cir. 2007) ("A party waives any argument that it does not raise before the district court").

Even if they had been raised, they would have failed. Woodridge's has an ordinance that allows for the collection of unpaid fees. Woodridge Village Code 1-6D-2(H). Nothing even required Markadonatos to pay the fee when he did. It is rational to collect fees when the Village is able. Further, Markadonatos could never prove that arrestees are "similarly situated" to individuals involved in traffic crashes because the two are not "prima facie identical in all relevant respects." *Purze v. Village of Wintrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002). Nor is irrational to charge arrestees, whose processing takes longer, involves more administrative costs, and keeps officers off the streets, differently than individuals in traffic accidents.

**VI.    Markadonatos does not have a stake in asserting inadequate process (and thus lacks standing) because he pled guilty, was found guilty and ordered to pay all fines and fees.**

"[F]ederal courts do not issue advisory opinions on situations that do not affect the litigants." *Idris*, 552 F.3d at 567. Yet, that is precisely what Markadonatos is asking this Court to do. The district court questioned Markadonatos's standing to assert a substantive due process claim in light of the guilty plea. (R. 282-283.) The reality is far more breathtaking—Markadonatos lacks standing to bring the entire case.

Standing requires that a party have an actual injury that is concrete and particularized, and not just a conjectural or hypothetical injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Markadonatos treats the standing issue as though it is solely a class certification issue. It is not. No class was ever certified. The district court never required briefing on the issue. The standing inquiry is more fundamental than the adequacy of class representation—did Markadonatos even suffer an injury? In his brief, Markadonatos underplays the standing analysis. He says he "suffered a monetary injury as a result of Woodridge's policy" because he paid $30. (Appellant's Brief at 31.) But this is not the proper inquiry for a due process claim.

"[T]he test for whether a denial of due process constitutes an injury in fact is similar to that used to determine the sufficiency of a complaint .... That is, *one must ask whether, assuming the truth and validity of all of a plaintiff's factual allegations*

30

*and legal theories, the due process protections would have alleviated any harm.*" *Morgan v. McCotter*, 365 F.3d 882, 889 (10th Cir. 2004) (emphasis).

*Sickles* is directly on point. The plaintiff complained that the county's withholding policy prejudices "those arrested, booked and immediately released because of mistake." *Sickles,* 501 F.3d at 732. But the Sixth Circuit held that "[h]aving already pleaded guilty, and having already been sentenced to '[p]ay the costs of proceeding herein,' [plaintiff] has no stake in this claim—and therefore no standing to bring it." *Sickles*, 501 F.3d at 732.

The same is true here. Markadonatos's beef with Woodridge's ordinance is that it does not allow for those acquitted of their crimes or those unlawfully arrested to seek a refund. He argues that procedures were insufficient to protect the rights of such arrestees.

But by pleading guilty, Markadonatos admitted his guilt, the facts underlying his crime, and probable cause. *Currier*, 914 F.2d 993, 996 (7th Cir. 1990); *Mitchell*, 2007 WL 2700051 (C.D. Ill. Sept. 5, 2007) ("by pleading guilty, she admitted that she had committed the battery; that admission cures any concerns regarding whether the officers had probable cause to arrest"); *Jackson*, 2009 WL 3464138 (sentence of supervision precludes false arrest claim).

After all, when the facts are not in dispute (as they are not here), there is no right to any sort of hearing at all. *Morgan*, 365 F.3d at 889 *citing Rector v. City & County of Denver*, 348 F.3d 935, 942-43 (10th Cir. 2003) (no standing for due process claim when plaintiff admitted to violating the ordinance); *Codd,* 429 U.S. at 627-

628; *Skarzynski*, 794 F. Supp. 2d at 932 ("if there are no factual disputes to resolve then there is no reason to hold a hearing").

Because, under Markadonatos's own due process theory, he would not be entitled to recover the $30, he lacks standing.

## CONCLUSION

For foregoing reasons, this Court should affirm the decision of the district court dismissing the lawsuit.

Respectfully submitted this 5th day of April, 2013

s/ Brandon K. Lemley
Attorney for Defendant-Appellee,
Village of Woodridge

BRANDON K. LEMLEY
QUERREY & HARROW, LTD.
175 West Jackson Boulevard, Suite 1600
Chicago, IL 60604-2827
(312) 540-7000

## CERTIFICATE OF SERVICE

Pursuant to Circuit Rule 25(a), the undersigned hereby certifies that he served Defendants-Appellees' brief to the following counsel of record via the Seventh Circuit's Electronic Case Filing system on April 5, 2012 and that two printed copies will be served upon acceptance of the brief by the Court Clerk.

DiTommaso & Lubin, P.C.          Schad, Diamond & Shedden, P.C.
Vincent DiTommaso               James Shedden
Peter Lubin                     Tony Kim
John Auchter                    Matthew Burns
17 W 220 22nd Street, Ste. 410  382 S. Michigan, Ste. 1000
Oak Brook Terrace, IL 60181

s/ Brandon K. Lemley
Brandon K. Lemley
Attorney for Defendant-Appellee

## CIRCUIT RULE 31(e) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 31(e), digital versions of the brief and all of the appendix items that are available in non-scanned PDF format.

s/ Brandon K. Lemley
Brandon K. Lemley
Attorney for Defendant-Appellee

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

The undersigned, counsel for Defendants-Appellees furnishes the following in compliance with F.R.A.P. Rule 32(a)(5) and (a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(7) for a brief produced with the proportionally spaced font, "Century Schoolbook." The length of this brief is 9,547 words according to the Microsoft Word 2010's word-count function, from cover to cover, including tables, certificates and footnotes, but excluding Circuit Rule 26.1 disclosure statements and appellee's appendix.

