No. 12-2619

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

JERRY G. MARKADONATOS, on behalf of
himself and all others similarly situated,

*Plaintiff-Appellant*,

v.

VILLAGE OF WOODRIDGE,

*Defendant-Appellee.*

---

Appeal from the United States District Court
For the Northern District of Illinois, Eastern Division

Case No.    11-cv-07006

The Honorable Judge James F. Holderman

---

REPLY BRIEF OF
PLAINTIFF-APPELLANT, JERRY G. MARKADONATOS

---

DiTOMMASO ♦ LUBIN, P.C.           Schad, Diamond & Shedden, PC
Vincent L. DiTommaso             James Shedden
Peter S. Lubin                   Tony Kim
John Auchter                     Matthew Burns
17 W 220 22nd Street – Suite 410 332 South Michigan Ave., Suite 1000
Oakbrook Terrace, IL 60181       Chicago, IL  60604
(630) 333-0000                   (312) 939-6280

*Attorneys for Plaintiff-Appellant, Jerry G. Markadonatos, on behalf of himself and
all others similarly situated.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT ....................................................................................................... 1

I.  Mr. Markadonatos Has Standing To Challenge Woodridge's Booking
    Fee Provision Because Woodridge Injured Him When It Deprived Him
    Of His $30 Without Providing Any Kind Of Hearing Or Opportunity To
    Contest The Deprivation ................................................................................. 2

II. Mr. Markadonatos Pled Sufficient Facts In His Complaint To State A
    Claim For Woodridge's Denial Of Procedural Due Process ............................. 4

    A.  Woodridge's Booking Fee is an involuntary fee which deprived
        Mr. Markadonatos of his interest in his $30. ..................................... 5

    B.  Mr. Markadonatos's interest in his $30 under the first *Mathews*
        factor is relatively small .................................................................... 6

    C.  Woodridge's Booking Fee provision has a significant risk of
        erroneous deprivation under the second *Mathews* factor. ................ 7

    D.  Woodridge's Booking Fee provision has a significant risk of
        erroneous deprivation under the second *Mathews* factor, so
        there is great value in requiring Woodridge to provide additional
        procedural safeguards which would eliminate almost all risk of
        erroneous deprivation. ....................................................................... 9

    E.  The fiscal and administrative burdens on Woodridge under the
        third *Mathews* factor are relatively minor and do not outweigh
        the value additional procedures provide because of the risk of
        erroneous deprivation under the Booking Fee provision. ................ 13

    F.  Mr. Markadonatos is not able to pursue any post-deprivation
        remedies which could provide him with completely adequate
        relief. ................................................................................................ 15

    G.  This Court should adopt the reasoning of the district courts in
        *Allen v. Leis* and *Roehl v. Naperville.* ........................................... 16

III. Mr. Markadonatos Pled Sufficient Facts In His Complaint To State A
     Claim For Woodridge's Denial Of Substantive Due Process. ......................... 19

    A.  Mr. Markadonatos has no state law remedies available to him. ............. 20

    B.  Woodridge's Booking Fee provision is not rationally related to a
        legitimate government interest. ....................................................... 20

IV. Mr. Markadonatos alleged in his Complaint that Woodridge's Booking
    Fee provision violates equal protection and is facially unconstitutional

because it invidiously discriminates between arrestees and because it
irrationally imposes administrative costs related to law enforcement
work on some groups but not others. .............................................................. 22

**CONCLUSION** ................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Allen v. Leis*, 154 F. Supp. 2d 1240 (S.D. Ohio 2001)..........................................23

*Allen v. Leis*, 213 F. Supp. 2d 819 (S.D. Ohio 2002) ........................................... 14, 16

*Allison v. City of Bridgeport*, 2006 WL 1599811 (S.D. Ill. June 8, 2006) ................. 11

*Am. Ambassador Casualty Co. v. City of Chicago*, 205 Ill. App. 3d 879, 563 N.E.2d 882 (Ill. App. Ct. 1990) ......................................................................... 20

*Bailey v. Cater*, 15 F. App'x 245. 251 (6th Cir. 2001) (unpublished) .......................... 5

*Blum v. Yaretsky*, 457 U.S. 991 (1982) .......................................................................... 2

*Broussard v. Parish of Orleans,* 318 F.3d 644 (5th Cir. 2003) .................................... 6

*Browder v. Ankrom*, 2005 WL 1026045 (W.D. Ky. April 25, 2005) ............................. 5

*Buttitta v. City of Chicago*, 9 F.3d 1198 (7th Cir. 1993) ............................................. 4

*Carey v. Piphus*, 435 U.S. 247 (1978) ............................................................... 1, 4, 19

*Cf. Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) ......................................................... 22

*Dixon v. Love*, 431 U.S. 105 (1977) ....................................................................... 11, 12

*Freeman v. Hayek*, 635 F. Supp. 178 (D. Minn. 1986) .......................................... 12, 13

*Idris v. City of Chicago*, 552 F.3d 564 (7th Cir. 2009)............................................21

*James v. Hyatt Regency Chicago*, 707 F.3d 775 (7th Cir. 2013).............................. 10

*Jensen v. Klecker*, 548 F.2d 1179 (8th Cir. 1982) ...................................................... 5

*Johnson v. City of Evanston*, 250 F.3d 560 (7th Cir. 2001) ............................. 1, 11, 17

*Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003)................................................. 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................... 2, 3, 4

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ............................................................. 4, 7

*Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1 (1978) ................. 12, 13