I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(5) and Circuit Rule 32(b), as the brief is prepared with the 12-point proportionally spaced font, "Century Schoolbook," which includes serifs.

/s Brandon K. Lemley
BRANDON K. LEMLEY
Attorney for Defendant-Appellee

Dated:  April 5, 2013

34

**APPELLEE'S SUPPLEMENTAL APPENDIX**
**TABLE OF CONTENTS**

Certified Copy of Criminal Sentence Order in *People v. Jerry Markadonatos,*
    2011CM000146-0001 (Ill. 18th Judicial Circuit April 20, 2011)............B-1–B-2

222
4510
4100
4900
4772
4757
2700
2772

CRIMINAL SENTENCING ORDER                    **SEE BACK**                         2011CM000146-48

| STATE OF ILLINOIS | UNITED STATES OF AMERICA |
| | IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT |

PEOPLE OF THE STATE OF ILLINOIS

                                              2011CM000146-0001
                                              **CASE NUMBER**

                    VS.

                                              _____
                                              DCN NUMBER

JERRY G MARKADONATOS
                DEFENDANT                     ☐ Resentence

                                   **CRIMINAL SENTENCE ORDER**

                                                              File Stamp Here

Plea of GUILTY      on 04/20/2011
Finding of GUILTY
Sentence is AGREED                    on 04/20/2011   by COURT

The Court hereby orders that the Defendant is sentenced as follows on the charge of
RETAIL THEFT - POSSESS DISPLAYED MERCHANDISE - NOT EXCEEDING $300
In violation of 720 ILCS 5/16A-3(A)                    a Class A  MISDEMEANOR

Defendant is sentenced to Court Supervision - appearance required for a term of
12month(s). During that time the defendant shall:
1. Not violate any criminal statute of any jurisdiction.
2. Immediately inform the Court of any arrest.
3. Appear before the Court in person as directed by the Court.
4. Notify the Circuit Court Clerk of any address change within 7 days.
5. Refrain from using any illicit drug.
6. Make a final report to court on 04/19/2012 at 08:30 AM in courtroom 4003.
7. Pay $500.00 to the Anti-Crime Commission.
8. Refrain from entering into the designated geographical area : ANY TARGET LOCATION
Evidence shall be DISPOSED AFTER 45 DAYS UNLESS FURTHER COURT FILINGS.

9. Pay $785.00.
        COURT AUTOMATION FEE $15.00 (705 ILCS 105/27.3, County Code 9-30).
        STATE POLICE FEE $15.00.
        DOCUMENT STORAGE FEE $15.00 (705 ILCS 105/27.3(c), County Code 9-10).
        CLERKS FEES $75.00 (705 ILCS 105/27.2(w)).
        DRUG COURT-MENTAL HEALTH COURT FUND $10.00 (55 ILCS 5/5-1101, County Codes
            9-21 and 9-25).
        STATES ATTORNEY FEES $10.00 (55 ILCS 5/4-2002, 625 ILCS 5/16-105).
        COURT FUND FEE $25.00 (55 ILCS 5/5-1101, County Codes 9-21 and 9-25).
        VIOLENT CRIME VICTIMS ASSISTANCE FUND $20.00 (725 ILCS 240/10).
        COURT SECURITY FEE $25.00 (55 ILCS 5/3-6023, 55 ILCS 5/5-1103, County Code

**CHRIS KACHIROUBAS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT ©**
**WHEATON, ILLINOIS 60187-0707**                          **SEE BACK**

# APPELLEE'S APPENDIX B-1

CRIMINAL SENTENCING ORDER  2011CM000146-0001

2011CM000146-48

20-30, OJPS-001B-89).
COUNTY JAIL MEDICAL COSTS FUND FEE $10.00 (730 ILCS 125/17).
CHILD ADVOCACY CENTER FEE $30.00 (55 ILCS 5/5-110(f-5)).
ANTI-CRIME PROGRAM REIMBURSEMENT $500.00 (730 ILCS 5/5-6-3(b)(12) & (13), 730
    ILCS 5/5-6-3.1(c)(12) & (13)).
EXPUNGEMENT FINE $30.00 (730 ILCS 5/5-9-1.17).
E-CITATION FEE $5.00 (625 ILCS 5/16-104c(a)).
This includes all fines, fees, costs, penalties and assessments.
10. Pay all fines, costs, fees and assessments on or before the final report date.

**CERTIFICATION**

I, Chris Kachiroubas, Clerk of the 18th Judicial Circuit Court Clerk, Dupage
County, Illinois, do hereby certify this to be a true and correct
copy as it appears from the records and files in my office.
IN WITNESS WHEREOF, I have hereunto set my hand and
caused to be affixed the Seal of the said Court.

DATE  OCT 26 2011

CHRIS KACHIROUBAS, Clerk

By _Suzanne Carrle_
        Deputy Clerk

301

State's Attorney:  CHRISTOPHER ZARUBA

Defense Attorney:  SEAN M LAZZARI

JUDGE BRIAN J DIAMOND

04/20/2011
Date

CHRIS KACHIROUBAS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT ©
WHEATON, ILLINOIS 60187-0707

**APPELLEE'S APPENDIX B-2**