*Parratt v. Taylor*, 451 U.S. 527 (1981)....................................................................... 16

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) ............................................. 4

*Rector v. City and County of Denver*, 348 F.3d 935 (10th Cir. 2003) .......................... 3

*Roehl v. City of Naperville*, 857 F. Supp. 2d 707 (N.D. Ill. 2012).................... 8, 18, 19

*Sickles v. Campbell County*, 501 F.3d 726 (6th Cir. 2007) .................................. 5, 17

*Stypmann v. City and Co. of San Francisco*, 557 F.2d 1338 (9th Cir. 1977)..... *passim*

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008) .......................................... 2, 11

*Toney-El v. Franzen*, 777 F.2d 1224 (7th Cir. 1985) ................................................ 11

*U.S. v. Sperry Corp.*, 493 U.S. 52 (1989)................................................................ 5

*Wayt v. Town of Crothersville*, 866 F. Supp. 2d 1008 (S.D. Ind. 2012).............. 12, 13

*Zinermon v. Burch*, 494 U.S. 113 (1990)................................................................ 16

# ARGUMENT

The Supreme Court has long held that due process rights are "absolute" and that plaintiffs are entitled to recover for violations of their due process rights regardless of whether the government's deprivation of their protected interests would nonetheless be justified even if the government had provided constitutionally sufficient process. *See e.g. Carey v. Piphus*, 435 U.S. 247, 266 (1978). Woodridge attempts to excuse its continued violation of arrestees' due process rights by stating that Mr. Markadonatos would not have a claim to his $30 even if its procedures were different. That is not at issue in this case. What is at issue is Woodridge's complete denial of due process to Mr. Markadonatos and other arrestees from whom it took money.

Mr. Markadonatos has alleged since the inception of this case that Woodridge is not entitled to his $30 because Woodridge does not provide *any* opportunity for Mr. Markadonatos, or any other arrestee, to challenge the taking of their money. Woodridge's admission that Mr. Markadonatos and other arrestees have no remedy "just makes [Mr. Markadonatos's] constitutional point." *See Johnson v. City of Evanston*, 250 F.3d 560, 563 (7th Cir. 2001). This case therefore presents concrete issues and is not "pure academic abstraction" as Woodridge claims. Doc. 30 at 4.

This appeal challenges the district court's improper grant of a Rule 12(b)(6) motion dismissing Mr. Markadonatos's procedural and substantive due process claims. The district court improperly dismissed Mr. Markadonatos's First Amended Complaint ("Complaint") by resorting to hypothetical facts which were not pled in

the Complaint, *see* R. 279-281, and disregarding other facts which it was required to accept as true. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The district court did so to support its flawed procedural due process and standing analysis.

The standard required to successfully state a claim is comparatively low. *See Tamayo*, 526 F.3d at 1081. A plaintiff need not prove his claim in his complaint; he merely must state a plausible claim for relief. *Id.* Mr. Markadonatos has done so. *See id.* Mr. Markadonatos has also alleged that he has standing to bring these claims, despite Woodridge's claims to the contrary. *See Lujan v. Defenders of Wild-life*, 504 U.S. 555, 573 n. 7 (1992). Because Mr. Markadonatos has pled sufficient allegations to state his claims, this Court should reverse the district court's order dismissing Mr. Markadonatos's Complaint and reassign this case pursuant to Circuit Rule 36 for further proceedings.

I.    Mr. Markadonatos Has Standing To Challenge Woodridge's Booking Fee Provision Because Woodridge Injured Him When It Deprived Him Of His $30 Without Providing Any Kind Of Hearing Or Opportunity To Contest The Deprivation.

To establish standing, Mr. Markadonatos must show that he suffered an "injury in fact" which is "fairly trace[able] to the challenged action of [Woodridge]" and it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Lujan*, 504 U.S. at 560-61. Mr. Markadonatos must establish individual standing to bring a claim and cannot complain that other class members or unknown persons may have been injured by Woodridge's actions. *See Blum v. Yaretsky*, 457 U.S. 991, 999-1000 (1982).

Standing for due process claims is premised on a unique kind of "injury" – that a plaintiff was unable to contest the deprivation of a protected interest. *See Lujan*, 504 U.S. at 573. To show this injury, a plaintiff need not establish that he would be successful in defending his interest, even if appropriate procedures were provided. *See Rector v. City and County of Denver*, 348 F.3d 935, 943 (10th Cir. 2003) ("When asserting procedural rights, Article II standing does not require plaintiffs to demonstrate that they would obtain concrete relief from the desired process"). However, a plaintiff cannot establish standing for a due process claim if he has no concrete interest affected by the denial of due process. *See Lujan*, 504 U.S. at 573 n. 7.

Woodridge's argument regarding Mr. Markadonatos's standing conflates the concept of admitting the facts underlying a criminal charge with the concept of admitting that an administrative fee related to an arrest should be charged. Contrary to Woodridge's insinuations, Mr. Markadonatos has complained about his inability to contest the fee since the inception of this claim. Mr. Markadonatos's criminal plea is therefore a red herring because it has nothing to do with his claim that Woodridge injured him when it prevented him from being able to contest an administrative arrest fee unrelated to whether he was guilty or not.

Woodridge's standing argument also misses the mark because Mr. Markadonatos has not limited his claims solely to persons who were acquitted of their crimes or unlawfully arrested, but also claims relief for all persons, like him, who were unable to contest the fee. It does not matter if Mr. Markadonatos would ulti-

mately be unsuccessful in mounting such a claim, what matters is that he was denied *any* opportunity to do so. *See Carey*, 435 U.S. at 261 n. 16; *Lujan*, 504 U.S. at 573 n. 7. Mr. Markadonatos has also alleged that a concrete interest – his $30 – was affected by Woodridge's denial of due process.

It is clear that Mr. Markadonatos suffered an injury sufficient to satisfy standing because he contests whether Woodridge could deprive him of his $30 and claims that he was not provided with any procedures to lodge objections to Woodridge's deprivation. *See id.*. This Court should therefore find that Mr. Markadonatos has established standing to bring his due process claims because he was injured when Woodridge deprived him of any means to contest the imposition of an administrative arrest fee unrelated to guilt or innocence, and because it is likely that a favorable decision in this Court would provide Mr. Markadonatos with some kind of due process – which is among the relief he requested. *See Lujan*, 504 U.S. at 573 n. 7; *see also Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002).

II.     Mr. Markadonatos Pled Sufficient Facts In His Complaint To State A Claim For Woodridge's Denial Of Procedural Due Process.

To state a claim for a denial of procedural due process, Mr. Markadonatos must first allege that Woodridge interfered with a protected property interest. *See Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993). Following this threshold inquiry, Mr. Markadonatos must then show that the procedures Woodridge provided to him were not constitutionally sufficient. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). To determine whether Woodridge's procedures were constitutional-

4

ly sufficient, this Court should weigh the three factors established by the Supreme Court in *Mathews*, keeping in mind that the Supreme Court "consistently has held that *some form of hearing is required* before an individual is finally deprived of a property interest." *Id.* (emphasis added).

> A.    Woodridge's Booking Fee is an involuntary fee which deprived Mr. Markadonatos of his interest in his $30.

Woodridge fronts its procedural due process argument by claiming that the $30 which it deprives from all arrestees is a "user fee" that is not a deprivation of a protected property interest. Doc. 30 at 7-8. Courts have consistently held that an *in*voluntary fee, like Woodridge's $30 fee, works a deprivation of a protected property interest and subjects the deprivation to a *Mathews* analysis. *See e.g. Sickles v. Campbell County*, 501 F.3d 726, 730 (6th Cir. 2007). Woodridge relies on several cases for its argument and is conveniently ambiguous about the facts present in those cases. If Woodridge had provided a detailed analysis of the case law it cites, it would be clear that its argument is without merit.

In the cases cited by Woodridge, the plaintiffs were contesting fees the government had charged for the plaintiffs' use of services which the government provided for the plaintiffs' benefit. *See Bailey v. Cater*, 15 F. App'x 245. 251 (6th Cir. 2001) (unpublished) ($3 deduction from inmate account for medical services rendered to plaintiff); *Browder v. Ankrom*, 2005 WL 1026045 at **5-6 (W.D. Ky. April 25, 2005) (deduction from inmate account for medication and room and board); *Jensen v. Klecker*, 548 F.2d 1179, 1183 (8th Cir. 1982) (deduction from inmate account for postage); *U.S. v. Sperry Corp.*, 493 U.S. 52, 63 (1989) (company required to pay

2% fee to Treasury for any award it received from Iran-United States Claims Tribunal). This case is plainly distinguishable from the case law incorrectly relied upon by Woodridge because of: (1) the involuntary nature of the fee; and (2) the lack of benefit obtained by Mr. Markadonatos from Woodridge in exchange for his $30. This Court should therefore conclude, just as the district court did, *see* R. 158-59, that Woodridge's Booking Fee provision deprives arrestees of the property interest in their money.

B.    Mr. Markadonatos's interest in his $30 under the first *Mathews* factor is relatively small.

Mr. Markadonatos will not restate his argument on the private interest at stake in this case. *See* Doc. 22 at 25. Mr. Markadonatos would like to point out that Woodridge's citation to *Broussard v. Parish of Orleans* is an incomplete quote which fails to include the entirety of the Fifth Circuit's holding. *See Broussard v. Parish of Orleans,* 318 F.3d 644, 657 (5th Cir. 2003). The Fifth Circuit did not hold that the private interest was so small that the risk of error was not constitutionally significant, but that the *Mathews* factors, considered together, weighed in favor of the government because there were adequate refund procedures and the government's interest outweighed the private interest. *Id.* at 656-57. As *Broussard* and other cases found, a small private interest only affects the *Mathews* analysis when a plaintiff is demanding additional pre-deprivation procedures. *See e.g. id.* Given that Mr. Markadonatos's Complaint alleges that Woodridge provides no pre- or post-deprivation procedures, *Broussard* does not affect the analysis because Mr. Marka-

6

donatos is not demanding additional pre-deprivation procedures; he is only demanding that Woodridge provide "some form of hearing." *See Mathews*, 424 U.S. at 334.

> C.    Woodridge's Booking Fee provision has a significant risk of erroneous deprivation under the second *Mathews* factor.

In its discussion of the risk of an erroneous deprivation under the Booking Fee provision, Woodridge claims that Mr. Markadonatos is attempting to rewrite the substantive criteria of its ordinance. *See* Doc. 30 at 12. Woodridge's Booking Fee provision reads: "Booking fee: When posting bail or bond on any legal process, civil or criminal, or any custodial arrest including warrant – $30." As Woodridge notes, it cannot impose the fee without a custodial arrest, Doc. 30 at 11, so it necessarily follows that the underlying arrest is a pre-determination procedure under the Booking Fee Ordinance. Woodridge's legal argument, however, rejects this reality and seems to rely on the notion that arrestees exist in a procedural vacuum where the decision to arrest and the decision to impose the $30 fee are completely unrelated. Although common sense alone disproves such a notion, there is also case law directly on point which refutes Woodridge's position. *See Stypmann v. City and Co. of San Francisco*, 557 F.2d 1338, 1343 (9th Cir. 1977). Woodridge made no attempt to distinguish *Stypmann* in its argument, even though it featured prominently in Mr. Markadonatos's principal brief. *See* Doc. 22 at 12-15. This is unsurprising, given that *Stypmann* undercuts Woodridge's position.

When a property deprivation is predicated on a law enforcement officer's determination that an individual violated a separate statute, that is one of the pre-

determination procedures attendant upon the deprivation. *See Stypmann*, 557 F.2d at 1343 (holding that risk of erroneous deprivation of plaintiffs' property arose from both law enforcement officer's authorization to tow vehicle under California Vehicle Code section 22850 and private garage's assessment of storage charges under section 22851). Using these guidelines, it is clear that the pre-determination procedures attendant upon Woodridge's deprivation of arrestees' $30 under the Booking Fee provision are two-fold: (1) the decision to arrest an individual; and (2) the imposition of the fee on any individual who has been arrested. Any risk of erroneous deprivation, and the value of additional procedures, must therefore be analyzed in light of these two pre-determination procedures.

As Woodridge argues, the second procedure is binary because it requires that Woodridge employees determine whether someone is an arrestee. Doc. 30 at 12. Although this procedure has a low risk of error, the low risk does nothing to diminish "100 percent chance" that Woodridge could erroneously deprive someone of their $30 because there are no procedural safeguards under the Booking Fee Provision to contest the fee. *See Roehl v. City of Naperville*, 857 F. Supp. 2d 707, 716 (N.D. Ill. 2012). Such a risk is untenable in the due process analysis, so even if the risk analysis ended here, there would still be value in additional procedures which could reduce the "100 percent" risk of erroneous deprivation under the second pre-determination procedure. *See id.* Such procedures need not be extensive or highly formalized, despite Woodridge claiming otherwise in its argument under the third *Mathews* factor. *See* Doc. 30 at 14-16.

8

Continuing the risk analysis, it is clear that the first pre-determination pro-
cedure relies on a complicated calculus and is not subject to a nonexistent risk of er-
ror. *See Stypmann*, 557 F.2d at 1343 ("[a] police officer must authorize the tow, but
he also 'gathers the facts upon which the charge of ineligibility rests,' and his judg-
ment cannot be wholly neutral"). Given the factors to be considered in the decision
to arrest, it is clear that many types of individuals might be wrongfully deprived of
their $30 using Woodridge's existing pre-determination procedures. These individu-
als can include someone who was arrested on a recalled warrant, someone who
matched the description of a suspect and was incorrectly arrested, or someone who
was arrested without probable cause. These individuals would also have no means
to contest Woodridge's deprivation of their $30.

Given the combined risks of error, this Court should examine the value of ad-
ditional, constitutionally sufficient post-deprivation procedures. As discussed below,
there is great value in additional procedural safeguards. The second *Mathews* factor
therefore weighs in Mr. Markadonatos's favor because of Woodridge's failure to im-
plement any safeguards to guard against the risk of wrongful deprivation.

> D.    Woodridge's Booking Fee provision has a significant risk
>       of erroneous deprivation under the second *Mathews* fac-
>       tor, so there is great value in requiring Woodridge to pro-
>       vide additional procedural safeguards which would elimi-
>       nate almost all risk of erroneous deprivation.

In its discussion of whether there is any value in additional procedural safe-
guards, Woodridge improperly contradicts the allegations of Mr. Markadonatos's
Complaint and Woodridge's prior pleadings. Doc. 30 at 16-18. Woodridge admitted

that it did not provide Mr. Markadonatos with any kind of hearing. *See* R. 83 ("State interests would not be adequately served if a hearing was required. Mandating a hearing would defeat the fee's purpose"); R. 260 ("'[t]he policy does not provide for *any hearing or any other opportunity* for the arrestee to contest the seizure and conversion of his or her money. No such hearing is provided before the deprivation. No hearing is provided after the deprivation . . . *These are hardly new facts*") (emphasis added). Not only is Woodridge attempting to refute the well-pled allegations of Mr. Markadonatos's Complaint, which it cannot do in a Rule 12(b)(6) motion to dismiss, it is now raising a theory which it conceded in the district court below. This is improper and Woodridge has waived this argument on appeal. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 783 (7th Cir. 2013).

In its argument under the second *Mathews* factor, Woodridge initially claims that there is no risk of error, but then appears to concede that there is some risk of error. *See* Doc. 30 at 10, 16-17. It is this concession which requires it to latch onto the "process" found by the district court below. Contrary to Woodridge's claim, however, there is no precedent which holds that this kind of informal "process," standing alone, is constitutionally sufficient.

The procedure found by the district court through its judicial "common sense," and now championed by Woodridge, is not constitutionally sufficient. Nowhere is this "procedure" found in the well-pled allegations of Mr. Markadonatos's Complaint. Given that this Court must accept those allegations as true, it must analyze the Booking Fee provision as though there is no means for arrestees to contest

the deprivation of their $30. *See* R. 180 ("[t]he policy *does not provide for any hearing or any other opportunity* for the arrestee to contest the seizure and conversion of his or her money. No such hearing is provided before the deprivation. No hearing is provided after the deprivation") (emphasis added).

When the government does not provide any means to contest a deprivation, the government's procedure violates due process. *See Stypmann*, 557 F.2d at 1344; *Johnson*, 250 F.3d at 563; *Allison v. City of Bridgeport*, 2006 WL 1599811 at *4 (S.D. Ill. June 8, 2006). Given Woodridge's choice to not respond to this argument[1], it has conceded it. *See* Doc. 22 at 12-15.

Woodridge also misstates the holdings in the case law it cites by claiming that informal process is constitutionally sufficient. *See Toney-El v. Franzen*, 777 F.2d 1224, 1228-29 (7th Cir. 1985); *Dixon v. Love*, 431 U.S. 105, 113 (1977). In *Toney-El*, the plaintiff was provided with various official procedures, including the ability to file a motion in state court seeking credit for time served and the ability to seek a writ of habeas corpus. 777 F.2d at 1228-29. The Seventh Circuit determined that such procedures were sufficient to satisfy procedural due process in conjunction with the plaintiff's informal correspondence to the department of corrections. *Id.* at 1229. In *Dixon*, the plaintiff "had the full opportunity for [several] judicial hearings"

---

[1]     Woodridge's only response to this argument is to claim that the allegations of Mr. Markadonatos's Complaint are not true. *See* Doc. 30 at 16 ("Markadonatos fronts his brief by claiming that Woodridge never provides any process at all under any circumstance. That is not true"). Woodridge cannot do this in a Rule 12(b)(6) Motion to Dismiss, because it must accept all well-pled allegations of Mr. Markadonatos's Complaint as true. *See Tamayo*, 526 F.3d at 1081. Additionally, all inferences are resolved in Mr. Markadonatos's favor, so even if the allegations of his Complaint were vague, Woodridge still cannot construe them in its favor. *See id.*

prior to being deprived of his driver's license. 431 U.S. at 113. The Supreme Court determined that such procedures, in addition to the ability to send written objection to the Secretary of State, satisfied procedural due process. *Id.* Both cases are clearly inapposite and cannot be applied to the case at hand.

Contrary to Woodridge's claim, there is substantial case law authority holding that the type of informal "process" found by the district court, standing alone, is constitutionally insufficient. *See Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 16 (1978) (holding that utility's informal procedures violated due process where utility did not advise plaintiff of the availability of a procedure for protesting the proposed termination of utility service); *Wayt v. Town of Crothersville*, 866 F. Supp. 2d 1008, 1022 (S.D. Ind. 2012) (holding that utility's informal procedures violated due process where customer was only permitted to place a phone call to utility employee who then had discretion over choice to allow customer's dispute to be placed on the agenda at town council meetings and where town's attorney had ultimate discretion over whether to hear customer's complaint); *Freeman v. Hayek*, 635 F. Supp. 178, 183 (D. Minn. 1986) (holding that utility's informal procedures violated due process where utility did not accept written objections and where customer could only complain to various individual with wide discretion over choice to terminate utility service).

Even if this Court were to consider the "process" relied upon by Woodridge in its *Mathews* analysis, it is clear that such "process" is constitutionally inadequate. This "process" does not inform arrestees that they are able to contest the depriva-

tion of their $30. *See* R. 280-81. This "process" also does not inform arrestees to whom they are able to address any arguments in defense of their $30. *See id.* Finally, this "process" apparently provides unlimited discretion to a sole Woodridge employee in determining whether or not to impose the $30 fee based on an arrestee's oral objection. *See id.* This Court should follow established precedent and find such informal processes to violate due process. *See Memphis Light*, 436 U.S. at 16; *Wayt*, 866 F. Supp. 2d at 1022; *Freeman*, 635 F. Supp. at 183. This Court should therefore hold that the second *Mathews* factor weighs in Mr. Markadonatos's favor and requires Woodridge to provide additional procedures which would allow arrestees to contest the deprivation of their $30.

> E.    The fiscal and administrative burdens on Woodridge under the third *Mathews* factor are relatively minor and do not outweigh the value additional procedures provide because of the risk of erroneous deprivation under the Booking Fee provision.

In its discussion of the final *Mathews* factor, Woodridge attempts to show that Mr. Markadonatos position is absurd. Doc. 30 at 14-16. Woodridge misstates Mr. Markadonatos's argument; nowhere in his discussion on the final *Mathews* factor did Mr. Markadonatos demand a "full adversarial hearin[g]" prior to Woodridge's deprivation of arrestees $30. Doc. 30 at 15; *see* Doc. 22 at 24-26. Mr. Markadonatos simply stated that Woodridge "must provide additional procedures" to satisfy due process, and that Woodridge could do so for little cost. Doc. 22 at 25-26. This Court should therefore not be distracted by Woodridge's misstatement of

Mr. Markadonatos's argument and look to the actual fiscal and administrative burdens that could face Woodridge.

Mr. Markadonatos's principal brief cited cases similar to this case where a municipality voluntarily added additional procedures and where the court suggested additional procedures which would require no added cost. *See Roehl*, 857 F. Supp. 2d at 710; *Allen v. Leis*, 213 F. Supp. 2d at 833 (S.D. Ohio 2002). The defendant municipality in *Roehl*, Naperville, altered its procedures, *without any increase in the fee charged*, to include several post-deprivation procedures. 857 F. Supp. 2d at 710. Naperville's new procedures include an informal hearing before the chief of police and the ability to appeal to a more formal administrative hearing. *Id.* Naperville's choice to add additional procedures without increasing the amount of the fee it charges show that a municipality will not "spend itself into a financial black hole" just to obtain a fee related to processing arrestees. *Compare id. with* Doc. 30 at 15.

Even if Woodridge were correct that its fee would not offset the cost increase of providing an informal hearing before its chief of police and the ability to appeal to a more formal administrative hearing, this does not excuse Woodridge's violation of due process. It bears repeating that Woodridge currently provides no hearing *or any other opportunity* for arrestees to contest the deprivation of their $30. R. 180.

Woodridge cannot create its own constitutional dilemma and then claim its hands are tied, when it is clear that other municipalities faced with the same problem responded by adding additional procedures with no other increase in the amount they charged. *See Roehl*, 857 F. Supp. 2d at 710. This Court should there-

14

fore reject Woodridge's unfounded assertion that it would be (1) forced to spend more than it could take in from fees; or (2) unable to raise the amount of its fees to offset any increase in costs. This Court should also find that Woodridge's interest is not great enough to prevent it from providing even minimal post-deprivation procedures which would reduce the risk of erroneous deprivation under the Booking Fee provision.

    F. Mr. Markadonatos is not able to pursue any post-deprivation remedies which could provide him with completely adequate relief.

    Woodridge begins its discussion of post-deprivation procedures afforded to Mr. Markadonatos by claiming that he had the opportunity to contest the $30 fee before Judge Diamond in the Circuit Court of DuPage County. Doc. 30 at 18. Woodridge then claims that Judge Diamond's sentencing order required Mr. Markadonatos to pay all fees, and that this order apparently was not limited to those fees spelled out in the sentencing order. *Id.* However, paragraph 9 of Judge Diamond's order plainly does not include the $30 fee when it refers to "all fines, fees, costs, penalties and assessments."[2] *See* Appellee's Appx B-1, B-2. Additionally, Woodridge has consistently argued that the $30 fee is non-punitive and as an ad-

---

[2] In Judge Diamond's order, there is a total of $785 for "all fines, fees, costs, penalties and assessments." *See* Appellee's Appx B-1, B-2. Simple math shows that the individual amounts properly add up to the total which Judge Diamond ordered Mr. Markadonatos to pay ($15 + $15 + $15 + $75 + $10 + $10 + $25 + $20 + $25 + $10 + $30 + $500 + $30 + $5 = $785). Judge Diamond's order does not list the $30 Woodridge charged Mr. Markadonatos pursuant to its Booking Fee provision. Woodridge's argument on this point is rather confusing given Woodridge's repeated claims that the $30 is charged regardless of whether an arrestee is subsequently found guilty. Indeed, Judge Diamond only imposed fees in his sentencing order pursuant to Illinois's and DuPage County's Code. *See id.*

ministrative arrest fee is completely unrelated to guilt or innocence. *See e.g.* Doc. 30 at 11. Woodridge's claim that the fee could be contested is contrary to the record and improperly seeks to contradicts the allegations of Mr. Markadonatos's Complaint – that he was not provided with *any* opportunity to contest the fee. *See* R. 180.

Woodridge continues by claiming that Mr. Markadonatos has adequate state law remedies under *Parratt v. Taylor*, 451 U.S. 527 (1981). *See* Doc. 30 at 19-20. The Booking Fee provision is an established governmental procedure, however, so *Parratt*, a "special instance" of the *Mathews* test, is inapplicable because this case does not present a situation "where post-deprivation process is all that is due because no pre-deprivation safeguards would be of use in preventing the kind of deprivation alleged." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Therefore, the *Parratt* doctrine does not apply because Woodridge deprived Mr. Markadonatos of his $30 pursuant to an official governmental procedure. Because *Parratt* does not apply and because Mr. Markadonatos did not have any post-deprivation state law procedures available to him, this Court should rule that Woodridge must to provide additional procedures consistent with due process if it wishes to continue to collect the fee.

      G.    This Court should adopt the reasoning of the district courts in *Allen v. Leis* and *Roehl v. Naperville*.

Woodridge concludes its procedural due process argument by urging this Court not to follow *Allen*, 213 F. Supp. 2d at 819, and *Roehl*, 857 F. Supp. 2d 707. Woodridge claims that *Allen* is distinguishable and has been rejected by a majority

of Circuits and that *Roehl*'s analysis is flawed and should not be followed. Doc. 30 at 20-24. Mr. Markadonatos relies on his analysis of these cases in his principal brief, *see* Doc. 22 at 16-17, 21-22, and merely wishes to point out the defects in Woodridge's argument.

Woodridge claims that the reasoning of *Allen* has been rejected by other Circuits which considered similar administrative jail fees. As the *Allen* court stated, the facts of that case relevant to the *Mathews* analysis were: "Plaintiff's currency was taken without notice or hearing, or any other adjudication pre- or post-deprivation." 213 F. Supp. 2d at 832. In contrast, in *Sickles* and *Slade*, the arrestees were provided post-deprivation procedures. *See* 501 F.3d at 731 (post-deprivation grievance procedures existed to challenge imposition of fee); 407 F.3d at 254 n. 9 (plaintiff did not allege absence of post-deprivation remedy and jail had post-deprivation grievance procedures to challenge imposition of fee). Woodridge's argument that other Circuits have rejected *Allen* is therefore without merit because the fee and material facts in *Allen* are not similar to the fees and facts in *Sickles* and *Slade*.

Contrary to Woodridge's claims, the *Allen* court also engaged in a careful balancing of the *Mathews* factors and came to the same conclusion that several Circuits, including the Seventh, have reached: that the government violates procedural due process when it does not provide an individual with *any* hearing whatsoever. *See Johnson*, 250 F.3d at 563; *Stypmann*, 557 F.2d at 1344. This Court should therefore follow *Allen* in concluding that Woodridge violated Mr. Markadonatos's

due process rights when it deprived him of his $30 pursuant to its Booking Fee provision.

Woodridge claims that *Roehl* should not be followed for the same reasons that it claims that Mr. Markadonatos's argument is flawed. Initially, Woodridge claims that *Roehl* improperly conflated two separate decisions and found a risk of error based on substantive terms different from those found in Naperville's ordinance. Doc. 30 at 22-23. As discussed in Section II(C) above, Woodridge's objection on this point is misplaced. *Roehl* correctly identified the risk of error by assessing all pre-determination procedures, not just those explicitly found in Naperville's ordinance. 857 F. Supp. 2d at 715-16; *cf. Stypmann*, 557 F.2d at 1343.

Additionally, Woodridge claims that *Roehl* improperly downplayed its analysis of the first *Mathews* factor. Doc. 30 at 23. It is unclear why Woodridge believes this, as the *Roehl* court found the private interest to be relatively minor, *see* 857 F. Supp. 2d at 713, and that the dispositive fact in the *Mathews* analysis was the government's denial of *any* means for arrestees to contest the deprivation of their $50. *See id.* at 716-17.

Woodridge goes on to claim that *Roehl*'s analysis is flawed because the court found that a hearing was required. Doc. 30 at 24. Woodridge claims that the *Roehl* court neglected the "realities" of tight budgets, but in doing so, Woodridge neglects the facts of *Roehl*. *Id.* After Mr. Roehl brought suit, Naperville altered its procedures to provide post-deprivation hearings and did so without any increase of its $50 fee. 857 F. Supp. at 710. This Court should therefore take notice that

18

Woodridge need not face a tighter operating budget and curtailed law enforcement if it complies with the requirements of due process and provides some kind of hearing prior to depriving arrestees of their $30. *See id.*

Finally, Woodridge claims that the *Roehl* court placed too much emphasis on the plaintiff being found not guilty. As discussed in Section I above, such concerns are immaterial and irrelevant to the due process analysis because Mr. Markadonatos did not admit that Woodridge was entitled to charge him an administrative arrest fee unrelated to guilt or innocence when he pled guilty. Even if Mr. Markadonatos would not be entitled to a refund of his $30 under any procedures which could have conceivably been used by Woodridge, he would still be entitled to challenge Woodridge's violation of his due process rights because he is alleging that Woodridge did not provide him with any due process when it interfered with his protected interest. *See Carey*, 435 U.S. at 266. This Court should therefore follow the *Roehl* court's decision in concluding that Woodridge violated due process when it provided no means for Mr. Markadonatos to contest the deprivation of his $30.

III.     Mr. Markadonatos Pled Sufficient Facts In His Complaint To State A Claim For Woodridge's Denial Of Substantive Due Process.

To state a claim for a denial of substantive due process, Mr. Markadonatos must first "show either the inadequacy of state law remedies or an independent constitutional violation." *See Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). Following this threshold inquiry, Woodridge must establish that its 2005 Ordinance is rationally related to a legitimate government interest. *See id.* Stated dif-

ferently, Woodridge must show that its practice is neither "arbitrary" nor "irration-

al." *See id.*

      A.    Mr. Markadonatos has no state law remedies available to him.

Initially, Woodridge claims in its substantive due process analysis that Mr.

Markadonatos has state law remedies available to recover his $30. Mr. Markadona-

tos already discussed the majority of options presented by Woodridge. *See* Doc. 22

at 27-28. The only state law remedy which Mr. Markadonatos did not address was

bailment, *see* Doc. 30 at 25-26, but this remedy is clearly not available to him. Mr.

Markadonatos would need to plead several elements to establish bailment: (1) an

express or implied agreement to create a bailment; (2) delivery of the property in

good condition; (3) acceptance of the property bailed by the bailee; and (4) nonreturn

of the property. *See Am. Ambassador Casualty Co. v. City of Chicago*, 205 Ill. App.

3d 879, 881, 563 N.E.2d 882, 884-85 (Ill. App. Ct. 1990). Mr. Markadonatos did not

enter into an agreement to create a bailment with Woodridge, so Mr. Markadonatos

would not be able to bring such a claim against Woodridge. *See id.* This Court

should therefore find that Mr. Markadonatos does not have any state law claims

which foreclose his substantive due process claim.

      B.    Woodridge's Booking Fee provision is not rationally relat-ed to a legitimate government interest.

In its discussion on the merits of Mr. Markadonatos's substantive due process

claim, Woodridge relies upon *Idris v. City of Chicago* to conclude that its actions

were rational. *See* Doc. 30 at 27; 552 F.3d 564, 566 (7th Cir. 2009). In *Idris*, the Sev-

enth Circuit considered Chicago's system of fining car's owners for red light violations regardless of who was driving at the time of the violation. 552 F.3d at 565. The court determined that Chicago's system was not "unconstitutionally whimsical" because it improved compliance with traffic laws at the same time that it raised revenue. *Id.* at 566. *Idris* is inapposite because the fine there was a clear deterrent that served the government's objectives whereas Woodridge's fee does not further any legitimate objectives.

Woodridge's problem is that it assumes that there is a rational relationship between the fee it charges and its stated interest – seeking to offset the administrative costs involved in processing arrestees. Doc. 30 at 27-28. Woodridge fails to establish why it is rational to charge all arrestees the fee, given that it is axiomatic that all arrestees have not necessarily committed a crime or even done anything to "consume [Woodridge's] resources." *Id.* at 27.

Woodridge's logic is incomplete, because it starts with the premise that some individuals should share the costs of incarceration. This premise is sound and Mr. Markadonatos does not contest it. What Mr. Markadonatos does contest is Woodridge's conclusion that it is rational to require all arrestees to share in the costs of their arrest. There is no legitimate government interest in collecting a fee from arrestees who do not have a conviction of guilt entered into their record. Any administrative costs associated with processing such arrestees must be funded out of general revenues, not out of involuntary fees assessed on arrestees who are not convicted of the crimes for which they were arrested.

Given that not all arrestees should have been arrested, or that their funds may be exempted by law from being used for Woodridge's purpose, it is irrational to require these individuals to pay the $30 fee. Woodridge's Booking Fee provision is therefore unconstitutional because it is not rationally related to the legitimate objective of offsetting administrative costs involved in processing arrestees when it requires payment from individuals who otherwise should not pay. For these reasons, this Court should find that Woodridge's Booking Fee provision is unconstitutional.

IV.     Mr. Markadonatos alleged in his Complaint that Woodridge's Booking Fee provision violates equal protection and is facially unconstitutional because it invidiously discriminates between arrestees and because it irrationally imposes administrative costs related to law enforcement work on some groups but not others.

Woodridge begins its equal protection discussion by claiming that Mr. Markadonatos never raised any equal protection arguments in the district court. Doc. 30 at 28-29. This is not true. Mr. Markadonatos alleged that Woodridge's Booking Fee provision is facially unconstitutional. R. 179. Mr. Markadonatos provided Woodridge with a short and plain statement in his Complaint that he was challenging the Booking Fee provision as being facially unconstitutional, which necessarily includes an equal protection challenge. *Cf. Brown v. Bd. of Educ.*, 347 U.S. 483 (1954). Woodridge's failure to address this claim does not mean that Mr. Markadonatos has waived it; rather, this merely shows that Woodridge and the court below did not fully consider all of the aspects of Mr. Markadonatos's claims.

Woodridge continues by claiming that Mr. Markadonatos's equal protection argument would fail even if he had raised it. Woodridge initially claims that Mr.

Markadonatos was not required to pay the fee upon booking. Doc. 30 at 29. Nothing in the Complaint supports Woodridge's claim. Indeed, the notice which was provided to Mr. Markadonatos states: "You are hereby notified that under Village Ordinance # 5-1-12, an administrative fee of $30.00 is *required upon completion* of any custodial arrest/booking procedure." R. 192 (emphasis added). Similarly, Mr. Markadonatos alleged that he was notified that he was required to pay the $30 fee upon completion of his booking procedure. *See* R. 180. Woodridge's conclusory allegations to the contrary are therefore unfounded and this Court must accept as true that Mr. Markadonatos was required to pay the $30 fee upon being booked. This Court should therefore find that Woodridge's Booking Fee provision is unconstitutional because it arbitrarily distinguishes between someone like Mr. Markadonatos, who was *required* to pay $30 upon being booked, and other arrestees, who do not pay because they do not have funds on them at the time of booking,. *See Allen v. Leis*, 154 F. Supp. 2d 1240, 1270 (S.D. Ohio 2001).

## CONCLUSION

This Court should reverse the District Court's June 11, 2012 judgment against Mr. Markadonatos and remand and reassign this case pursuant to Circuit Rule 36 for further proceedings.

Dated: May 10, 2013                              Respectfully submitted,


                                                  /s/ John Auchter

                                                 *Attorney for Plaintiff-Appellant Jerry G. Markadonatos*

Vincent L. DiTommaso
Peter S. Lubin
John Auchter
DiTOMMASO LUBIN, P.C.
17W220 22nd Street Suite 410
Oakbrook Terrace, IL 60181
(630) 333-0000

James Shedden
Matthew Burns
Tony Kim
SCHAD, DIAMOND & SHEDDEN, P.C.
332 S. Michigan Ave. Suite 1000
Chicago, IL 60604
(312) 985-0207

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for Plaintiff-Appellant Jerry G. Markadonatos certifies that the forgoing brief:

(i)     complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 6,342 words, including footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

(ii)     complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 12-point Century.

   /s/ John Auchter          

## CIRCUIT RULE 31(e) CERTIFICATION

Pursuant to Circuit Rule 31(e), the undersigned attorney certifies that a copy

of the foregoing Brief in native PDF format was filed electronically with the Court.


 /s/ John Auchter

## CERTIFICATE OF SERVICE

Pursuant to Circuit Rule 25(a), the undersigned hereby certifies that he served two hard copies of the foregoing Brief on the following counsel of record via the Seventh Circuit's Electronic Case Filing system on May 10, 2013, and that two printed copies will be served upon acceptance of the brief by the Court Clerk.

Brandon K. Lemley
QUERREY & HARROW, LTD.
175 W. Jackson Suite 1600
Chicago, IL 60604
blemley@querrey.com


　　　　　　　　　　　　　　　 /s/ John Auchter